Fabrice N. Vincent, State Bar No. 160780
Kent L. Klaudt, State Bar No. 183903
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
FVINCENT@LCHB.COM

Attorneys for Plaintiff ALLEN FARON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALLEN FARON,<br><br>                    Plaintiff,<br><br>v.<br><br>ST. JOSEPH HOSPITAL; ST. JOSEPH HEALTH SYSTEM; KEVIN MOLANDER, M.D.; JOHN KELSEY, M.D.; RONALD CORDOVA, M.D.; and UNITED STATES OF AMERICA; inclusive,<br><br>                    Defendants. | CASE NO.  CGC-07-5602 SBA (related to C 06-06662 SBA)<br><br><br>**FIRST AMENDED CIVIL COMPLAINT FOR DAMAGES**<br><br><br>**DEMAND FOR JURY TRIAL** |

742609.1

1

**I.     INTRODUCTION**

2

        1.      Shocking errors by physicians in the Emergency and Urgent Care

3

Departments of St. Joseph Hospital and Eureka Community Health Center caused 19-year-old

4

ALLEN FARON terrible and irreparable injuries.  Defendants' failure to adequately care for

5

ALLEN FARON caused an easily repairable hernia to progress to extraordinary and catastrophic

6

permanent loss of most of his digestive tract.

7

        2.      As a result of defendants' misconduct, ALLEN FARON almost died, and

8

was hospitalized at the University of California San Francisco Pediatric and Pediatric ICU for

9

over 120 days.  He will never eat or defecate normally again and has required multiple

10

rehospitalizations.  ALLEN FARON faces a future of prolonged illness, permanent disability, and

11

premature death.

12

        3.      ALLEN FARON's catastrophic injuries are not only totally disabling, they

13

are painful, gruesome, and require constant care.  He had an open wound in his abdomen with

14

protruding fistula and requires an abdominal discharge pouch and a colostomy bag.  He is now in

15

constant pain and tethered 12 hours a day to complex and awkward feeding tubes.

16

        4.      Plaintiff ALLEN FARON's injuries were easily preventable.  Any plain

17

film radiology x-ray, CT scan or MRI should have revealed the hernia, and if it were diagnosed

18

earlier, it could have been easily repaired and he would have led a normal life.  Defendants

19

inexcusably failed to provide even basic x-rays, failed in their physical examinations of ALLEN

20

FARON and failed to do complete blood work or supply other basic medical care and testing

21

necessary for ALLEN FARON's hernia detection and repair.

22

        5.      Defendants' conduct was reckless and malicious.  ALLEN FARON

23

presented desperately many times for emergency care with acute distress and never received basic

24

abdominal and thoracic examination testing and treatment.  He was not supplied standard

25

radiological testing, or given complete blood tests, nor suspected for or diagnosed with

26

obstructive condition.  He did not receive the simple hernia detection and repair he so obviously

27

and desperately needed.

28

1  **II.    PARTIES, VENUE AND JURISDICTION**

2    6.    Plaintiff ALLEN FARON is age 21 and is a resident of Eureka, CA.

3    7.    At all times herein mentioned, each of the Defendants was the agent and

4  employee of each of the remaining Defendants and was at all times herein mentioned acting

5  within the scope of said agency and employment.

6    8.    Plaintiff is informed and believes, and hereby alleges, that Defendant

7  KEVIN MOLANDER, M.D., at all times relevant hereto, was a physician duly licensed to

8  practice medicine in the State of California and doing business at 2700 Dolbeer Street, Eureka,

9  California.

10    9.    Plaintiff is informed and believes, and hereby alleges, that Defendant

11  JOHN KELSEY, M.D., at all times relevant hereto, was a physician duly licensed to practice

12  medicine in the State of California and doing business at 3340 Glenwood Avenue, Eureka,

13  California and 2700 Dolbeer Street, Eureka, California.

14    10.    Plaintiff is informed and believes, and hereby alleges, that Defendant

15  RONALD CORDOVA, M.D., at all times relevant hereto, was a physician duly licensed to

16  practice medicine in the State of California and doing business at 2700 Dolbeer Street, Eureka,

17  California.

18    11.    Defendant UNITED STATES OF AMERICA is and was at all times herein

19  mentioned a provider of medical care and services through its agents and employees Eureka

20  Community Health Center and Ellen Taylor, P.A., at health care facilities in Eureka, California.

21    12.    Defendants ST. JOSEPH HOSPITAL and ST. JOSEPH HEALTH

22  SYSTEM are and were at all times herein mentioned hospitals, clinics and/or mental health care

23  facilities maintained pursuant to a license existing under and by virtue of the laws of the State of

24  California and/or authorized to do business and/or doing business at 2700 Dolbeer Street, Eureka,

25  California.   ST. JOSEPH HEALTH SYSTEM also has a principle place of business in Orange

26  County California.

27    13.    On information and belief, ST. JOSEPH HOSPITAL and ST. JOSEPH

28  HEALTH SYSTEM (hereinafter the "Hospital Defendants") are alter egos of each other and/or

1   set up as separate entities solely as a fiction to avoid responsibility for non-delegable duties and

2   duties affirmatively assumed by virtue of their advertised promises to provide excellence in

3   medical services to the community, promises relied upon by plaintiffs herein to their detriment.

