PAUL, HASTINGS, JANOFSKY & WALKER LLP
JOHN P. PHILLIPS (State Bar No. 154412)
johnphillips@paulhastings.com
JASON K. SONODA (State Bar No. 248105)
jasonsonoda@paulhastings.com
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105-3441
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

PAUL, HASTINGS, JANOFSKY & WALKER LLP
PETER M. STONE (State Bar No. 157994)
peterstone@paulhastings.com
695 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
Telephone: (714) 668-6200
Facsimile: (714) 979-1921

Attorneys for Defendant
ST. JOSEPH HEALTH SYSTEM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALLEN FARON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ST. JOSEPH HOSPITAL; ST. JOSEPH HEALTH SYSTEM; KEVIN MOLANDER, M.D.; JOHN KELSEY, M.D.; RONALD CORDOVA, M.D.; and UNITED STATES OF AMERICA, inclusive,<br><br>　　　　Defendants. | CASE NO. CGC-07-5602 SBA<br>(Related to C 06-06662 SBA)<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONFIRM STATE COURT ORDER BIFURCATING ALTER EGO CLAIMS AND STAYING DISCOVERY AS TO DEFENDANT ST. JOSEPH HEALTH SYSTEM, OR, IN THE ALTERNATIVE, FOR NEW ORDER BIFURCATING AND STAYING DISCOVERY AS TO SUCH DEFENDANT**<br><br>Date:　　　　June 10, 2008<br>Time:　　　　1:00 PM<br>Courtroom　　3, 3rd Floor<br><br>The Honorable Saundra B. Armstrong |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. THE SUPERIOR COURT ORDER BIFURCATING THE ALTER EGO CLAIMS AND STAYING DISCOVERY SHOULD BE CONFIRMED BECAUSE IT IS CONSISTENT WITH 28 U.S.C. § 1450 ..................................................................................2

III. THE SUPERIOR COURT ORDER BIFURCATING THE ALTER EGO CLAIMS AND STAYING DISCOVERY SHOULD BE CONFIRMED BECAUSE IT PROMOTES JUDICIAL EFFICIENCY AND WILL NOT PREJUDICE PLAINTIFF ...............................................................................................................................3

    A. The Only Causes of Action Remaining Against the Health System are Vicarious Claims Based Upon Plaintiff's Alter Ego Allegations ...........................3

        1. The Only Causes of Action Remaining Against the Health System Are Medical Negligence and Negligent Hiring and Supervision ................4

        2. The Remaining Claims Against the Health System Depend on the Underlying Negligence Claims Against the Hospital and Physician Defendants Because They Are Based on Plaintiff's Alter Ego Theory ..........................................................................................................4

    B. This Court Has Discretion to Bifurcate Issues and Stay Discovery in the Interests of Justice and Efficiency .......................................................................5

        1. Bifurcation is Permitted ...........................................................................5

        2. A Discovery Stay Is Permitted .................................................................6

    C. Bifurcating the Alter Ego Claims Will Alleviate the Unnecessary and Burdensome Expenditure of Resources by the Court and the Parties .................7

    D. Bifurcating the Claims Against the Health System is Efficient and in the Interests of Justice .................................................................................................9

        1. The Health System's Liability Depends Upon The Threshold Issue of the Hospital's Alleged Negligence ......................................................9

        2. There is No Overlap Between Evidence Relevant to the Alter Ego Claims and Evidence Relevant to the Negligence Claims ........................9

        3. Alter Ego Claims Are Equitable Claims Which Must be Tried by a Judge Rather Than a Jury .....................................................................10

    E. Bifurcation of the Alter Ego Claims Will Not Prejudice Plaintiff Because The Potentially Primarily Liable Parties Have More Than Adequate Resources to Pay Any Potential Judgment ........................................................11

IV. CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Divers Local No. 70 of Alameda County*
  415 U.S. 423 (1974) ................................................................................................. 3

*Amato v. City of Saratoga Springs,*
  170 F.3d 311 (2d Cir. 1999) ..................................................................................... 9

*Bell v. Sharp Cabrillo Hospital,*
  212 Cal. App. 3d 1034 (1989) ................................................................................ 11