4          14.    Venue is proper in the United States District Court, District of Northern

5   California, because the majority of ALLEN FARON's injuries occurred in San Francisco County.

6   To save his life from defendants' malpractice and tortious misconduct, ALLEN FARON was

7   flown to San Francisco County for extraordinary and lengthy medical interventions.  In 2006, he

8   required approximately a dozen surgeries performed in San Francisco and spent over 120 days at

9   UCSF Children's Hospital at a cost already well in excess of $3.2 million in medical, hospital and

10   drug services provided in San Francisco County by San Francisco residents and entities.  He was

11   rehospitalized on or about July 24, 2006 at UCSF for new surgeries and rehabilitation.

12          15.    Venue is additionally proper in the United States District Court, District of

13   Northern California, because Defendant UNITED STATES OF AMERICA removed this action

14   from the Humboldt County Superior Court on or about November 5, 2007, pursuant to 28 U.S.C.

15   §§1441, et seq., and original jurisdiction lies in a federal forum under 28 U.S.C. §1331 (civil

16   actions arising under the Constitution, laws or treaties of the United States), and the Federal Tort

17   Claims Act, 28 U.S.C. §§ 1346, 2671, et seq.

18          16.    Plaintiff ALLEN FARON filed a Federal Tort Claim with the appropriate

19   federal agency, the Department of Health and Human Services, on or about December 5, 2006, a

20   true and correct copy of which (without exhibits) is attached hereto as **Exhibit A.**

21          17.    On or about July 9, 2007, Plaintiff's Federal Tort Claim was denied by the

22   Department of Health and Human Services.  A true and correct copy of the letter denying this

23   claim is attached hereto as **Exhibit B**.  Plaintiff ALLEN FARON has thus exhausted all of his

24   available administrative remedies, thus necessitating and permitting the filing of this lawsuit.

25   **III.**    **FACTS**

26          18.    In the late evening of January 18, 2006, ALLEN FARON presented yet

27   again to St Joseph emergency department.  Allen had been at home and was still feeling ill. He

28   had just been seen in St. Joseph emergency department on January 17, 2006, and had sought

1  medical care for signs of major abdominal problems at St. Joseph Hospital numerous times

2  (11/22/02, 5/24/05, 08/28/05, 8/30/05, 1/15/06, and 1/17/06), and had similarly sought treatment

3  at the Eureka Community Health Center (09/02/05), for recurring abdominal pains followed by

4  vomiting, a classic obstructive syndrome that requires radiological and other internal

5  examination.

6          19.     Defendants inexcusably failed to x-ray or adequately radiologically

7  evaluate or test, diagnose and repair ALLEN FARON's hernia and obstructions until it was too

8  late.  The need for radiological evaluation of abdominal complaints is a basic and longstanding

9  tenet of medicine, "A patient who has a clinical picture suggestive of a bowel obstruction, for

10  example, is best served by obtaining plain radiographs of the abdomen …." Sleisenger &

11  Fordtran's Gastrointestinal and Liver Disease, Pathophysiology, Diagnosis, Management, 7th

12  edition, 2002; Textbook of Surgery, The Biological Basis of Modern Surgical Practice, Edited by

13  David C. Sabiston, Jr., M.D., James Duke Professor and Chairman Department of Surgery, Duke

14  University Medical Center, 1991, "plain radiographs of the abdomen have their greatest role in

15  the evaluation of the question of mechanical obstruction of the gastrointestinal tract.  Supine and

16  erect radiographs of the abdomen should allow the distinction between gastric outlet obstructions,

17  proximal, mid and distal small bowel obstructions, and colonic obstructive processes."  CT

18  scanning and MRI scanning were also readily available to Defendants and inexcusably not

19  utilized or not properly utilized on ALLEN FARON to his detriment.

20          20.     By January 19, 2006 ALLEN FARON's undiagnosed hernia had

21  catastrophically and irreversibly progressed and he collapsed in St. Joseph emergency department

22  and had to be resuscitated with intubation and chemical resuscitation.  Testing revealed sudden

23  catastrophic hernia progression with massive amounts of bowel within his right hemithorax with

24  marked deformity of the mediastinal structures.  He underwent emergently surgery and was

25  transferred to the University of California San Francisco Pediatric Unit where he underwent

26  numerous surgeries and was hospitalized for more than 120 days at a cost well in excess of $3.2

27  million.

28

21.     Allen's case is not only catastrophic but egregious, because the devastating, life-threatening course of events should never have happened.  Allen knew and told his doctors that something was very terribly wrong with him and his repeated and desperate efforts to seek basic medical care from defendants were useless because they ignored his complaints and disregarded his suffering and failed to perform standard, easily available necessary medical testing.

22.     Defendants ST. JOSEPH HOSPITAL, ST. JOSEPH HOSPITAL SYSTEM, UNITED STATES OF AMERICA (whose agents and employees are the Eureka Community Health Center and Ellen Taylor, P.A.), KEVIN MOLANDER, M.D., JOHN KELSEY, M.D., RONALD CORDOVA, M.D., and each of them, undertook the care and treatment of Plaintiff ALLEN FARON, and rendered professional services in the diagnosis, care and treatment of the Plaintiff.

23.     At all times herein mentioned, the Defendants, and each of them, failed to exercise the proper degree of knowledge and skill and so negligently, carelessly, recklessly, wantonly, and unlawfully treated, provided care, monitoring, examination, and other professional services that, among other things, they failed to adequately and properly diagnose and treat Plaintiff.  Notices pursuant to California Code of Civil Procedure Section 364 were served on April 10, 2006.