*City and County of San Francisco v. Flying Dutchman Park, Inc.,*
  122 Cal. App. 4th 74 (2004) ..................................................................................... 9

*Conrad v. Medical Board of Cal.,*
  48 Cal. App. 4th 1038 (1996) ............................................................................... 4, 5

*In re Diet Drugs,*
  282 F.3d 220 (3rd Cir. 2002) ..................................................................................... 3

*Doney v. TRW, Inc.,*
  33 Cal. App. 4th 245 (1995) ..................................................................................... 5

*Dow Jones Co. v. Avenel,*
  151 Cal. App. 3d 144 (1984) .................................................................................. 10

*Ellingson Timber Co. v. Great N. Railway Co.,*
  424 F.2d 497 (9th Cir. 1970) .................................................................................... 7

*Hilao v. Estate of Marcos,*
  103 F.3d 767 (9th Cir. 1996) .................................................................................... 6

*Hinson v. Clairemont Community Hospital,*
  218 Cal. App. 3d 1110 (1990) .................................................................................. 6

*International Financial Services Corp. v. Chromas Technologies Canada, Inc.,*
  356 F.3d 731 (7th Cir. 2004) .................................................................................. 10

*Jinro America Inc. v. Secure Investments, Inc.,*
  266 F.3d 993 (9th Cir. 2001) .................................................................................... 6

*Katsaros v. Cody,*
  744 F.2d 270 (2d Cir. 1984) ................................................................................... 10

*Landis v. North American Co.,*
  299 U.S. 248 (1936) .................................................................................................. 6

*Lathrop v. HealthCare Partners,*
  114 Cal. App. 4th 1412 (2004) .............................................................................. 11

*Little v. City of Seattle,*
   863 F.2d 681 (9th Cir.1988) ..................................................................................6

*Mandeville v. Quinstar Corp.,*
   109 Fed. Appx. 191 (10th Cir.2004) .................................................................6, 9

*M2 Software, Inc. v. Madacy Entertainment,*
   421 F.3d 1073 (9th Cir. 2005) ...............................................................................9

*Mid-Century Insurance Co. v. Gardner,*
   9 Cal. App. 4th 1205 (1992) ..................................................................................8

*NEC Electrics Inc. v. Hurt,*
   208 Cal. App. 3d 772 (1989) .................................................................................7

*Preaseau v. Prudential Insurance Co. of America,*
   591 F.2d 74 (9th Cir. 1979) ...................................................................................3

*Schlumberger Logelco, Inc. v. Morgan Equipment Co.,*
   No. C-94-1776 MHP, 1996 WL. 251951 (N.D. Cal. May 3, 1996) ......................5

*McClaran v. Plastic Industries, Inc.,*
   97 F.3d 347 (9th Cir. 1996) .................................................................................10

*Sonora Diamond Corp. v. Superior Court,*
   83 Cal. App. 4th 523 (2000) ..............................................................................7, 8

*Stoddard v. Ling-Temco-Vought, Inc.,*
   513 F. Supp. 314 (C.D. Cal. 1980) ......................................................................10

**STATUTES**

28 U.S.C. § 1450 ..........................................................................................................2

Fed. R. Civ. P. 42(b) ....................................................................................................6

Cal. Code. Civ. Proc. § 597.5 ......................................................................................6

Cal. Code Civ. Proc. § 3333.2 ...................................................................................11

Bus. & Professions Code §17200 ...........................................................................3, 4

Bus. & Professions Code §17500 ...........................................................................3, 4

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HERBY GIVEN that on June 10, 2008 at 1:00 PM, or as soon thereafter as the matter may be heard by the above-entitled court, located at 1301 Clay Street, Oakland, California, Defendant St. Joseph Health System ("Health System") will and hereby does move as follows for an order confirming the California Superior Court's order bifurcating the claims against the Health System and staying discovery from the Health System, or, in the alternative, for a new order bifurcating and staying discovery from the Health System.