24.     Plaintiff alleges on information and belief that at all times herein mentioned, the Defendants, and each of them, failed to order and/or perform basic x-rays of, and blood work for, Plaintiff ALLEN FARON, and/or otherwise failed to meet the standard of care when he sought help with major abdominal problems, and, as a result, failed to timely diagnose and treat his hernia.  Defendants' failure to perform basic diagnostic testing on Plaintiff ALLEN FARON, was plain and obvious error, as he presented repeatedly over the course of approximately seven months with a longstanding history of abdominal pain followed by vomiting, and notified Defendants that he had a history of "problems with diaphragm," all of which were obvious signs of obstructive syndrome always requiring x-ray review and full blood tests.

25.     Timely basic diagnostic testing of Mr. Faron would have revealed the hernia when it could and would have been easily repaired without any permanent injury. Defendants' failure to perform basic testing caused Mr. Faron to suffer catastrophic, permanent and horrific complications and injuries.

26.     Mr. Faron's future medical care needs are extraordinary and he will likely need transplantation of his small intestines and liver; unfortunately these extremely costly procedures hold major risks and living with transplanted organs also requires life-long treatment with dangerous steroids and an ever-present risk of organ rejection.  Intestinal transplantation costs approximately $813,600 and a liver transplantation starts at approximately $392,800, if organs are available.

27.     Defendants' negligence caused Plaintiff ALLEN FARON to suffer irreversible and catastrophic injuries to, and loss of, most of his digestive system starting on or about January 19, 2006 because of complications from the undiagnosed hernia.

28.     Plaintiff alleges on information and belief that Plaintiff ALLEN FARON is now in constant pain and was hospitalized and bedridden at UCSF in San Francisco for over 120 days from January 19, 2006 to May 2006, with multiple subsequent hospitalizations, including re-hospitalizations with multiple future hospitalizations and surgeries expected.

29.     Plaintiff ALLEN FARON will likely never be able to eat or defecate or live naturally again and requires at least 12 hours daily of total parenteral nutrition by IV through a port-a-cath and will require lifelong medical care.  Total parenteral nutrition (TPN), is the complex practice of feeding a person without using the gut, i.e. intravenously.  TPN is delivered with a medical infusion pump. A sterile bag of nutrient solution, between 500 mL and 4 L is provided. The pump infuses a small amount (0.1 to 10 mL/hr) continuously in order to keep the vein open.   The nutrient solution consists of water, glucose, salts, amino acids, vitamins and sometimes emulsified fats.

30.     Long term TPN patients suffer from many side effects including systemic hypertension, lack of trace nutrients, electrolyte imbalances, increased blood sugar, and bacterial infection, usually due to the increased infection risk from having an indwelling central venous

catheter. Liver failure often may also occur, especially in patients like ALLEN FARON who require massive levels of TPN to survive.

31.    Plaintiff ALLEN FARON suffered for many months from an open abdominal wound and required at times many chest tubes just to breathe because his chest cavity was leaking for so long.  He has required multiple surgeries and will likely require many more. Because of the wrongdoing of Defendants, and each of them, Plaintiff ALLEN FARON faces a future of prolonged hospitalization, prolonged, constant suffering and premature death.  His massive injuries have caused him extraordinary emotional suffering and pain and major severe depression and he was been placed on suicide watch while a patient at UCSF's ICU.

32.    As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of defendants, and each of them, and the resulting incident, as aforesaid, Plaintiff ALLEN FARON sustained severe and serious injury to his person, all to Plaintiff's damage in a sum within the jurisdiction this Court and to be shown according to proof.

33.    By reason of the foregoing, Plaintiff ALLEN FARON suffers terribly, has been required to employ the services of hospitals, physicians, surgeons, nurses and other professional services, and has been compelled to incur expenses for air ambulance, ambulance service, medicines, x-rays, TPN, multiple surgeries and other medical supplies and services. Plaintiff is informed and believes, and thereon alleges, that further services of said nature will be required by Plaintiff in an amount to be shown according to proof.

34.    At the time of the injury, as aforesaid, Plaintiff ALLEN FARON was regularly and gainfully employed.  By reason of the foregoing Plaintiff has been unable to engage in his employment for a time subsequent to said accident, and Plaintiff is informed and believes, and upon such information and belief, alleges that he will be unable to work in his said employment for the rest of this life, all to Plaintiff's damage in an amount to be shown according to proof, and estimated at this time to have a present value of between $973,870 and $1,318,480.

35.    True and correct representative color photographs of ALLEN FARON are attached hereto as Exhibit C.

**FIRST CAUSE OF ACTION**

**(Medical Negligence- Against All Defendants)**

36.     Plaintiff incorporated by reference herein all prior paragraphs as though fully set forth herein.

37.     Defendants were medical providers who failed to provide basic medical services and testing that any reasonable medical provider would have supplied and failed to diagnose and repair a readily diagnosable, easily repairable congenital hernia.

38.     Defendants, and each of them, were and held themselves out to be, knowledgeable in the provision of medical, including emergency and acute care.

39.     At all times relevant, Defendants carelessly and negligently examined, informed, treated, diagnosed, prognosed, prescribed medication to and otherwise treated and rendered medical and other services and care to Plaintiff.

40.     At all times herein mentioned, the relationship between Defendants and Plaintiffs herein was fiduciary in nature, which imposed a duty upon Defendants to fully explore, diagnose, disclose and repair any and all material problems, dangers, hazards and health problems, inherently associated with ALLEN FARON's health complaints, problems and symptoms.