St. Joseph Hospital's motion is based on this Notice of Motion and Motion, on the accompanying Memorandum of Points and Authorities in support of the motion, Declaration of Jason K. Sonoda in support, on the Court's files and records of this action, on any reply papers that may be submitted, and on the arguments of counsel at any hearing that may be held.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a straightforward medical malpractice action in which Plaintiff has sued his treating physicians (the "Physician Defendants"), the hospital at which he presented (St. Joseph Hospital, or the "Hospital") and his local health clinic (the United States owned Eureka Community Health Center, or the "United States"). But in his Complaint, Plaintiff went beyond the claims he had to assert to be made whole, and also alleged claims against St. Joseph Health System (the "Health System"), a non-profit charitable organization based in Orange, California and affiliated with the Hospital.

Following the Health System's unopposed demurrer, filed when this case was active in state court, only two claims remain against the Health System: medical negligence and negligent hiring and supervision. These claims are essentially identical to those asserted against the Hospital and the Physician Defendants. Plaintiff asserts these liability "theories" even though the Health System is statutorily prohibited from providing medical services and neither hired nor supervised any of the persons accused of malpractice. Instead, Plaintiff attempts to impose these liability theories on the Health System by claiming, without any specific supporting facts, that the Health System is the "alter ego" of the Hospital.

For these and other reasons, in August 2007 the Health System brought a motion before the Humboldt County Superior Court seeking bifurcation and a stay of proceedings that would require Plaintiff's claims against the Physician Defendants and Hospital to be tried before the claims against the Health System. The motion sought to conserve the resources of the non-profit Health System, which need not be spent unless Hospital liability was established and the Hospital did not pay. The Superior Court granted the motion, alleviating the need for burdensome discovery, motion practice, pre-trial work, and trial on the "alter ego" claims. Pursuant to the Superior Court's well-reasoned order, the alter ego claims would only become relevant if (1) liability is found on the part of the Hospital, and (2) the damages awarded against the Hospital are in excess of the millions of insurance dollars available to the Hospital – an impossibility given the nature of the case and the "MICRA" statutory caps on the amount of

1  damages available in a medical malpractice action.

2  At the Court's suggestion, the Health System now moves to confirm the Superior Court's order bifurcating the alter ego claims and staying discovery, or, in the alternative, for a new order bifurcating and staying discovery. This motion should be granted because (1) it will lead to the more efficient allocation of resources by both the Court and parties without in any way prejudicing Plaintiff (who will remain free to pursue his claims against the Health System in the unlikely event that it proves necessary to do so) and (2) it is consistent with federal statutes and Supreme Court authority concerning the effect of state court orders in cases removed to federal court. Granting this motion will also continue to enable the non-profit Health System to reallocate resources from this litigation to its mission of improving the health and quality of life of the people in the communities that it serves.

## II. THE SUPERIOR COURT ORDER BIFURCATING THE ALTER EGO CLAIMS AND STAYING DISCOVERY SHOULD BE CONFIRMED BECAUSE IT IS CONSISTENT WITH 28 U.S.C. § 1450

On October 2, 2007, Judge Harold E. Neville, Jr. of the California Superior Court issued an order (the "Bifurcation Order") granting St. Joseph Health System's motion to bifurcate and stay all legal proceedings against St. Joseph Health System "until such time as legal proceedings (including through appeal) have concluded as to Plaintiff's claims against St. Joseph Health Systems St. Joseph Hospital, Kevin Molander, M.D., John Kelsey, M.D., and Ronald Cordova, M.D." (Sonoda Decl. Ex. V.) The Bifurcation Order was the result of a fully briefed and argued motion by the Health System based on the vicarious nature of Plaintiff's claims against it; the likelihood that Plaintiff would be made whole by his claims against the potentially primarily liable parties; and the judicial efficiency of determining the liability of the potentially primarily liable parties before litigating the factually and legally distinct alter ego claims alleged against the Health System. (*See* Sonoda Decl. Exs. Q, R, S, T.)

As shown below, the arguments underlying the Bifurcation Order remain valid and justify confirmation of that order. The Bifurcation Order, however, should also be confirmed for the independent reason that it is consistent with the law governing state court orders following removal to federal court. Section 1450 of Title 28 provides that "[a]ll injunctions, orders, and

other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *See also In re Diet Drugs,* 282 F.3d 220, 231-232 (3rd Cir. 2002) ("After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed."). The Supreme Court explained the rationale for this longstanding rule in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Divers Local No. 70 of Alameda County*:

> Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court. In addition, the statute ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal.