41.     As a result of the professional negligence and medical malpractice of Defendants, Plaintiff has suffered severe injuries and damages as alleged herein.

42.     Plaintiff complied with the provisions of Code of Civil Procedure § 364 on April 10, 2006 by serving on Defendants notice of Plaintiff's intention to commence this action. Their letter stated:

> Dear St. Joseph Hospital, Dr. Molander, Dr. Kelsey, Dr. Cordova and Eureka Community Health Center:
>
> Please be advised that we represent ALLEN FARON and his mother Nancy Faron and that they intend to pursue claims against you (and/or your agents, employers or employees) for medical negligence and malpractice as a result of your failure to meet the standard of care in treating ALLEN FARON.
>
> You failed to order and/or perform basic x-rays of and blood work for Mr. Faron (and/or otherwise failed to meet the standard of care

1   when he sought your help with major abdominal problems), and, as a result, failed to timely diagnose and treat his hernia.  This
2   negligence caused Mr. Faron to suffer irreversible and catastrophic injuries to and loss of most of his digestive system on January 19,
3   2006 because of complications from the undiagnosed progressive hernia.

4

5   Brave 19-year-old ALLEN FARON is now in constant pain and remains and has been hospitalized and bedridden at UCSF San Francisco since January 19, 2006.  He will likely never be able to
6   eat or defecate or live naturally again and requires total parenteral nutrition and lifelong medical care.  He continues to have an open
7   abdominal wound that may or may not ever heal and requires chest tubes just to breathe because his chest cavity is leaking.  He has
8   required multiple surgeries and will require many more.  Because of your wrongdoing, Mr. Faron faces a future of prolonged
9   hospitalization, prolonged, constant suffering and premature death. His massive injuries have caused him extraordinary emotional
10  suffering and pain and major severe depression and he has been placed on suicide watch.

11

12  Our expert physician consultants, including Professor of Medicine John Cello, advise the Farons and me that your failure to perform basic diagnostic testing on Mr. Faron is plain and obvious error,
13  shocking and wrong.  Mr. Faron presented repeatedly over the course of approximately seven months with a longstanding history
14  of abdominal pain followed by vomiting; these were obvious signs of obstructive syndrome always requiring x-ray review and CBCs
15  and full blood workup.

16  Timely basic diagnostic testing of Mr. Faron would have revealed the hernia when it could have been easily repaired without any
17  permanent injury.  Your failure to perform basic testing caused Mr. Faron to suffer catastrophic, permanent and horrific complications
18  and injuries.  Mr. Faron's only hope for a semi-normal life is transplantation of his small intestines and liver; unfortunately this
19  extremely costly procedure has its own major risks.

20  Mr. Faron hopes and requests that you have or will report this matter to the California Medical Board as well as the Joint
21  Commission on Hospital Accreditation, and that you undergo remedial medical training before treating other patients.

22

23  Please let us know if we may provide you with any information or records to facilitate your and/or your counsel or insurors' consideration of Mr. Faron's claims.

24

25  Very truly yours,

26  Fabrice Vincent

27  cc:   Allen and Nancy Faron, UCSF Hospital, Room L-629
            Pediatrics, 6th Floor, Main Campus, 505 Parnassus Ave., San
            Francisco, CA  94143-2204

28

Frank Grove, Octagon Risk Services, 2101 Webster Street,
Suite 645, Oakland, CA 94612

Felecia Harte, LCHB Legal Nurse Consultant

43.     The conduct of Defendants was willful and intentional and done with

fraud, oppression and malice against Plaintiff and with a conscious disregard to the rights of

Plaintiff. Pursuant to California Code of Civil Procedure § 425.13, Plaintiff asserts punitive

damage claims only against the St. Joseph defendants (who are believed to deny that they are

medical providers) and will later assert punitive and/or exemplary damages against the individual

physicians named in this Complaint. Based upon the allegations set forth in this complaint and

Plaintiffs hereby give notice of their intention to amend said claims in the future to allege punitive

damages under C.C.P. § 415.13(a).

## SECOND CAUSE OF ACTION

### (Negligent Hiring and Supervision- Against All Defendants)

44.     Plaintiffs incorporate here all prior paragraphs of the complaint.

45.     Defendants were each and all negligent in the hiring and/or supervision of

physicians, nurses, agents, and others who failed to timely diagnose and repair ALLEN FARON's

hernia.

46.     As a proximate and direct cause of Defendants' negligence in hiring and

supervision, plaintiffs have suffered catastrophic, continuing and terrible injuries and damages, as

plead above.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them,

as follows:

1.     For past, present and future general damages, according to proof;

2.     For past and future medical and incidental expenses, according to proof;

3.     For past and future loss of earnings and/or earning capacity, according to

proof; economic damages, including but not limited to sums incurred and to be incurred for

services of hospitals, physicians, surgeons, nurses and other medical supplies and services;

1    4.    For the right to later move to amend to assert punitive and exemplary

2    damages in an amount to be-determined at trial;

3    5.    For prejudgment interest on all damages as is allowed by the laws of the

4    State of California;

5    6.    For past and future mental and emotional distress, according to proof;

6    7.    For past and future loss of consortium, according to proof;

7    8.    For past and future costs of suit incurred herein;

8    9.    For interest provided by law including, but not limited to, California Civil

9    Code Sec. 3291; and

10    10.    Costs and fees of suit (including public benefit attorneys fees awardable

11    under C.C.P. Section 1021.5) and for such other and further relief as the court deems proper.