415 U.S. 423, 435 (1974).

While the Court has the same power to modify the Bifurcation Order as the state court, no reason to do so exists here. *See Preaseau v. Prudential Ins. Co. of Am.,* 591 F.2d 74, 78-79 (9th Cir. 1979) (federal court may reconsider prior state court orders in removed cases to the same extent it could reconsider prior federal court orders). None of the facts or law justifying the Bifurcation Order, which are discussed in depth below, have changed since the Bifurcation Order was entered by the Superior Court. As such, the Health System respectfully requests that this Court confirm the well-reasoned order of the Superior Court.

### III. THE SUPERIOR COURT ORDER BIFURCATING THE ALTER EGO CLAIMS AND STAYING DISCOVERY SHOULD BE CONFIRMED BECAUSE IT PROMOTES JUDICIAL EFFICIENCY AND WILL NOT PREJUDICE PLAINTIFF

#### A. The Only Causes of Action Remaining Against the Health System are Vicarious Claims Based Upon Plaintiff's Alter Ego Allegations

Plaintiff originally asserted four causes of action against the Health System in state court: (1) unfair business practices under California Business and Professions Code Section 17200 and common law fraud, (2) false advertising under California Business and Professions Code Section 17500, (3) medical negligence and (4) negligent hiring and supervision. (Sonoda Decl. Ex. E at ¶¶ 39-15.) The only direct claims asserted against the Health System were the

Case No. CGC-07-5602 SBA         -3-         MPA ISO MOTION CONFIRMING STATE COURT ORDER BIFURCATING ALTER EGO CLAIMS AND STAYING DISCOVERY

causes of action for unfair business practices under California Business and Professions Code §17200, common law fraud, and false advertising under California Business and Professions Code §17500. (*Id.*) In March 2007, the Health System sent Plaintiff a letter explaining the significant legal and factual deficiencies in Plaintiff's first and second causes of action and requested that Plaintiff voluntarily dismiss them. (Sonoda Decl. Ex. F.) When Plaintiff refused, the Health System was forced to expend both its own and the Superior Court's resources on a formal demurrer to these causes of action. (Sonoda Decl. Exs. G, I, J.) Notably, the Health System's demurrer, <u>which Plaintiff did not oppose</u>, was based upon the exact same legal and factual deficiencies that the Health System had previously explained to Plaintiff. (Sonoda Decl. Exs. F, G, I, J.) The Superior Court sustained the demurrer during a brief hearing on May 30, 2007.

### 1. The Only Causes of Action Remaining Against the Health System Are Medical Negligence and Negligent Hiring and Supervision

Only two causes of action now remain against the Health System: medical negligence and negligent hiring and supervision. The medical negligence claim is asserted against the Health System despite the fact that the Health System does not provide medical care to anyone. (Sonoda Decl. Ex. A at 34:11-22; 89:2-6.) Similarly, the Health System is not involved in the hiring of any of the doctors that provide Plaintiff's medical care. (Sonoda Decl. Ex. A at 51:8-52:21; 34:11-35:13.) Indeed, as the Health System has explained to Plaintiff numerous times (Sonoda Decl. Ex. F at 6-7; Ex. H at 2.), the Health System (and hospitals) are prohibited as a matter of California law from directly hiring physicians and may not otherwise interfere with the medical decisions of physicians. *Conrad v. Med. Bd. of Cal.*, 48 Cal. App. 4th 1038 (1996). Plaintiff has never responded to this dispositive point.