12    11.    For estoppel against the Hospital Defendants preventing them for

13    benefiting from MICRA limits due to their unfair business practices in denying that they are

14    health care providers.

15    12.    Punitive damages against St. Joseph Hospital and Health System.

16    13.    For such other and further relief as the Court deems just and proper.

17

18    Dated: January 16 , 2008    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

19

20    By: _____

21    Fabrice N. Vincent
(for F. Vincent, by permission)
Fabrice N. Vincent (State Bar No. 160780)

22    Kent L. Klaudt (State Bar No. 183903)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

23    Embarcadero Center West
275 Battery Street, 30th Floor

24    San Francisco, CA 94111-3339
Telephone: (415) 956-1000

25    Facsimile: (415) 956-1008

26    Attorneys for Plaintiff ALLEN FARON

27

28

742609.1                                    - 11 -

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury on all issues which may be tried by a jury.

3

4    Dated: January 16, 2008             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

5

6                                        By: _____
                                                    Fabrice N. Vincent
7                                          (for F. Vincent, by permission)
                                         Fabrice N. Vincent (State Bar No. 160780)
8                                        Kent L. Klaudt (State Bar No. 183903)
                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
9                                        Embarcadero Center West
                                         275 Battery Street, 30th Floor
10                                       San Francisco, CA 94111-3339
                                         Telephone: (415) 956-1000
11                                       Facsimile: (415) 956-1008

12                                       Attorneys for Plaintiff ALLEN FARON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

742609.1                                   - 12 -

**Exhibit A**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>(see attachment) | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.)  (Number, Street, City, State and Zip Code)<br>(see attachment) |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>□ MILITARY  □ CIVILIAN | 4. DATE OF BIRTH<br>06-12-86 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>(see attachment) | 7. TIME (A.M. OR P.M.)<br>(see attachment) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

  (see attachment)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

(see attachment)

| 11. | WITNESSES | |
|---|---|---|
| **NAME** | **ADDRESS (Number, Street, City, State, and Zip Code)** | |
| (see attachment) | (see attachment) | |

| 12. (See Instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>0 | 12b. PERSONAL INJURY<br>$20,000,000 | 12c. WRONGFUL DEATH<br>0 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$20,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See Instructions on reverse side.) | 13b. Phone number of person signing form<br>415 956-1000 | 14. DATE OF SIGNATURE<br>Dec. 5<br>November 5, 2006 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| | |
|---|---|
| 15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No | |
| N/A | |

| | |
|---|---|
| 16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐Yes  ☐No | 17. If deductible, state amount. |
| N/A | N/A |

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
    A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**ATTACHMENT TO FEDERAL TORT CLAIM (STANDARD FORM 95) FOR
CLAIMANT ALLEN FARON**

1.  **Submit to Appropriate Federal Agency:**

    *United States Department of Health and Human Services*
    Public Health Service
    Claims Branch, Parklawn Service Center/AOS/DAM
    5600 Fishers Lane, Room 5C-10, Parklawn Building
    Rockville, MD  20857

    *Health Resources and Services Administration*
    Public Health Service
    Claims Branch, Parklawn Service Center/AOS/DAM
    5600 Fishers Lane, Room 5C-10, Parklawn Building
    Rockville, MD  20857

2.  **Name, Address of claimant and claimant's personal representative, if any:**

    Allen Faron
    c/o Fabrice N. Vincent, Esq.
    Lieff, Cabraser, Heimann & Bernstein, LLP
    275 Battery St., 30th Floor
    San Francisco, CA  94111
    phone:  (415) 956-1000
    fax:  (415) 956-1008

3.  **Type of Employment:**

    N/A

6.  **Date and Day of Accident:**

    At various and ongoing times from on or about May 24, 2005 to on or about
    January 19, 2006, including but not limited to emergency room and/or other medical
    visits on or about May 24, 2005, August 28, 2005, August 30, 2005, September 2, 2005,
    January 15, 2006, January 17, 2006, and January 19, 2006.

7.  **Time (a.m. or p.m.):**

    At various and ongoing times from on or about May 24, 2005 to on or about
    January 19, 2006, including but not limited to emergency room and/or other medical

**ATTACHMENT TO FEDERAL TORT CLAIM (STANDARD FORM 95) FOR
CLAIMANT ALLEN FARON**

visits on or about May 24, 2005, August 28, 2005, August 30, 2005, September 2, 2005, January 15, 2006, January 17, 2006, and January 19, 2006.

8.    **Basis of claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.  Use additional pages if necessary):**

The medical negligence of Eureka Community Health Center, Ellen Taylor, P.A., the United States Department of Health and Human Services, and the Health Resources and Services Administration (hereinafter collectively "Respondents") at the dates, times and locations described in this claim were a direct and proximate cause of the severe, life-threatening, and permanent injuries suffered by Claimant Allen Faron.

On or about May 24, 2005, Allen Faron presented to the emergency department at St. Joseph's Hospital in Eureka, CA for the first of six visits over a period of eight months for abdominal pain followed by vomiting. At that time, his physical was noted to be benign although no note was made as to his bowel sounds. No lab work or x-rays were done. A diagnosis of "gastritis" was made.

He then re-presented on August 28, 2005 for a second episode of pain followed by vomiting, which lasted two to three days . The physician's note indicated he was aware of a similar episode that Mr. Faron had had three or four months ago. A physical exam showed tenderness in the epigastrium. No note of auscultation for bowel sounds were made. No lab work or x-rays were done. A diagnosis of gastritis was made and the patient was discharged on Prevacid.