### 2. The Remaining Claims Against the Health System Depend on the Underlying Negligence Claims Against the Hospital and Physician Defendants Because They Are Based on Plaintiff's Alter Ego Theory

Despite the fact that the Health System played no role in the events that allegedly led to Plaintiff's injuries, Plaintiff attempts to impose liability on the Health System by asserting that the Health System is the "alter ego" of the Hospital. Plaintiff's alter ego claims are entirely devoid of merit. For example, Susan Whittaker, the Health System's person most knowledgeable

on the relationship between the Health System and the Hospital, testified that the Health System plays no role in the operation or management of the Hospital. (Sonoda Decl. Ex. A [Whittaker Dep.] at 18:14-22:16 ("...we're the corporate member; we don't operate the hospital; we don't manage the hospital.").) She also testified that the Health System plays no role in the hiring or management of the Hospital medical staff. (*Id.* at 51:8-52:21, 34:11-35:13.) Instead, the Health System's relationship with the Hospital is limited to providing administrative services and holding limited corporate rights. (*Id.* at 22:11-23:10.) The Health System does not, as is required for the imposition of alter ego liability, dominate and control the operations of the Hospital, much less any aspect of the medical care Plaintiff received.[1]

However, even if Plaintiff could prove his alter ego claim, the Health System would only be liable if Plaintiff establishes negligence by the Hospital and if the judgment is not paid by the Hospital. As the California Court of Appeal explained in *Doney v. TRW, Inc.*, 33 Cal. App. 4th 245 (1995), "[a]lter ego is essentially a theory of *vicarious liability* under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." *Id.* at 249 (emphasis added).[2] As explained below, the vicarious nature of the alter ego claims renders the continued litigation of the remaining causes of action against the Health System unnecessarily burdensome and justifies granting this motion.

**B.    This Court Has Discretion to Bifurcate Issues and Stay Discovery in the Interests of Justice and Efficiency**

   **1.    Bifurcation is Permitted**

---

[1] On July 26, 2007 the Health System sent Plaintiff a letter explaining, yet again, the legal and factual deficiencies in Plaintiff's remaining claims. (Sonoda Decl. Ex. H.) In that same letter, the Health System attempted to meet and confer with Plaintiff on the issues similar to those raised in this motion. (*Id.*) Specifically, the Health System offered Plaintiff a tolling agreement in exchange for the voluntary dismissal of the claims against the Health System without prejudice. (*Id.*) Plaintiff did not respond to this offer.

[2] For purposes of this motion, the Health System presumes that California law applies to Plaintiff's alter ego claims because all of the events alleged to have caused Plaintiff's injuries occurred in California and the Health System is incorporated in California. *See Schlumberger Logelco, Inc. v. Morgan Equipment Co.*, No. C-94-1776 MHP, 1996 WL 251951 (N.D. Cal. May 3, 1996) (holding, based on governmental interest analysis, that Austrian law applied to alter ego claims against an Austrian company because Austria had "a substantial interest in determining whether to pierce the corporate veil of one of its corporations").

This court has the discretion "in furtherance of the convenience or to avoid prejudice, or when separate trials will be conductive to expedition and economy, to order a separate trial of any claim, cross-claim, counterclaim or third party claim, or of any separate issue or of any number of claims, cross-claim, counterclaims or third party claims, or issues." Fed. R. Civ. P. 42(b); *see also Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 998 (9th Cir. 2001) ("Under Rule 42(b), the district court has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues."). Granting a motion for separate trials is subject to reversal on appeal only for abuse of discretion. *Hilao v. Estate of Marcos*, 103 F.3d 767, 782 (9th Cir.1996); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (The district court has inherent authority to manage a case "with economy of time and effort for itself, for counsel and for litigants.").

Bifurcation is particularly appropriate when, as here, resolution of a single claim or issue could be dispositive of the entire case. *See Mandeville v. Quinstar Corp.*, 109 Fed. Appx. 191, 194 (10th Cir.2004) (approving bifurcation when a trial on piercing the corporate veil would have been unnecessary absent a ruling that the corporation breached a contract). Indeed, California law specifically provides for separate trials of threshold issues in medical negligence actions like this one. *See* Cal. Code. Civ. Proc. § 597.5 (requiring, in medical negligence actions, that the defense of statute of limitations be tried separately and before other issues in the case are tried); *see also Hinson v. Clairemont Cmty. Hosp.*, 218 Cal. App. 3d 1110, 1130 (1990) (affirming bifurcation of hospital's liability from physician's medical malpractice liability).