He then re-presented two days later, August 30, 2005, which was the third visit for the same complaints of continued abdominal pain followed by vomiting in spite of Prevacid. At that point, Allen reported a history of "problems with his diaphragm." A physical revealed tenderness to palpation under the umbilicus. Bowel sounds were described as "normal." No lab work was done and a sonogram was negative for gallstone disease. He was discharged on Prevacid, Tums and Phenergan and told to follow up with his primary care physician.

On or about September 2, 2005, Mr. Faron saw Ellen Taylor, P.A. at Eureka Community Health Center, as a follow-up to his August 28 and 30, 2005 visits to the St. Joseph's ER. At this visit, Ms. Taylor did draw a CBC but she did nothing to follow-up on it. The normal CBC white blood cell count is from 5k to 10k. Allen's was 12.8, but she failed to follow-up. Ms. Taylor also failed to adequately document and report Allen's case to her supervising physician. If she had worked him up more and followed up on the abnormal blood work, and/or had accurately documented Allen's symptoms and history and reported the same to her supervising physician, Allen would most likely not have had the catastrophic outcome that he suffered.

He re-presented on January 15, 2006, a fourth visit, with recurrence of abdominal

pain followed by nausea and vomiting. On physical, the examining physician noted the patient "looked uncomfortable sitting holding his stomach" and had decreased bowel sounds in all four quadrants, but that his abdomen was "non-tender." No lab work or x-rays were done. The patient was discharged on Phenergan.

He then re-presented for a fifth visit on January 17, 2006, two days later, complaining of no response to Phenergan, pain which he described as ten out of ten and vomiting. On physical, his pulse was 115. His abdominal exam showed trace epigastric tenderness and normal bowel sound. His only lab work was a lipase, which was normal. No x-rays were done. He was given IV fluids, Droperidol and morphine by IV push and was diagnosed with dyspepsia, and discharged to be followed up in Open Door clinic.

The patient then re-presented for the last time on January 19, 2006, brought in by friends and family, with increasing pain and "troubled breathing." His mother gave the history of diaphragmatic problems when he was younger. The patient collapsed in the emergency room, was found to be hypoxic and hypotensive, requiring immediate intubation, fluids and pressors. A chest x-ray revealed a massive right diaphragmatic hernia with herniation of both small and large bowel into his right chest with mediastinal shift to the left.

A surgical consult was obtained emergently and the patient was taken to surgery where a large anterior diaphragmatic hernia on the right behind the liver was found with all of the small bowel up in his chest, as well as his cecum, which marks the beginning of the large colon. The bowel was adherent in the right chest in a volvulus position and markedly ischemic with impending infarction. There were adhesions of omentum to the diaphragm and the pleura which were dissected and removed. Once this was all released and the bowel was de-torsed, it was brought down into the peritoneal cavity as much as possible. When the bowel was brought down into the peritoneal cavity, the terminal ileus and part of the cecum appeared totally infarcted and was resected. Much of the small bowel appeared ischemic but was left in place.

The patient was transferred from surgery to ICU with a diagnosis of ischemic bowel, secondary to diaphragmatic hernia (Morgagni), ischemic bowel, septic shock and respiratory failure. A second surgical procedure was done 24 hours later with resection of most of the rest of his small bowel, leaving him with essentially 36 inches of functioning small bowel. He was then transferred to the University of California San Francisco by Air Evacuation for a 110-day admission plus three further exploratory procedures and further small bowel resection.

A percutaneous drainage of an abdominal abscess was done on February 7, 2006. He required continuous total parenteral nutrition ("TPN"), a tracheostomy, which was eventually removed on March 21, 2006, and multiple chest tubes for recurrent pneumothorax.

On April 14, 2006, he had a wedge resection of his right lung to prevent recurrent pneumothorax. He was treated with a clonidine patch for hypertension. The patient

## ATTACHMENT TO FEDERAL TORT CLAIM (STANDARD FORM 95) FOR CLAIMANT ALLEN FARON

developed a right-sided frozen shoulder, secondary to immobilization related to chest tubes and a PICC line use. The patient had been treated with Risperdal and Zoloft early in his hospitalization for nighttime agitation. These were eventually discontinued. The patient's pain control initially required morphine and fentanyl, but he was discharged on Lortabs. His post-op course was also complicated by Gram-negative sepsis for which he required an additional 16 days of hospitalization in the Pediatric Unit of UCSF. When discharged, he had a small bowel fistula, a PICC line and possibly a residual abscess.

Mr. Faron is totally TPN-dependent for life-sustaining nutrition and required multiple fluid boluses for recurrent dehydration and has a short bowel syndrome. He is on a fentanyl patch and clonidine patch. His hospital time from admission at St. Joseph's to discharge at UCSF was more than 128 days.

The diagnosis of intestinal obstruction is based on a careful history and a high index of suspicion and an x-ray. Each of Mr. Faron's admissions, which are on file at St. Joseph's, were remarkably similar: pain, followed by vomiting. Every medical, surgical or ER textbook indicates this history should raise a high index of suspicion for small bowel obstruction. Nevertheless, each ER doctor and Ms. Taylor inexcusably failed to comprehend the significance of this clear-cut history. Moreover, his failure to respond to therapy and reappearance two days later should have at least raised questions about the diagnosis of gastritis or pyrosis.