### 2. A Discovery Stay Is Permitted

This Court also has the authority to stay discovery pending the resolution of Plaintiff's underlying negligence claims. Management of discovery lies within the sound discretion of the district court. *Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir.1988) (affirming order staying discovery pending resolution of preliminary dispositive issue). Appellate review of discovery rulings is governed by the abuse of discretion standard. *Id.* Both state and federal courts in California recognize that discovery may be stayed pending the resolution of

bifurcated issues. *See, e.g., Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir.1970) (where bifurcation ordered it is "implicit that the Court also has the power to limit discovery to the segregated issues"). Indeed, as the Ninth Circuit explained in *Ellingson Timber Co. v. Great Northern Railway Co.*, "[o]ne of the purposes of [bifurcation] is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Id.* at 499.

### C. Bifurcating the Alter Ego Claims Will Alleviate the Unnecessary and Burdensome Expenditure of Resources by the Court and the Parties

In order to disregard the corporate entity and impose liability on an alter ego, plaintiff must satisfy two essential requirements. "First, there must be 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.' Second, it must be demonstrated that 'if the acts are treated as those of the corporation alone, an inequitable result will follow.'" *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 777 (1989) (citations omitted); *accord, Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Under California law, factors to be considered in determining whether to apply the alter ego doctrine include:

(1) the commingling of funds or other assets of the corporation and the individual;

(2) the individual's treatment of corporate assets as his or her own;

(3) the individual's representation of personal liability for corporate debts;

(4) failure to maintain adequate corporate minutes or records;

(5) sole ownership of the corporation's stock;

(6) domination and control of the corporation;

(7) use of the same address for the individual and the corporation;

(8) undercapitalization of the corporation;

(9) disregard of formalities; and

(10) the individual's failure to maintain arm's length transactions with the corporation.

*Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213, n. 3 (1992). No one factor or group of factors is considered in isolation; rather, the totality of the circumstances are examined in determining the validity of an alter ego claim. *Id.* at 1213, 1215; *accord*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th at 538.

Such a fact intensive inquiry necessarily requires the expenditure of a great deal of time and resources. Discovery related to these complex issues alone will be burdensome. If the alter ego claims are permitted to proceed, that burden will only increase because trial preparation, pre-trial motions (including motions for summary judgment and motions in *limine*), and, of course, trial of these complex issues will require the expenditure of significant resources by the parties and the Court. It is simply inefficient and unreasonable for the Health System and the Court to expend the time and resources involved in litigating the alter ego claims unless it is actually necessary to do so.[3]

The burden on the Health System in defending against the alter ego claims is particularly significant here. The Health System provides certain corporate services to fourteen non-profit hospitals in California. (Sonoda Decl. Ex. A at 34:11-36:19.) The corporate management of such a large organization, particularly one involved in such a highly regulated field as health care, requires a great deal of effort by the Health System. (Sonoda Decl. Ex. P, ¶¶3-12.) As such, discovery concerning the Health System's large corporate organization is likely to be complicated and burdensome. Moreover, organizing and presenting relevant information in dispositive motions, pre-trial preparations and, eventually, at trial will also be time consuming and expensive. Simply put, the Health System should not be required to expend the significant resources required to litigate claims based on an "alter ego" theory when, as shown below, the Health System's alter ego liability may be mooted by the determination of the underlying negligence claims.

---

[3] Moreover, the early proof demonstrates that there is no basis for alter ego liability. (Sonoda Decl. Ex. A at 18:11-23:10, 34:11-35:13, 51:8-52:21, 70:4-70:21.) For example, Susan Whittaker has testified that the Health System plays no role in the operation of the Hospital or the hiring and management of Hospital staff. (*Id.*)

Case No. CGC-07-5602 SBA                    -8-                    MPA ISO MOTION CONFIRMING STATE
                                                                   COURT ORDER BIFURCATING ALTER EGO
                                                                   CLAIMS AND STAYING DISCOVERY