The physical exam on Mr. Faron's next-to-last visit, although non-diagnostic, was helpful. On his visit to the ER on January 17, 2006, he complained of pain at ten of ten and was noted to have a tachycardia. An upright chest x-ray, supine and upright abdominal films are the most important early radiologic tests for suspected bowel obstruction and should have been done. Had this been done and a surgical consult called, this patient's harrowing 128-day ordeal and permanent debilitating injuries would never have happened.

Moreover, *Emergency Medicine* (2nd Edition, May, Aghababian and Fleisher) notes "the patient with obstruction usually has more pain and distension than the patient with gastroenteritis. Tenderness, tachycardia and leucocytosis are also uncommon with simple gastroenteritis." This is also from the *Emergency Medicine*, 2nd Edition: "the five conditions just presented illustrate how intestinal obstruction mimics other conditions and why a diagnosis involves a range of certainty rather than a dichotomous yes or no and when emergency physicians need to be cautious. There is no decision tree that takes one safely through these difficulties."

"When the emergency physician suspects or has reason to suspect obstruction, even with any low level of confidence, he or she should seek advice from a surgical colleague. The low threshold for seeking surgical consultation is based on comparing the morbidity of waiting too long versus the inconvenience of unnecessary surgical consult."

The respondents failed Mr. Faron by failing to seek timely surgical consults. Also, May, Aghababian and Fleisher state: "An old adage 'never let the sun rise or set on

a case of intestinal obstruction' reflects the precept that once a diagnosis of obstruction is made, surgical intervention should be carried out within 12 hours.  Correcting a simple non-strangulated obstruction carries a low morbidity, whereas a strangulated obstruction that develops later carries a high risk."

Mr. Faron's harrowing and life-threatening 128-day ordeal could and should have been prevented by ER doctors who are aware of and act upon these important dictums. These ER doctors and Ms. Taylor collectively had five opportunities to provide Allen Faron with the appropriate care and if these ER doctors had ordered lab work, x-rays, and made the appropriate referral to a surgeon, Allen Faron's resulting nearly fatal condition requiring emergency surgery could have been prevented.

**10.    State nature and extent of each injury or cause of death, which forms the basis of the claim.  If other than claimant, state name of injured person or decedent:**

Respondents' medical negligence caused Mr. Faron to suffer catastrophic, permanent and horrific injuries and related complications, including but not limited to the following:

Brave 20-year-old Allen Faron is now in constant pain and was hospitalized and bedridden at UCSF San Francisco, after January 19, 2006, for more than 128 days.  He cannot eat normally and cannot defecate and requires total parenteral nutrition ("TPN") just ot stay alive.  He is required to be on life-sustaining TPN for approximately 15 hours each and every day.  He will likely never be able to eat normally or defecate again, or live naturally again.  He will require lifelong medical care.

He continues to have an open abdominal wound that may or may not ever heal and has required chest tubes just to breathe because his chest cavity is leaking.  He has required multiple surgeries and will require many more.  Because of Respondents' wrongdoing, Mr. Faron faces a future of prolonged hospitalization, prolonged, constant suffering and a high likelihood of premature death.

His massive injuries have caused him extraordinary emotional suffering and pain and major severe depression and he has been placed on suicide watch at times as a result of these injuries and the resulting extreme pain and suffering.

Mr. Faron's only hope for a semi-normal life is transplantation of his small intestines and liver; unfortunately, this extremely costly procedure has its own major risks.

**11.    Witnesses (names and addresses):**

Claimant is informed and believes that the following persons may be witnesses to the actions or inactions that caused his injuries and damages, and these persons may be

## ATTACHMENT TO FEDERAL TORT CLAIM (STANDARD FORM 95) FOR CLAIMANT ALLEN FARON

witnesses to Claimant's injuries and damages, as well. Claimant reserves the right to add to or amend this list as Claimant's discovery and investigation of this incident is ongoing.

| |
|---|
| Dr. Kevin Molander<br>c/o St. Joseph Hospital<br>2700 Dolbeer Street<br>Eureka CA  95501<br>Telephone: (707) 445-8121 |
| Dr. Ronald Cordova<br>2700 Dolbeer St.<br>Eureka, CA  95501<br>Telephone: (707) 445-8121 |
| John Kelsey, M.D.<br>EMS Medical Director<br>3340 Glenwood Avenue<br>Eureka, CA  95501<br>Telephone: (707) 445-2081 |
| Ellen Taylor, P.A.<br>c/o Eureka Community Health Center<br>2412 Buhne Street<br>Eureka, CA  95501<br>Telephone: (707) 441-1624 |
| Scott J. Soifer, M.D.<br>UCSF Medical Center<br>Pediatric Critical Care<br>513 Parnassus Ave.<br>HSW 1601 Box 0570<br>San Francisco, CA 94143<br>Telephone: (415) 476-6083 |
| Kerilyn K. Nobuhara, M.D.<br>UCSF Medical Center<br>Pediatric Surgery<br>513 Parnassus Ave.<br>HSW 1601 Box 0570<br>San Francisco, CA 94143<br>Telephone: (415) 476-2538 |
| Hanmin Lee, M.D.<br>UCSF Medical Center<br>Pediatric Surgery |