**D.    Bifurcating the Claims Against the Health System is Efficient and in the Interests of Justice**

    **1.    The Health System's Liability Depends Upon The Threshold Issue of the Hospital's Alleged Negligence**

As explained above, the remaining claims against the Health System are based entirely on Plaintiff's alter ego allegations and are therefore dependent upon the threshold issue of the alleged negligence of the Hospital. The dependent nature of the Health System's liability makes this case ripe for bifurcation. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) (district court properly bifurcated proceedings in trademark infringement action for purposes of judicial economy and to avoid prejudice and confusion); *Mandeville v. Quinstar Corp.*, 109 Fed. Appx. 191, 194 (10th Cir. 2004) (approving bifurcation when a trial on piercing the corporate veil would have been unnecessary absent a ruling that the corporation breached a contract); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) (district court properly bifurcated claims against individual officials and municipal entities in Section 1983 actions when, if plaintiff failed to show constitutional violation occurred in suit against individual, corresponding suit against municipality would be mooted). If the Hospital is found not liable, then there is no need for a trial on the alter ego claims against the Health System. *City and County of San Francisco v. Flying Dutchman Park, Inc.*, 122 Cal. App. 4th 74, 80 n.2 (2004) (noting that "[n]o determination was made below as to the claims against the individually named defendants based on alter ego grounds, and the issue was deemed moot based on the trial court's ruling" on the substantive issues). Determining whether it is necessary to litigate the alter ego issues at all by first proceeding with the claims against the Hospital (and the Physician Defendants) is the height of efficiency.

    **2.    There is No Overlap Between Evidence Relevant to the Alter Ego Claims and Evidence Relevant to the Negligence Claims**

Bifurcation is warranted for another independent reason. The evidence relevant to Plaintiff's primary negligence claims includes the testimony of the physicians, nurses and clerks that treated Plaintiff, Plaintiff's medical records, and expert opinion testimony concerning the

appropriate standard of care. In stark contrast, evidence relevant to Plaintiff's alter ego claims includes documents concerning the relationship between the Health System and the Hospital, documents concerning the observation of corporate formalities, and testimony by Health System executives, accountants and other individuals who likely have never even heard of Plaintiff. (*See* Section III.C. above (listing alter ego factors).) The evidence concerning these two claims is completely separate and unrelated. As such, there is no risk that bifurcating the alter ego claims will result in the presentation of duplicative evidence. It is efficient to bifurcate these claims. *See Stoddard v. Ling-Temco-Vought, Inc.*, 513 F.Supp. 314, 328 (C.D. Cal. 1980) (ordering bifurcation of liability issues from damages issues where evidence used to prove liability would not need to be used to prove damages); *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (affirming bifurcation "because the two phases involved different types of evidence").

### 3. Alter Ego Claims Are Equitable Claims Which Must be Tried by a Judge Rather Than a Jury

Even if there somehow was an evidentiary overlap, such overlap would still not make bifurcation inefficient. In contrast to medical negligence and negligent hiring and supervision claims, alter ego claims are equitable in nature and are therefore tried before a judge, not a jury. *See, e.g., International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004) (holding that in states where piercing the corporate veil is an equitable doctrine, defendant is not entitled to jury trial); *see also McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 357 (9th Cir. 1996) ("Piercing the corporate veil is an equitable remedy"); *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 147-148 (1984) ("It is well-settled that the alter ego doctrine is 'essentially an equitable one and for that reason is particularly within the province of the trial court.'") (*quoting Stark v. Coker*, 20 Cal.2d 839, 846 (1942)). As such, the issue raised by this motion is not whether the alter ego claims should be tried separately, but rather whether they should be tried before or after the negligence claims.

As discussed above, the outcome of the underlying negligence claims may moot the necessity of adjudicating the alter ego claims. Accordingly, it is most efficient to grant this

1  motion and have the negligence claims litigated before the alter ego claims.

2       **E.**     <u>**Bifurcation of the Alter Ego Claims Will Not Prejudice Plaintiff Because The Potentially Primarily Liable Parties Have More Than Adequate Resources to Pay Any Potential Judgment**</u>