**ATTACHMENT TO FEDERAL TORT CLAIM (STANDARD FORM 95) FOR
CLAIMANT ALLEN FARON**

| |
|---|
| 513 Parnassus Ave. <br> HSW 1601 Box 0570 <br> San Francisco, CA 94143 <br> Telephone: (415) 476-2538 |
| Michael R. Harrison, M.D. <br> UCSF Medical Center <br> Pediatric Surgery <br> 513 Parnassus Ave. <br> HSW 1601 Box 0570 <br> San Francisco, CA 94143 <br> Telephone: (415) 476-2538 |
| Diana L. Farmer, M.D. <br> UCSF Medical Center <br> Chief of Pediatric Surgery <br> 513 Parnassus Ave. <br> HSW 1601 Box 0570 <br> San Francisco, CA 94143 <br> Telephone: (415) 476-2538 |
| Anna-Barbara Moscicki, M.D. <br> UCSF Medical Center <br> Adolescent/Pediatric Medicine <br> 400 Parnassus Ave., 2nd Floor <br> San Francisco, CA 94143 <br> Telephone: (415) 353-2002 |

**13a.**  **Signature of Claimant:**

_Kent Kkk_ (for F. Vincent, by permission)
Fabrice N. Vincent, Esq. (attorney for Claimant)

Dated: December 5 , 2006

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery St., 30th Floor
San Francisco, CA 94111
phone: (415) 956-1000
fax: (415) 956-1008

November 21, 2006

Re:    *Allen Faron, et al. v. St. Joseph Hospital, et al.*
           LCHB Client-Matter No. 3144-0003

To Whom It May Concern:

    I hereby authorize the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP (hereinafter "my attorneys") to present any and all claims and complaints on my behalf in connection with my claims for injury and damages related to the medical care and treatment I received from on or about May 24, 2005 to on or about January 19, 2006.

    This authority includes, but is not limited to, allowing my attorneys to present a federal tort claim or claims and subsequent lawsuits, if necessary, against the United States of America and any of its agencies or employees.

                  Very truly yours,

                  Allen Faron

1   Fabrice N. Vincent (State Bar No. 160780)
    Kent L. Klaudt (State Bar No. 183903)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
3   275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
4   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
5
    Attorneys for Claimant Allen Faron
6

7

### PROOF OF SERVICE BY FEDERAL EXPRESS
8

9       I am a citizen of the United States and employed in San Francisco County, California.  I
10 am over the age of eighteen years and not a party to the within-entitled action.  My business
address is Embarcadero Center West, 275 Battery Street, 30th Floor, San Francisco, California
11 94111-3339.

12       I am readily familiar with Lieff, Cabraser, Heimann & Bernstein, LLP's practice for
collection and processing of documents for transmission by Federal Express.  On December 6,
13 2006, I served a copy of the within document(s):

14       1.    **FTCA FEDERAL TORT CLAIM (STANDARD FORM 95) AND**
            **ATTACHMENTS FOR CLAIMANT ALLEN FARON,** and this
15
16       2.    **PROOF OF SERVICE BY FEDERAL EXPRESS**

17 on the persons listed below by FedEx as follows:

| United States Department of Health and Human Services<br>Public Health Service<br>Claims Branch, Parklawn Service Center/AOS/DAM<br>5600 Fishers Lane, Room 5C-10, Parklawn Building<br>Rockville, MD  20857 | Health Resources and Services Administration<br>Public Health Service<br>Claims Branch, Parklawn Service Center/AOS/DAM<br>5600 Fishers Lane, Room 5C-10, Parklawn Building<br>Rockville, MD  20857 |
|---|---|

24       I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.  Executed on December 6, 2006 at San Francisco, California.

|   | *Ernest Crawford*<br>Ernest Crawford |
|---|---|

580170.1                     - 1 -

# Exhibit B

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division

JUL -9 2007

330 Independence Avenue, S.W.
Rm. 4760 Wilbur J. Cohen Federal Building
Washington, DC 20201

CERTIFIED--RETURN
RECEIPT REQUESTED

Fabrice N. Vincent, Esquire
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA   94111

      Re:    Administrative Tort Claim of Allen Faron

Dear Mr. Vincent:

On behalf of your client, Allen Faron, you filed an administrative claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, alleging personal injury to Allen Faron resulting from care provided by employees of Eureka Community Health Center on or about September 2, 2005. This letter constitutes the notice of final determination on this claim, as required by 28 U.S.C. § 2401(b).

The Federal Tort Claims Act authorizes the settlement of any claim of money damages against the United States for, <u>inter alia</u>, injury caused by the negligent or wrongful act or omission of any employee of the Federal government while acting within the scope of employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The claim is denied. The evidence fails to establish that any injuries suffered by Allen Faron were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment.

If your client is dissatisfied with the determination, he may:

1.     file a written request with the agency for reconsideration of the final determination denying the claim within six months from the date of mailing of this determination (28 C.F.R. § 14.9); or

2.     file suit against the United States in the appropriate federal district court within six months from the date of mailing of this determination (28 U.S.C. § 2401(b)).

Page 2 - Fabrice N. Vincent, Esq.

In the event that your client requests reconsideration, the agency will review the claim within six months from the date the request is received.  If the reconsidered claim is denied, she may file suit within six months from the date of mailing of the final determination.

Sincerely yours,

Lisa Barsoomian (by RB)

Lisa Barsoomian
Deputy Associate General Counsel



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7006 0100 0002 1522 2589

R.B.R.

Fabrice N. Vincent, Esquire
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111

CCCGLDCELB
Rm 4750 Cohen Bldg
330 Independence Avenue SW
Washington, DC 20001