          Finally, granting this motion to bifurcate and stay discovery does not prejudice Plaintiff's rights because he can be made whole without resorting to a claim against the Health System. As an initial matter, it is unlikely that Plaintiff will succeed in his underlying negligence claims. Discovery taken to date indicates that the Hospital, the Physician Defendants and the United States possess formidable legal and factual defenses to Plaintiff claims. However, if Plaintiff successfully establishes liability, Plaintiff can be made whole without the participation of the Health System. The Hospital has a primary insurance policy of $5 million per incident and excess insurance in the amount of $5 million. (Sonoda Decl. Ex. K [Certificate of Insurance].) The three Physician Defendants have an additional $3 million in insurance. (Sonoda Decl. Ex. L, Resp. No. 4.1; Ex. M, Resp. No. 4.1; Ex. N, Resp. No. 4.1.) These amounts, even without accounting for the resources of the United States and the related litigation Plaintiff is currently pursuing in Arizona against his pediatrician (*see* Sonoda Decl. Ex. W [Joint Case Management Statement] at 11:15-11:24), are far in excess of Plaintiff's potential recovery because:

- Plaintiff's non-economic damages are capped at $250,000 by the Medical Injury Compensation Reform Act ("MICRA") (Cal. Civ. Code § 3333.2; *Lathrop v. HealthCare Partners*, 114 Cal. App. 4th 1412, 1416 (2004) (applying MICRA cap to the medical negligence action against a medical group); *Bell v. Sharp Cabrillo Hosp.*, 212 Cal. App. 3d 1034, 1037 (1989) (affirming application of MICRA cap to negligent supervision claims));
- Plaintiff's potential lost-wages damages are relatively small due to his learning disability, lack of education and limited employment prospects at the time of his injury (Sonoda Decl. Ex. B at 16:17-21:10, 39:9-42:22, 45:6-46:22, 49:3-58:9);
- Other than small co-payments for medication, Plaintiff has paid nothing for his medical care to date (Sonoda Decl. Ex. B at 64:7-65:14);
- Plaintiff's medical condition is improving and should not require extraordinary

medical treatments (Sonoda Decl. Ex. C at 24:23-25:4, 29:21-30:11, 55:5-55:8; Ex. D at 11:15-11:18, 61:9-64:8, 73:3-73:6); and

- Even if extraordinary treatments were required, the alleged cost of such treatments does not come close to the $13 million in insurance available to the Hospital and Physician Defendants. (Sonoda Decl. Ex. E at ¶ 29 ("Intestinal transplantation cost approximately $813,600 and liver transplantation starts at approximately $392,800")).

The fact that Plaintiff can be made whole without resort to his alter ego claim supports granting this motion for two reasons. First, it demonstrates that Plaintiff will not be prejudiced by the bifurcation of the alter ego claims. Plaintiff does not need "alter ego" claims against the Health System to be made whole. Second, it illustrates the efficiency of adjudicating the underlying negligence claims before litigating the claims against the Health System. Only in the unlikely event that Plaintiff obtains a judgment large enough to exceed the financial backing of the Hospital would it be necessary for the Court and the parties to expend the time and resources required to resolve the alter ego allegations. Again, determining whether it is necessary to litigate these issues at all before expending unnecessary resources is the height of efficiency. The Court should order that the alter ego claims be bifurcated and that discovery concerning those claims be stayed.

## IV. CONCLUSION

The relief sought by this motion is extremely limited. It seeks to maintain the status quo pre-removal, which organized this litigation in a manner that is reasonable and efficient, and does so in a manner that does not prejudice Plaintiff's interests. At the end of the day, Plaintiff will remain free to pursue his claims against the Health System in the event that it proves necessary to do so. However, at the moment, the continued litigation of the claims against the Health System serves only to prejudice the Health System and divert resources away from its charitable mission without advancing Plaintiff's interests in a meaningful way.

The Health System respectfully requests that the Court grant its motion and confirm the Superior Court's order bifurcating the alter ego claims and staying discovery against

the Health System. Alternatively, the Court should issue a new order bifurcating and staying discovery against the Health System. Finally, recognizing the Court's inherent power to manage the scope and sequence of this litigation as it sees fit, the Health System respectfully requests that the Court grant such other and further relief as the Court deems just and proper.

DATED: April 25, 2008

PAUL, HASTINGS, JANOFSKY & WALKER LLP
JOHN P. PHILLIPS
JASON K. SONODA

PAUL, HASTINGS, JANOFSKY & WALKER LLP
PETER M. STONE


By: _____/s/ JASON K. SONODA_____
                JASON K. SONODA

Attorneys for Defendant
ST. JOSEPH HEALTH SYSTEM

LEGAL_US_W # 58676537.1