# EXHIBIT D

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF HUMBOLDT

UNLIMITED JURISDICTION

--oOo--

| | | |
|---|---|---|
| ALLEN FARON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. DR070032 (former |
| | ) | San Francisco Superior |
| vs. | ) | Case Number |
| | ) | CGC-06-454199) |
| ST. JOSEPH HOSPITAL; ST. JOSEPH | ) | |
| HEALTH SYSTEM; KEVIN MOLANDER, | ) | |
| M.D.; JOHN KELSEY, M.D.; RONALD | ) | |
| CORDOVA, M.D.; and DOES 1 | ) | |
| through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

CERTIFIED COPY

DEPOSITION OF

KERILYN K. NOBUHARA, M.D.

April 3, 2007

REPORTED BY: RITA R. LERNER, CSR #3179    (2001-393604)

KEAILYN K. NOBUHARA, M.D.   April 3, 2007

1              (Whereupon, Exhibit 2 was

2              marked for identification.)

3         MR. KLAUDT:  Q.  Doctor, handing you what's

4    been marked as Exhibit 2 to your deposition, this is the

5    deposition notice asking for your attendance at today's

6    deposition.  Have you ever seen this document before?

7         A.   Yes.

8         Q.   You understand that you are appearing here

9    today pursuant to a civil subpoena in this civil action;

10   is that correct?

11        A.   Yes.

12        Q.   And you understand that you're not a party to

13   this action?

14        A.   Yes.

15        Q.   Is Allen Faron your patient?

16        A.   Yes.

17        Q.   When did Allen Faron become your patient?

18        A.   January 20th, 2006.

19        Q.   And how was it that Allen Faron became your

20   patient on January 20th, 2006?  For example, was he

21   referred to you by another doctor, or otherwise?

22        A.   He was referred from Eureka to the pediatric

23   intensive care unit at UCSF Children's Hospital.

24        Q.   Do you know who it was from Eureka who referred

25   Allen Faron to UCSF?

                                                          11

MARILYN K. NOBUHARA, M.D.   April 3, 2007

```
1        A.   No.

2             MR. KLAUDT:   Thanks for the word.

3             MS. LENNON:   Sometimes it's right there, but

4    it's very far away.

5             MR. KLAUDT:   Q.   Have you considered or

6    consulted with any other medical professionals about any

7    future surgeries for Allen?

8        A.   No.

9        Q.   Have you talked to Dr. Rhee about the

10   possibility of any future surgeries?

11       A.   Yes.

12       Q.   What surgery, or surgeries, are those?

13       A.   They would be intestinal lengthening

14   procedures.

15       Q.   Can you describe that in layperson's terms?

16       A.   It would be surgeries to attempt to create more

17   absorptive capacity of the intestine.

18       Q.   Have you recommended those surgeries for Allen?

19       A.   Yes.

20       Q.   How many surgeries would that be?

21       A.   One.

22       Q.   And how long would that surgery last as an

23   estimate, in your experience?

24       A.   How long would the surgery take?

25       Q.   Yes.
```

61

1      A.    Four or five hours.

2      Q.    Can you describe how that surgery is performed?

3      A.    It would require general anesthesia, reopening

4   of the midline laparotomy wound, and, essentially,

5   dividing the bowel to create more intestinal length.

6      Q.    What's the success rate of that surgery, in

7   your experience?

8      A.    50 percent to patients off TPN.

9      Q.    To patients off TPN?  What do you mean by that?

10      A.    To get patients off the TPN.

11      Q.    Oh.  50 percent success rate in getting the

12   patient off TPN?

13      A.    Yes.

14         MS. DELANEY:  Totally off TPN?

15         THE WITNESS:  Yes.

16         MR. KLAUDT:  Q.  What are the risks, if any, of

17   that surgery?

18      A.    Infection, bowel obstruction, leak from the

19   anastomosis.  Leaking.

20      Q.    Have you discussed this future recommended

21   surgery with Allen?

22      A.    Yes.

23      Q.    Was that at your last visit?

24      A.    Yes.

25      Q.    Did he indicate a willingness to undergo this

62

MERRILL LEGAL SOLUTIONS
(800) 869-9132

MARILYN K. NOBUHARA, M.D.    APRIL 3, 2007

1  procedure?

2      A.   I said I would not offer it while he was

3  smoking and drinking.

4      Q.   Did he tell you how much he's smoking?

5      A.   He said, a pack a day.

6      Q.   And what, if anything, did he say about

7  drinking?

8      A.   He would not quantify.

9      Q.   And is he supposed to report back to you with

10  respect to smoking cessation at some point?

11      A.   Yes.

12      Q.   Okay.  Has he done that yet?

13      A.   No.

14      Q.   And do you intend to ask him that at the next

15  visit?

16      A.   Yes.

17      Q.   You'd like him to be completely off of

18  cigarettes before you do the surgery?

19      A.   And alcohol.

20      Q.   And alcohol.  And you have not made any effort

21  to quantify any alleged alcohol intake by Allen Faron;

22  correct?

23      A.   We have made efforts, but he has not made the

24  effort.

25      Q.   So he hasn't quantified it for you?

63

1    A.    Yes.

2    Q.    Any other surgeries that you have recommended?

3    A.    No.

4    Q.    What's the cost of this intestinal lengthening

5  procedure?

6    A.    I don't know.

7    Q.    This is something that you would perform?

8    A.    Yes.

9          May I see Exhibit 1, please?  Thank you.

10         Off the record for a second.  You're trying to

11  leave by 3:30?

12         (Discussion off the record)

13         (Recess held.)

14         MR. KLAUDT:  Q.  Back on the record.  Okay.  So

15  looking at your CV, that's been marked as Exhibit 1, it

16  looks like you have some experience in working with

17  congenital diaphragmatic hernias; would that be fair to

18  say?

19    A.    Yes.

20    Q.    You were a director of a congenital

21  diaphragmatic hernia follow-up clinic, in fact?

22    A.    Yes.

23    Q.    And it looks like you've lectured or written on

24  the subject of congenital diaphragmatic hernias?

25    A.    Yes.

64

1   Delaney.  I represent St. Joseph Hospital of Eureka in

2   this matter.

3        Have you ever expressed the opinion to anyone

4   that Allen Faron had, or has, less than five years to

5   live?

6        A.    No.

7             MS. DELANEY:  Thank you.

8                  EXAMINATION BY MR. FINKEL

9             MR. FINKEL:  Q.  Doctor, my name is Joe Finkel.

10  I represent Drs. Kelsey, Molander and Cordova.  And I

11  wanted to ask you, first of all, how many patients have

12  you treated for diaphragmatic hernia?

13       A.    200.

14       Q.    And as I understand it, Allen Faron is the

15  oldest patient you have ever treated for that condition?

16       A.    Yes.

17       Q.    And the next oldest is a six-year-old; is that

18  right?

19       A.    Yes.

20       Q.    And why is it, do you think, that these

21  patients -- that you encounter these patients so much at

22  a such younger age than Allen Faron?

23            MR. KLAUDT:  Objection.  Calls for speculation.

24  Vague and ambiguous.  Unlimited as to time.

25            THE WITNESS:  Can I have the question again?

73

# EXHIBIT E

1  Fabrice N. Vincent, State Bar No. 160780
   Richard M. Heimann State Bar No. 063607
2  Robert L. Lieff, State Bar No. 037568
   Alexandra L. Foote, State Bar No. 225695
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
4  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
5  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
6  FVINCENT@LCHB.COM

7  Attorneys for Plaintiffs Allen and Nancy Faron

**F I L E D**

San Francisco County Superior Court

JUL 3 1 2006

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           IN AND FOR THE COUNTY OF SAN FRANCISCO - UNLIMITED

11  ALLEN FARON AND NANCY FARON,

12              Plaintiffs,

13  v.

14  ST. JOSEPH HOSPITAL; ST. JOSEPH
    HEALTH SYSTEM; EUREKA
15  COMMUNITY HEALTH CENTER;
    KEVIN MOLANDER, M.D.; JOHN
16  KELSEY, M.D.; RONALD CORDOVA,
    M.D.; and DOES 1 through 50, inclusive,
17
                Defendants.
18

CASE NO.  CGC-06-454199

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

**DEMAND FOR JURY TRIAL**

[Catastrophic Loss of Colon and
Extraordinary, Permanent and Disabling
Injuries to Allen Faron Caused by Medical
Malpractice, Negligent Hiring and <u>Unfair
and Fraudulent Business Practices</u>]

Case Management Conference:
December 15, 2006, 9:00 a.m.

DEPT.:   212

551480.1

# I.   INTRODUCTION

1.     Shocking errors by physicians in the Emergency and Urgent Care Departments of St. Joseph Hospital and Eureka Community Health Clinic caused 19-year-old Allen Faron terrible and irreparable injuries. Defendants' failure to adequately care for Allen Faron caused an easily repairable hernia to progress to extraordinary and catastrophic permanent loss of most of his digestive tract.

2.     As a result of defendants' misconduct, Allen Faron almost died, and was hospitalized at the University of California San Francisco Pediatric and Pediatric ICU for over 110 days. He will never eat or defecate normally again and has required multiple rehospitalizations. Allen Faron faces a future of prolonged illness, permanent disability, and premature death.

3.     Allen Faron's catastrophic injuries are not only totally disabling, they are painful, gruesome, and require constant care. He has an open wound in his abdomen with protruding fistula and requires an abdominal discharge pouch and a colostomy bag. He is in constant pain and tethered 15 hours a day to complex and awkward feeding tubes.

4.     Plaintiff Allen Faron's injuries were easily preventable. Any plain film radiology x-ray, CT scan or MRI should have revealed the hernia, and if it were diagnosed earlier, it could have been easily repaired and he would have led a normal life. Defendants inexcusably failed to provide even basic x-rays, failed in their physical examinations of Allen Faron and failed to do complete blood work or supply other basic medical care and testing necessary for Allen Faron's hernia detection and repair.

5.     Defendants' conduct was reckless and malicious. Allen Faron presented desperately many times for emergency care with acute distress and never received basic abdominal and thoracic examination testing and treatment. He was not supplied standard radiological testing, or given complete blood tests, nor suspected for or diagnosed with obstructive condition. He did not receive the simple hernia detection and repair he so obviously and desperately needed.

551480.1

- 1 -

**II.    PARTIES, VENUE AND JURISDICTION**

6.    Plaintiffs Allen Faron and Nancy Faron are son and mother. For most of this year, they have resided in ICU and/or Critical Care Units of the University of California San Francisco Children's Hospital located at 505 Parnassus, San Francisco and at Family House, 1234 10th Avenue, San Francisco, California. Presently, Allen Faron resides at UCSF Children's Hospital on Parnassus and his mother resides at Family House on 10th Avenue.

7.    The true names and capacities of the defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff therefore sues said defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and therefore alleges, that each of the DOE defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

8.    At all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants and was at all times herein mentioned acting within the scope of said agency and employment.

9.    Plaintiff is informed and believes, and hereby alleges, that Defendants, KEVIN MOLANDER, M.D., and DOES 1 through 25, inclusive, at all times relevant hereto were and are physicians duly licensed to practice medicine in the State of California and doing business at 2700 Dolbeer Street, Eureka, California.

10.    Plaintiff is informed and believes, and hereby alleges, that Defendants, JOHN KELSEY, M.D., and DOES 1 through 25, inclusive, at all times relevant hereto were and are physicians duly licensed to practice medicine in the State of California and doing business at 3340 Glenwood Avenue, Eureka, California and 2700 Dolbeer Street, Eureka, California.

11.    Plaintiff is informed and believes, and hereby alleges, that Defendants, RONALD CORDOVA, M.D., and DOES 1 through 25, inclusive, at all times relevant hereto were and are physicians duly licensed to practice medicine in the State of California and doing business at 2700 Dolbeer Street, Eureka, California.

551480.1                                    - 2 -

1       12.    Defendants EUREKA COMMUNITY HEALTH CENTER, and DOES 26

2  through 45, are and were at all times herein mentioned hospitals, clinics and/or mental health care

3  facilities maintained pursuant to a license existing under and by virtue of the laws of the State of

4  California and/or authorized to do business and doing business at 2412 Buhne Street, Eureka,

5  California.

6       13.    Defendants ST. JOSEPH HOSPITAL, ST. JOSEPH HEALTH SYSTEM

7  and DOES 26 through 45, are and were at all times herein mentioned hospitals, clinics and/or

8  mental health care facilities maintained pursuant to a license existing under and by virtue of the

9  laws of the State of California and/or authorized to do business and/or doing business at 2700

10  Dolbeer Street, Eureka, California.  ST. JOSEPH HEALTH SYSTEM also has a principle place

11  of business in Orange County California.

12       14.    On information and belief, ST. JOSEPH HOSPITAL and ST. JOSEPH

13  HEALTH SYSTEM (hereinafter the "Hospital Defendants") are alter egos of each other and/or

14  set up as separate entities solely as a fiction to avoid responsibility for non-delegable duties and

15  duties affirmatively assumed by virtue of their advertised promises to provide excellence in

16  medical services to the community, promises relied upon by plaintiffs herein to their detriment.

17       15.    Venue is proper in San Francisco County because the majority of Allen

18  Faron's injuries occurred in San Francisco County.  To save his life from defendants' malpractice

19  and tortious misconduct, Allen Faron was flown to San Francisco County for extraordinary and

20  lengthy medical interventions.  Already in 2006, he has required dozens of surgeries performed in

21  San Francisco and has already spent over 110 days at UCSF Children's Hospital at a cost already

22  well in excess of $2.7 million in medical, hospital and drug services provided in San Francisco

23  County by San Francisco residents and entities.  He was rehospitalized on or about July 24, 2006

24  at UCSF for new surgeries and rehabilitation.

25       16.    Venue is proper in San Francisco County because proceedings in this

26  action will focus intensely on the nature and extent of Allen Faron's extraordinary damages, and

27  this significant testimony will be from treating and/or expert physicians located in San Francisco

28  County.

551480.1

- 3 -

17.    Venue is also proper in San Francisco County because Defendant St. Joseph Hospital has a principal place of business in Oakland, California in the form of Octagon Risk Management, a self-funded, insurance-like entity set up by St. Joseph Hospital and Health System. Octagon Risk Management is an independent contractor physician structure which participates in the "independent contractor" physician structure that contributes to inadequate oversight over and resulting substandard medical care for Allen Faron. The fraudulent purpose of this structure is, on information and belief, to evade responsibility to compensate persons the St. Joseph Defendants have injured. Octagon Risk Management is located at 2101 Webster Street, Suite 645, Oakland, California, 94612.

18.    Venue is also proper in San Francisco County because all of the specialty care that and the many doctors that were and are required to keep Allen Faron alive are located at UCSF Children's Hospital in San Francisco on Parnassus Avenue. The Farons intend to relocate permanently to the Bay Area because it is impracticable and/or impossible for them to live permanently and safely in Eureka, California which lacks the complex and special medical care Allen Faron now requires to survive.

19.    Trial of this action is appropriately held in San Francisco, California because the Bay Area is the only location where Allen Faron can safely and practically endure a trial given his extraordinary, continuing and life-long medical needs. San Francisco county is a practicable county for trial for defendants because San Francisco offers convenient accommodations and efficient and fair judicial services. The treating physicians who saved Allen's life and understand his injuries are here in San Francisco County. Justice substantially favors adjudication of Allen Faron's claims in San Francisco County.

20.    Plaintiffs Allen and Nancy Faron likely cannot easily receive an impartial trial in Humboldt County because it is a very small community in which defendant St. Joseph Hospital is one of the largest employers. Many persons in the jury pool and members of the court have sought or could expect to seek medical care from St. Joseph Hospital, Eureka Community Health Center, from St. Joseph related medical entities such as Redwood Memorial Hospital and/or the physician defendants.

551480.1                                    - 4 -

III.    **FACTS**

21.    In the early morning of Thursday, January 19, 2006, Allen Faron presented yet again to St Joseph emergency department. Allen had been at home and was still feeling ill. He had just been seen in St. Joseph emergency department on January 17, 2006, and had sought medical care for signs of major abdominal problems at St. Joseph more than half a dozen times (11/22/02, 5/24/05, 8/04/05, 8/30/05, 1/15/06, 1/17/06 and 1/19/06), and had similarly sought treatment at the Eureka Community Health Center (9/2/05), for reoccurring abdominal pains followed by vomiting, a classic obstructive syndrome that requires radiological and other internal examination.

22.    Defendants inexcusably failed to x-ray or adequately radiologically evaluate or test, diagnose and repair Allen Faron's hernia and obstructions until it was too late. The need for radiological evaluation of abdominal complaints is a basic and longstanding tenet of medicine, "A patient who has a clinical picture suggestive of a bowel obstruction, for example, is best served by obtaining plain radiographs of the abdomen ...." Sleisenger & Fordtran's Gastrointestinal and Liver Disease, Pathophysiology, Diagnosis, Management, 7th edition, 2002; Textbook of Surgery, The Biological Basis of Modern Surgical Practice, Edited by David C. Sabiston, Jr., M.D., James Duke Professor and Chairman Department of Surgery, Duke University Medical Center, 1991, "plain radiographs of the abdomen have their greatest role in the evaluation of the question of mechanical obstruction of the gastrointestinal tract. Supine and erect radiographs of the abdomen should allow the distinction between gastric outlet obstructions, proximal, mid and distal small bowel obstructions, and colonic obstructive processes." CT scanning and MRI scanning were also readily available to Defendants and inexcusably not utilized or not properly utilized on Allen Faron to his detriment.

23.    By January 19, 2006 Allen Faron's undiagnosed hernia had catastrophically and irreversibly progressed and he collapsed in St. Joseph emergency department and had to be resuscitated with intubation and chemical resuscitation. Testing revealed sudden catastrophic hernia progression with massive amounts of bowel within his right hemithorax with marked deformity of the mediastinal structures. He underwent emergently surgery and was

551480.1                                      - 5 -

1  transferred to the University of California San Francisco Pediatric Unit where he underwent

2  numerous surgeries and was hospitalized for more than 110 days at a cost well in excess of $2.7

3  million.

4      24.    Allen's case is not only catastrophic but egregious, because the

5  devastating, life-threatening course of events should never have happened. Allen knew and told

6  his doctors that something was very terribly wrong with him and his repeated and desperate

7  efforts to seek basic medical care from defendants were useless because they ignored his

8  complaints and disregarded his suffering and failed to perform standard, easily available

9  necessary medical testing.

10      25.    Defendants ST. JOSEPH HOSPITAL, ST. JOSEPH HOSPITAL

11  SYSTEM, EUREKA COMMUNITY HEALTH CENTER, KEVIN MOLANDER, M.D., JOHN

12  KELSEY, M.D., RONALD CORDOVA, M.D., and DOES 1 through 50, and each of them,

13  undertook the care and treatment of the Plaintiff, ALLEN FARON, and rendered professional

14  services in the diagnosis, care and treatment of the Plaintiff.

15      26.    At all times herein mentioned, the Defendants, and each of them, failed to

16  exercise the proper degree of knowledge and skill and so negligently, carelessly, recklessly,

17  wantonly, and unlawfully treated, provided care, monitoring, examination, and other professional

18  services that, among other things, they failed to adequately and properly diagnose and treat

19  Plaintiff. Notices pursuant to California Code of Civil Procedure Section 364 were served on

20  April 10, 2006.

21      27.    Plaintiff alleges on information and belief that at all times herein

22  mentioned, the Defendants, and each of them, failed to order and/or perform basic x-rays of, and

23  blood work for, Plaintiff, ALLEN FARON, and/or otherwise failed to meet the standard of care

24  when he sought help with major abdominal problems, and, as a result, failed to timely diagnose

25  and treat his hernia. Defendants' failure to perform basic diagnostic testing on Plaintiff, ALLEN

26  FARON, was plain and obvious error, as he presented repeatedly over the course of

27  approximately seven months with a longstanding history of abdominal pain followed by

28

551480.1

- 6 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  vomiting, which were obvious signs of obstructive syndrome always requiring x-ray review and

2  full blood tests.

3       28.    Timely basic diagnostic testing of Mr. Faron would have revealed the

4  hernia when it could and would have been easily repaired without any permanent injury.

5  Defendants' failure to perform basic testing caused Mr. Faron to suffer catastrophic, permanent

6  and horrific complications and injuries.

7       29.    Mr. Faron's future medical care needs are extraordinary and he will need

8  transplantation of his small intestines and liver; unfortunately these extremely costly procedures

9  hold major risks and living with transplanted organs also requires life-long treatment with

10  dangerous steroids and an ever-present risk of organ rejection.  Intestinal transplantation costs

11  approximately $813,600 and a liver transplantation starts at approximately $392,800, if organs are

12  available.

13       30.    Defendants' negligence caused Plaintiff, ALLEN FARON, to suffer

14  irreversible and catastrophic injuries to, and loss of, most of his digestive system starting on or

15  about January 19, 2006 because of complications from the undiagnosed progressive hernia.

16       31.    Plaintiff alleges on information and belief that Plaintiff, ALLEN FARON,

17  is now in constant pain and was hospitalized and bedridden at UCSF in San Francisco for over

18  110 days from January 19, 2006 to May 2005, with multiple subsequent hospitalizations,

19  including re-hospitalizations with multiple future hospitalizations and surgeries expected.

20       32.    Plaintiff Allen Faron will likely never be able to eat or defecate or live

21  naturally again and requires 15 hours daily of total parenteral nutrition and will require lifelong

22  medical care.  Total parenteral nutrition (TPN), is the complex practice of feeding a person

23  without using the gut, i.e. intravenously.  TPN is delivered with a medical infusion pump. A

24  sterile bag of nutrient solution, between 500 mL and 4 L is provided. The pump infuses a small

25  amount (0.1 to 10 mL/hr) continuously in order to keep the vein open.   The nutrient solution

26  consists of water, glucose, salts, amino acids, vitamins and sometimes emulsified fats.

27       33.    Long term TPN patients suffer from many side effects including systemic

28  hypertension, lack of trace nutrients, electrolyte imbalances, increased blood sugar, and bacterial

551480.1                                    -7-

1  infection, usually due to the increased infection risk from having an indwelling central venous

2  catheter. Liver failure often may also occur, especially in patients like ALLEN FARON who

3  require massive levels of TPN to survive.

4      34.   Plaintiff Allen Faron continues to have an open abdominal wound that may

5  not ever heal and has required many chest tubes just to breathe because his chest cavity was

6  leaking for so long. He has required multiple surgeries and will require many more. Because of

7  the wrongdoing of Defendants, and each of them, Plaintiff, ALLEN FARON, faces a future of

8  prolonged hospitalization, prolonged, constant suffering and premature death. His massive

9  injuries have caused him extraordinary emotional suffering and pain and major severe depression

10  and he has been placed on suicide watch.

11      35.   As a direct and proximate result of the negligence, carelessness,

12  recklessness, wantonness and unlawfulness of defendants, and each of them, and the resulting

13  incident, as aforesaid, Plaintiff, ALLEN FARON, sustained severe and serious injury to his

14  person, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown

15  according to proof.

16      36.   By reason of the foregoing, Plaintiff Allen Faron suffers terribly, has been

17  required to employ the services of hospitals, physicians, surgeons, nurses and other professional

18  services, and has been compelled to incur expenses for air ambulance, ambulance service,

19  medicines, x-rays, TPN, multiple surgeries and other medical supplies and services. Plaintiff is

20  informed and believes, and thereon alleges, that further services of said nature will be required by

21  Plaintiff in an amount to be shown according to proof.

22      37.   At the time of the injury, as aforesaid, Plaintiff, ALLEN FARON, was

23  regularly and gainfully employed. By reason of the foregoing Plaintiff has been unable to engage

24  in his employment for a time subsequent to said accident, and Plaintiff is informed and believes,

25  and upon such information and belief, alleges that he will be unable to work in his said

26  employment for the rest of this life, all to Plaintiff's damage in an amount to be shown according

27  to proof, and estimated at this time to have a present value of between $973,870 and $1,318,480.

28

551480.1              - 8 -

1        38.    True and correct representative color photographs of Allen Faron are

2  attached hereto as Exhibit A.

3                          **FIRST CAUSE OF ACTION**

4      **(Violation of Business & Professions Code § 17200 and Common Law Fraud –**

5          **St. Joseph Hospital and Health System Defendants Only)**

6        39.    Plaintiffs incorporate by reference herein all prior paragraphs of this

7  complaint.

8        40.    Plaintiffs bring this cause of action pursuant to Business & Professions

9  Code §§ 17200 et. seq., including 17204.

10        41.    California Business & Professions Code §17200 provides that unfair

11  competition shall mean and include "all unlawful, unfair or fraudulent business practices and

12  unfair, deceptive, untrue or misleading advertising.

13        42.    St. Joseph Hospital and St. Joseph Hospital System have committed unfair

14  business practices and common law fraud because they have fraudulently and secretly set

15  themselves up as shell fraud companies that employ independent contractor physicians providing

16  compromised medical care.  In response to legitimate claims for fair compensation for errors and

17  mistakes in the delivery of care, Defendants respond by falsely denying that they even provide

18  medical or hospital services at all, claiming to be only business corporation that delegates all

19  medical and hospital care to independent physician contractors.  On information and belief, this is

20  a fraudulent corporate structure intended only to evade liability and damages that should be borne

21  by St. Joseph Hospital and St. Joseph Health System, which hold themselves out to the

22  community as providers of premier medical and emergency services and care.

23        43.    St. Joseph defendants' use of independent contractor physicians results in

24  substandard quality and continuity of care and caused or substantially contributed to the

25  plaintiffs' injuries.

26        44.    The acts and practices of St. Joseph Hospital and St. Joseph Health System

27  in improperly characterizing physicians as independent contractors and/or setting up shell

28  corporations to evade responsibility for mistakes in medical services misled plaintiffs herein and

551480.1                        - 9 -

1  are likely to mislead the general public and therefore constitute unfair business practices within

2  the meaning of Business & Professions Code §§ 17200 et seq. because of related acts of untrue

3  and misleading advertising by St. Joseph Hospital, upon which Plaintiffs and the community have

4  relied, including:

5          a.      Representing to Plaintiffs and the community that they "provide

6  health care to our patients and clients in partnership with other professionals and

7  organizations";

8          b.      Representing to Plaintiffs and the community that they supply

9  excellence in medical care including emergency care: "St. Joseph Hospital operates a

10 full-service, 24-hour Emergency Department staffed by emergency medicine physicians

11 and specially trained and certified emergency care nurses. In addition, St. Joseph

12 Hospital's E.D. is a designated Emergency Department Approved for Pediatrics (EDAP),

13 by North Coast Emergency Medical Services. This designation means that our hospital

14 has specialized policies, equipment, and standards for providing and monitoring

15 emergency pediatric care." (St. Joseph web site);

16         c.      Unlawfully denying claims for compensation and falsely asserting

17 it is not a medical service provider once their mistakes and/or acts of negligence result in

18 compensable injuries, which related claims are then unfairly and improperly denied;

19         d.      St. Joseph Hospital holds itself out to the public as a premier

20 hospital and health care facility which provides excellence in emergency services to the

21 community. Consequently community members, including plaintiffs in this action, look

22 to and rely upon the St. Joseph hospital—not merely individual providers—for medical

23 and emergency room care, as plaintiffs in this action did, to their detriment and lasting

24 injury;

25         e.      St. Joseph Hospital brochures, including Community Health

26 Calendar for May 2006 state, "[W]e thank you for your trust in allowing us to care for

27 you." –St. Joseph Hospital "Emergency Department" brochure. The Regional Yellow

28 Pages includes St. Joseph advertisements, including claims that the Hospital is "Dedicated

551480.1                                    - 10 -

1      to Your Good Health. The latest treatments and technologies, plus professional,

2      compassionate staff." –Advertisement for St. Joseph Hospital, page 156;

3            f.      St. Joseph Health System affirmatively holds itself out to the

4      community as a medical provider (not as a manager of independent contractors) "SJHS is

5      an integrated healthcare delivery system providing a broad range of medical services. The

6      system is organized into three regions—Northern California, Southern California, and

7      West Texas/Eastern New Mexico—and consists of 14 acute care hospitals, as well as

8      home health agencies, hospice care, outpatient services, skilled nursing facilities,

9      community clinics, and physician organizations. The facilities that comprise SJHS offer a

10      wide variety of services within each of the three regions. From well-established acute

11      care hospitals to clinics in non-traditional settings like school rooms and shopping malls,

12      SJHS is establishing a "continuum of care," that is, a system that links and coordinates an

13      entire spectrum of health services." This advertising is false, fraudulent and/or misleading

14      because St. Joseph Hospital responds to legitimate claims for responsibility by falsely

15      claiming not to provide medical care at all which it claims to be the sole responsibility of

16      "independent contractor" physicians; and

17            g.      St. Joseph Health System's web site acknowledges responsibility

18      for care at St. Joseph Hospital which St. Joseph Health System promotes as a "a full-

19      service acute care facility with two campuses. We specialize in cancer treatment, heart

20      care, emergency care, childbirth, and women's and pediatric services. We offer complete

21      cardiac care in our Heart Institute including open heart surgery, cardiopulmonary services,

22      and cardiac rehabilitation, as well as the latest cancer treatments and technologies in our

23      fully accredited Cancer Program. Some of the additional comprehensive services offered

24      are: CAT scan , MRI, Positron Emission Therapy (PET), a Sleep Center, Medical

25      Rehabilitation, Mammography, Radiology and coming soon, IMRT." This advertising is

26      false, fraudulent and/or misleading because, on information and belief, St. Joseph Hospital

27      provides substandard medical services to the community of persons who need care,

28      including Allen Faron, and, on information and belief, provides particularly inadequate

551480.1                 - 11 -

1    care to persons like Allen Faron with limited financial resources and/or MediCal

2    dependants.

3         45.    St. Joseph Hospital Defendants' use independent contractor physicians is

4    not adequately disclosed, is contrary to affirmative advertised representations and reduces the

5    quality of medical and E.R. care and is a cause or contributing cause of plaintiffs' injuries.

6         46.    The foregoing practices constitute unlawful, unfair and fraudulent business

7    acts or practices, within the meaning of California Business & Professions Code §§ 17200 et seq.,

8    as well as unfair, deceptive, untrue and misleading advertising as prohibited by California

9    Business & Professions Code §17500.

10        47.    Provision of hospital services is a non-delegable duty at all hospitals.

11   St. Joseph Hospital, like hospitals nationwide, is accredited and monitored by the Joint

12   Commission of Hospital Accreditation and has non-delegable duties to provide minimum

13   emergency and urgent care to all patients, including ALLEN FARON.

14        48.    The unlawful, unfair and fraudulent business practices of Defendants

15   described above present a continuing threat to members of the public in that Defendants continue

16   to engage in the conduct described therein.

17        49.    As a result of their conduct described above Defendants have been and will

18   be unjustly enriched.  Specifically, Defendants have been unjustly enriched by receipt of millions

19   of dollars in ill-gotten gains from the provision of medical services that they fraudulently

20   advertised for.

21        50.    Plaintiffs detrimentally relied on the St. Joseph Defendants' affirmative

22   misrepresentations of excellence in their management and provision of ER services.

23        51.    Because of the fraudulent misrepresentations made by and concealments of

24   Defendants as detailed above, and the inherently unfair practice of committing a fraud against the

25   public by intentionally misrepresenting and concealing material medical care information, the

26   acts of Defendants described herein constitute unfair or fraudulent business practices.

27

28

551480.1                                 - 12 -

## SECOND CAUSE OF ACTION

**Violation of Business and Professions Code § 17500 et. seq. –
St. Joseph Hospital and Health System Defendants Only)**

52.    Plaintiff incorporated by reference herein all prior paragraphs of the complaint.

53.    Plaintiff brings this cause of action pursuant to Business & Professions Code §17535, in an individual capacity and not on behalf of the general public.

54.    California Business & Professions Code §17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

55.    At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by Business & Professions Code § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use their medical services.

56.    Engaging in advertising programs designed to create the image, impression and belief by consumers, patients and plaintiffs that they supplied standard of care compliant medical, emergency and acute care.

57.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code § 17500.

58.    The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

59.    As a result of their false and misleading statements described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by profits from ill-gotten gains from the sale and delivery of medical services.

551480.1                                    - 13 -

## THIRD CAUSE OF ACTION

### (Medical Negligence- Against All Defendants)

60.     Plaintiff incorporated by reference herein all prior paragraphs as though fully set forth herein.

61.     Defendants were medical providers who failed to provide basic medical services and testing that any reasonable medical provider would have supplied and failed to diagnose and repair a readily diagnosable, easily repairable congenital hernia.

62.     Defendants, and each of them, were and held themselves out to be, knowledgeable in the provision of medical, including emergency and acute care.

63.     At all times relevant, Defendants carelessly and negligently examined, informed, treated, diagnosed, prognosed, prescribed medication to and otherwise treated and rendered medical and other services and care to Plaintiff.

64.     At all times herein mentioned, the relationship between Defendant(s) and Plaintiffs herein was fiduciary in nature, which imposed a duty upon Defendant(s) to fully explore, diagnose, disclose and repair any and all material problems, dangers, hazards and health problems, inherently associated with Allen Faron's health complaints, problems and symptoms.

65.     As a result of the professional negligence and medical malpractice of Defendant(s), Plaintiff has suffered severe injuries and damages as alleged herein.

66.     Plaintiffs complied with the provisions of Code of Civil Procedure § 364 on April 10, 2006 by serving on defendants notice of plaintiffs' intention to commence this action.  Their letter stated:

> Dear St. Joseph Hospital, Dr. Molander, Dr. Kelsey, Dr. Cordova and Eureka Community Health Center:
>
> Please be advised that we represent Allen Faron and his mother Nancy Faron and that they intend to pursue claims against you (and/or your agents, employers or employees) for medical negligence and malpractice as a result of your failure to meet the standard of care in treating Allen Faron.
>
> You failed to order and/or perform basic x-rays of and blood work for Mr. Faron (and/or otherwise failed to meet the standard of care when he sought your help with major abdominal problems), and, as a result, failed to timely diagnose and treat his hernia. This

551480.1

- 14 -

1   negligence caused Mr. Faron to suffer irreversible and catastrophic
    injuries to and loss of most of his digestive system on January 19,
2   2006 because of complications from the undiagnosed progressive
    hernia.

3
    Brave 19-year-old Allen Faron is now in constant pain and remains
4   and has been hospitalized and bedridden at UCSF San Francisco
    since January 19, 2006. He will likely never be able to eat or
5   defecate or live naturally again and requires total parenteral
    nutrition and lifelong medical care. He continues to have an open
6   abdominal wound that may or may not ever heal and requires chest
    tubes just to breathe because his chest cavity is leaking. He has
7   required multiple surgeries and will require many more. Because of
    your wrongdoing, Mr. Faron faces a future of prolonged
8   hospitalization, prolonged, constant suffering and premature death.
    His massive injuries have caused him extraordinary emotional
9   suffering and pain and major severe depression and he has been
    placed on suicide watch.
10
    Our expert physician consultants, including Professor of Medicine
11  John Cello, advise the Farons and me that your failure to perform
    basic diagnostic testing on Mr. Faron is plain and obvious error,
12  shocking and wrong. Mr. Faron presented repeatedly over the
    course of approximately seven months with a longstanding history
13  of abdominal pain followed by vomiting; these were obvious signs
    of obstructive syndrome always requiring x-ray review and CBCs
14  and full blood workup.

15  Timely basic diagnostic testing of Mr. Faron would have revealed
    the hernia when it could have been easily repaired without any
16  permanent injury. Your failure to perform basic testing caused Mr.
    Faron to suffer catastrophic, permanent and horrific complications
17  and injuries. Mr. Faron's only hope for a semi-normal life is
    transplantation of his small intestines and liver; unfortunately this
18  extremely costly procedure has its own major risks.

19  Mr. Faron hopes and requests that you have or will report this
    matter to the California Medical Board as well as the Joint
20  Commission on Hospital Accreditation, and that you undergo
    remedial medical training before treating other patients.
21
    Please let us know if we may provide you with any information or
22  records to facilitate your and/or your counsel or insurors'
    consideration of Mr. Faron's claims.
23
    Very truly yours,
24
    Fabrice Vincent
25
    cc:  Allen and Nancy Faron, UCSF Hospital, Room L-629
26       Pediatrics, 6th Floor, Main Campus, 505 Parnassus Ave., San
         Francisco, CA 94143-2204
27
         Frank Grove, Octagon Risk Services, 2101 Webster Street,
28       Suite 645, Oakland, CA 94612

551480.1                              - 15 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    Felecia Harte, LCHB Legal Nurse Consultant

2    67.    The conduct of Defendants was willful and intentional and done with

3    fraud, oppression and malice against Plaintiff and with a conscious disregard to the rights of

4    Plaintiff. Pursuant to California Code of Civil Procedure § 425.13, Plaintiff asserts punitive

5    damage claims only against the St. Joseph defendants (who are believed to deny that they are

6    medical providers) and will later assert punitive and/or exemplary damages against the individual

7    physicians named in this Complaint. Based upon the allegations set forth in this complaint and

8    Plaintiffs hereby give notice of their intention to amend said claims in the future to allege punitive

9    damages under C.C.P. § 415.13(a).

10    **FOURTH CAUSE OF ACTION**

11    **(Loss of Son's Consortium And Mother's Loss of Income and**
    **Provision of Necessary Medical Support and Nursing Services -**
12    **Against All Defendants)**

13    68.    Plaintiffs incorporate herein by reference all prior paragraphs of this

14    complaint.

15    69.    This cause of action is brought on behalf of Plaintiff Nancy Faron, who is

16    the mother of Plaintiff Allen Faron.   By reason of the injuries sustained by Plaintiffs son Allen,

17    Plaintiff Nancy Faron has missed many months of work and performs necessary medical

18    attendant and nursing services for Allen Faron who depends on his mother for medical assistance

19    and for his survival. It is expected that Allen Faron will require his mother's intensive help for

20    the rest of his life.

21    70.    Allen Faron has had and will continue to have complex needs including

22    stoma care, wound care, chest tube care and total parenteral nutrition by central intravenous line.

23    Ms. Faron dresses his wounds and stoma, cares for his central intravenous line and delivers

24    parenteral nutrition.

25    71.    Plaintiff Nancy Faron has been dramatically injured and damaged by virtue

26    of her son's injuries which have required Nancy's round the clock care and attention, including

27    110 plus days straight she spent caring for him at UCSF Pediatrics, never even returning home

28

551480.1                                    - 16 -

1   during his initial hospitalization course. Allen Faron will require Nancy Faron's care and

2   intensive assistance for life.

3       72.     Nancy Faron has also been and will continue to be deprived of income and

4   her son's consortium, society, comfort, protection, and service, thereby causing and continuing to

5   cause said Plaintiff damages, losses, grief, sorrow, mental anguish, emotional distress and pain

6   and suffering.

7                           FIFTH CAUSE OF ACTION

8            (Negligent Hiring and Supervision- Against All Defendants)

9       73.     Plaintiffs incorporate here all prior paragraphs of the complaint.

10      74.     Defendants were each and all negligent in the hiring and/or supervision of

11  physicians, nurses, agents, and others who failed to timely diagnose and repair Allen Faron's

12  hernia.

13      75.     As a proximate and direct cause of Defendants' negligence in hiring and

14  supervision, plaintiffs have suffered catastrophic, continuing and terrible injuries and damages, as

15  plead above.

16              WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them,

17  as follows:

18      1.      For past, present and future general damages, according to proof;

19      2.      For past and future medical and incidental expenses, according to proof;

20      3.      For past and future loss of earnings and/or earning capacity, according to

21  proof; economic damages, including but not limited to sums incurred and to be incurred for

22  services of hospitals, physicians, surgeons, nurses and other medical supplies and services;

23      4.      For the right to later move to amend to assert punitive and exemplary

24  damages in an amount to be determined at trial;

25      5.      For prejudgment interest on all damages as is allowed by the laws of the

26  State of California;

27      6.      For past and future mental and emotional distress, according to proof;

28      7.      For past and future loss of consortium, according to proof;

551480.1                              - 17 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

8.     For past and future costs of suit incurred herein;

9.     For equitable relief, enjoining Hospital Defendants from the acts of unfair competition and untrue and misleading advertising alleged above, and ordering Hospital Defendants to restore to Plaintiff all funds acquired by means of any act or practice declared by this court to be unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

10.    For interest provided by law including, but not limited to, California Civil Code Sec. 3291; and

11.    Costs and fees of suit (including public benefit attorneys fees awardable under C.C.P. Section 1021.5) and for such other and further relief as the court deems proper.

12.    For estoppel against the Hospital Defendants preventing them for benefiting from MCRA limits due to their unfair business practices in denying that they are health care providers.

13.    For loss of consortium and for the value of virtually round-the-clock nursing and support needed by ALLEN FARON and supplied by Nancy Faron, other family members and nurses and support personnel.

14.    Punitive damages against St. Joseph Hospital and Health System.

15.    For such other and further relief as the Court deems just and proper.

Dated: July 30, 2006          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                              By: _____
                                        Fabrice N. Vincent

                              Robert L. Lieff (State Bar No. 037568)
                              Fabrice N. Vincent (State Bar No. 160780)
                              Alexandra L. Foote (State Bar No. 225695)
                              LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                              Embarcadero Center West
                              275 Battery Street, 30th Floor
                              San Francisco, CA  94111-3339
                              Telephone:  (415) 956-1000
                              Facsimile:  (415) 956-1008

                              Attorneys for Plaintiffs ALLEN and NANCY FARON

551480.1                              - 18 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## JURY DEMAND

Plaintiff demands a trial by jury on all issues which may be tried by a jury.

Dated: _July 30_, 2006

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
                    Fabrice N. Vincent

Robert L. Lieff (State Bar No. 037568)
Fabrice N. Vincent (State Bar No. 160780)
Alexandra L. Foote (State Bar No. 225695)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Attorneys for Plaintiffs ALLEN and NANCY FARON

551480.1

- 19 -







# EXHIBIT F

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
55 Second Street • Twenty-Fourth Floor • San Francisco, CA 94105-3441
telephone 415 856 7000 • facsimile 415 856 7100 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(415) 856-7027
johnphillips@paulhastings.com

34622.00045

March 8, 2007

**VIA FACSIMILE & U.S. MAIL**

Fabrice N. Vincent, Esq.
Lieff, Cabraser, Heinmann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Re:    <u>Faron v. St. Joseph Health System</u>

Dear Fabrice:

As we explained at the recent mediation, St. Joseph Health System (the "Health System") should not be a party to this action. Accordingly, we write to set forth the reasons why plaintiff's claims against the Health System are not reasonably grounded in fact or law and, consistent with your ethical obligations and the California Code of Civil Procedure, must be dismissed. We accordingly request that you dismiss the Health System, particularly before both parties engage in expensive discovery and motion practice for which reimbursement could be sought.

I.      <u>Introduction</u>

The Health System is a non-profit organization affiliated with the Catholic Sisters of St. Joseph of Orange. Its mission is to serve society by providing quality healthcare in its communities for all persons without regard for their station in life. To this end, the Health System owns certain community-based hospitals in Northern California, and is the parent of Defendant St. Joseph Hospital in Eureka.

While the allegations set forth in the Complaint may plead a medical malpractice action against the treating physicians who allegedly misdiagnosed Mr. Faron's hernia, malpractice claims are asserted not only against the doctors, but also against the hospital at which he allegedly presented and against its parent, the Health System – a non-profit entity that simply is a majority member in several subsidiary hospitals that are stand-alone non-profit entities. Notwithstanding some of the allegations in the Complaint, the fact of the matter is that the Health System played absolutely no role in administering the care Mr. Faron received; indeed, it does not operate the hospital, which is its own stand-alone, not-for-profit corporation with its own board of governors, management and finances.

Paul *Hastings*
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 2

Mr. Faron also brings Section 17200 and 17500 claims against the Health System based on alleged misrepresentations concerning the quality of medical care available at St. Joseph's Hospital. However, no misrepresentations were made by the hospital, let alone the Health System – even if an act of negligence occurred here, and irrespective of whether the doctors are independent contractors. St. Joseph Hospital is a good hospital, a fact which has been verified by numerous independent evaluations. In addition, Mr. Faron's claims are not well-grounded in fact or law with regard to standing and causation. Mr. Faron did not rely on any of the alleged misrepresentations. And, on the causes of action alleged, Mr. Faron cannot obtain damages, but could only seek an injunction to prevent any likely future harm (which is none) and disgorgement of whatever profit was *made by the Health System* due to the allegedly improper advertising in his case (which is zero). There is thus no reasonable factual basis for any damages claim.

II.    Mr. Faron's Claims Against the Health System Are Not Well Grounded in Fact or Law

A.    Mr. Faron's Section 17200 and 17500 Claims Have No Factual or Legal Support

For purposes of his Section 17200 and 17500 claims, Mr. Faron alleges St. Joseph Health System engaged in unfair business practices because:

> "they have fraudulently and secretly set themselves up as shell fraud companies that employ independent contractor physicians providing compromised medical care. In response to legitimate claims for fair compensation for errors and mistakes in the delivery of care, Defendants respond by falsely denying that they even provide medical or hospital services at all, claiming to be only business corporation that delegates all medical and hospital care to independent physician contractors. On information and belief, this is a fraudulent corporate structure intended only to evade liability and damages that should be borne by St. Joseph Hospital and St. Joseph Health System, which hold themselves out to the community as providers or premier medical and emergency services are care." Compl. ¶ 42.

Mr. Faron contends such practices by St. Joseph Hospital and the Health System are likely to mislead the public because of "related acts of untrue and misleading advertising" upon which Mr. Faron and the community relied. Compl. ¶ 44. The alleged misleading advertising consists of various statements indicating that quality health and emergency room care is available at St. Joseph Hospital. Compl. ¶ 44(a)-(g).

Paul**Hastings**
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 3

    1.    No Misrepresentations Were Made

Mr. Faron's claims first fail on the merits because no misrepresentations were made.
Deposition testimony taken to date confirms that the Health System never told the
Farons, or anyone else, that the doctors were employees rather than independent
contractors. (N. Faron Tr. 130:1-5, 144:9-145:3.) Nor were they under any duty to
disclose this employment status, which is required by law and thus standard in the
industry. In fact, as discussed in more detail in Section C below, hospital are prohibited
by law from employing doctors or otherwise engaging in the practice of medicine.

In addition, statements that the hospital is a good hospital are true, even if an act of
negligence is proven in this case (which is disputed). They are also mere puffery. *See, e.g.,
Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008 (7th Cir. 2004) (holding that
the phrase "high quality," in reference to the amount of care to residents of a nursing
home, "comes under the category of sales puffery upon which no reasonable person could
rely in making a decision…").

Mr. Faron's Section 17200 claim is also substantively flawed because he cannot satisfy any
of the three disjunctive bases for relief: (1) Mr. Faron cannot satisfy the "unlawful" prong
because there is no actual or alleged underlying statutory violation; (2) Mr. Faron cannot
satisfy the "unfairness" prong because the Health System's alleged conduct is not
immoral, does not violate any public policy, and is not injurious, and furthermore, the
Health System's alleged conduct is not the cause of any harm to the Mr. Faron; and (3)
Mr. Faron cannot satisfy the "fraudulent" prong because the Health System was under no
duty to disclose the relationship of the hospital to the doctors, and all other "statements"
by the hospital regarding the quality of its services are mere puffery. Indeed, the
documents Mr. Faron has produced supporting his misrepresentation allegations are
entirely devoid of statements of actionable fact. Instead, the documents consist of
pictures of road-signs pointing the way to the hospital and basic advertisements that
contain unactionable statements concerning the types and quality of care available at St.
Joseph Hospital. Because there were no misrepresentations, and since the Health
System's alleged conduct was not unlawful, unfair or fraudulent, Mr. Faron's Section
17200 and 17500 claims fail.

    2.    Mr. Faron Lacks Standing Because He Cannot Show That He
        Suffered an Injury in Fact As a Result of the Health System's
        Alleged Fraud

Mr. Faron does not satisfy the separate standing requirements of California Business &
Professions Code § 17204 because he has not alleged injury in fact "as a result of" the
alleged unfair competition and has not shown a loss of money or property. *See Branick v.
Downey Savings and Loan Assoc.*, 39 Cal. 4th 235, 240 (2006) ("After Proposition 64, only

Paul*Hastings*
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 4

those private persons 'who have suffered injury in fact and have lost money or property' (§§ 17204, 17535) may sue to enforce the unfair competition and false advertising laws"); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) ("after Proposition 64, a person seeking to represent claims on behalf of others must show that (1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising."). Mr. Faron has not personally paid medical expenses that he would not have paid but for the allegedly improper advertising. (A. Faron Tr. 63:23-65:14; N. Faron Tr. 68:15-72:17.) And, had payments been made, they would not have been made to the Health System.

In addition, Mr. Faron has not and cannot show that he lost money or property *as a result of* the alleged fraudulent conduct by St. Joseph Health System. *See Laster*, 407 F. Supp. 2d at 1194 (dismissing Section 17200 claim because "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of those advertisements") (emphasis in original). While we have not yet had an opportunity to complete Mr. Faron's deposition, the testimony of Mr. Faron and his mother so far makes clear that they never even saw, much less relied upon, any of the allegedly false advertisements identified in the Complaint. Those facts include:

- The only factor that Mr. Faron considered in deciding which health care facility to use was how close the facility was to his home how quickly he could receive care (N. Faron Tr. 114:14-115:12, 121:8-10; A. Faron Tr. 152:18-153:18) ("Q: So other than just being able to get in and out faster, to your knowledge, were there any other factors that were important to your son in deciding which facility to go to? A: No.")

- No documents or advertisements influenced Mrs. Faron's decision to take her son to St. Joseph Hospital (N. Faron Tr. 132:7-137:16);

- St. Joseph Hospital is located approximately one mile from Mr. Faron's home (N. Faron Tr. 111:25-112:2), a distance that Mr. Faron simply walked when he wanted to go to the hospital (N. Faron Tr. 112:3-8; A. Faron Tr. 143:20-144:2);

- Mr. Faron's learning disability makes it extremely unlikely that he read and relied upon any of the allegedly fraudulent advertisements identified in the Complaint, a point his mother confirmed (A. Faron Tr. 17:8-21:10; N. Faron Tr. 109:22-110:14.);

Paul*Hastings*
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 5

- The Farons have acknowledged that Mr. Faron did not use or own a computer prior to his visits to St. Joseph Hospital, (A. Faron Tr. 22:13-16; N. Faron Tr. 99:16-103:24), that Mrs. Faron never did any internet or other type of research on St. Joseph Hospital (N. Faron Tr. 100:23-102:24, 116:2-22) and that it is not possible that any information on the internet played any role in Mrs. Faron's decision to take her son to St. Joseph Hospital (N. Faron Tr. 131:24-132:6);

- The St. Joseph Hospital pamphlets that Mrs. Faron saw did not play any role in the Faron's decision to use St. Joseph Hospital (N. Faron Tr. 131:15-21) ("Q: ....So is it fair to say that those pamphlets and any information in those played no role in the decision to go to St. Joseph; is that fair? A: That's fair.");

- Mrs. Faron only reviewed the telephone book to get the phone number to St. Joseph Hospital and cannot recall any other information in the telephone book related to St. Joseph Hospital (N. Faron Tr. 117:15-119:15);

- The street signs pointing the way to St. Joseph Hospital did not, and could not have, played any role in the Faron's decision to use St. Joseph Hospital (N. Faron Tr. 131:3-14);

At the end of the day, it is quite obvious that Mr. Faron went to St. Joseph because it is where he would logically go, not because of any alleged false statements he actually relied upon.

3.     Mr. Faron Cannot Obtain Any Remedy Under Section 17200

The only remedies available under Section 17200 are injunctive relief and restitution, and neither is available to Mr. Faron. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (internal citation omitted) ("[w]e have stated that under the UCL, prevailing Plaintiffs are generally limited to injunctive relief and restitution.'") Mr. Faron does not have standing to seek injunctive relief because there is no imminent threat of harm to them from the Health System's alleged unfair conduct. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2006) (the "injunctive remedy should not be exercised 'in the absence of any evidence that the acts are likely to be repeated in the future.'")

Restitution is similarly inapplicable because the Mr. Faron does not seek the return of money from the Health System which it obtained and in which he has a vested interest because he has paid none and the Health System has received none. (N. Faron Tr. 68:15-72:17; A. Faron Tr. 65:9-14 ("Q: So to your knowledge as you sit here now, Mr. Faron,

**Paul**Hastings
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 6

you don't believe that you personally are out of pocket any money for any of the medical care that you received either in Eureka or down here at UCSF; is that true? A: Yeah.)) Rather, Mr. Faron improperly seeks damages he cannot recover for his alleged injuries. *See Korea Supply*, 29 Cal. 4th at 1149. Accordingly, Mr. Faron does not have a remedy under Section 17200.

B.      Mr. Faron's Common Law Fraud Claim Fails as a Matter of Law

Mr. Faron's common law fraud claim suffers from many of the same deficiencies as his Section 17200 claim. A common law fraud action requires (1) a representation of a material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the Plaintiff to act, and (4) reliance upon the representation as true by the Plaintiff to his detriment. *See, e.g., City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 481 (1998). As discussed above, the statements concerning the quality of care available at St. Joseph Hospital are not statements of fact, but rather unactionable puffery. *See, e.g., Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008 (7th Cir. 2004). Moreover, even if such statements could form the basis for a fraud claim, it is clear from the deposition testimony taken thus far that Mr. Faron was not even aware of, much less relied upon, those statements before deciding to walk to the closest available hospital for treatment.

Furthermore, the related contention concerning the alleged failure to disclose that St. Joseph Hospital physicians are independent contractors rather than employees cannot form the basis for a fraud claim for at least three reasons. First, a mere omission is not a representation of fact for the purposes of common law fraud unless the defendant was under an affirmative duty to disclose that fact. *See., e.g., Lingsch v. Savage*, 213 Cal. App. 2d 729, 735 (1963). Here, the Health System had no obligation to disclose the employment status of anyone, much less the status of physicians whose contractual relationship, which is standard in the industry, was with an entirely separate organization, St. Joseph Hospital, not the Health System. Second, courts in this state have held *as a matter of law* that hospitals are prohibited from hiring physicians as employees rather than independent contractors. *Conrad v. Medical Board of California*, 48 Cal. App. 4th 1038 (1996). Third, the Farons clearly did not know of or rely upon the physicians' employment status in deciding to walk to St. Joseph Hospital. (N. Faron Tr. 130:1-5, 144:9-145:3.)

C.      St. Joseph's Health System Did Not Provide Medical Care to Mr. Faron and Therefore Is Not Liable for Any Alleged Negligence

Despite the fact that the Health System did not take part in his medical care, Mr. Faron joins the Health System in his medical negligence action against St. Joseph Hospital and the Individual Physicians. Specifically, Mr. Faron asserts that "Defendants [including St. Joseph Health System] carelessly and negligent examined, informed, treated, diagnosed, prognosed, prescribed medication to and otherwise treated and rendered medical and

**Paul**Hastings
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 7

other services and care to Mr. Faron." Compl. ¶ 63. However, the Health System takes
no part in the daily operations of the Hospital and does not provide medical services to
anyone, including Mr. Faron. Nor could the Health System have engaged in the practice
of medicine. California Business and Professions Code § 2400 provides in pertinent part

that "corporations and other artificial legal entities shall have no professional rights,
privileges or powers…" Under Section 2400, as well as the "corporate practice doctrine,"
it has long been held that neither hospitals nor their corporate parents may engage in the
practice of professional medicine. *See People v. Pacific Health Corp.*, 12 Cal. 3d 156, 158
(1938); *Stiensmith v. Medical Board*, 85 Cal. App. 4th 458, 466 (2000).

There is also no basis for alter ego liability against the Health System. The Health System
is a not-for-profit parent corporation that has nothing more than an ownership interest as
the majority member in separate not-for-profit corporation St. Joseph Hospital. *See Luis v.
Orcutt Town Water Co.*, 204 Cal.App.2d 433, 443-44 (pleading that subsidiary is owned
managed and operated by parent corporation not sufficient to establish alter ego liability).
The Health System and the Hospital have completely separate management, assets and
business models. *See Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.*,
116 Cal.App.3d 111, 119 (1981) (alter ego liability may only be imposed "where the parent
controls the subsidiary to such as degree as to render the latter the mere instrumentality of
the former….").

> D.   St. Joseph's Health System Neither Hired Nor Supervised Any of the
>       Health Professionals that Provided Medical Care to Mr. Faron

Finally, in support of his Negligent Hiring and Supervision cause of action, Mr. Faron
contends that "Defendants were each and all negligent in the hiring and/or supervision of
physicians, nurses, agents, and others who failed to timely diagnose and repair Allen
Faron's hernia." Compl. ¶ 74. However, as already discussed above, the Health System
takes no part in the hiring and supervision of anyone working at St. Joseph Hospital.

III.   Conclusion

The Health System is simply a majority member in the not-for-profit corporation that is
St. Joseph Hospital. The Health System does not belong in this action: The claims
against the Health System have no reasonable factual or legal support and cannot be
maintained in good faith consistent with California law. We have sympathy for Mr.
Faron's medical status and for his family. We also have respect for your law firm and its
typical consideration of its ethical responsibilities. In these circumstances, we do not wish
to have to conduct discovery and motion practice and seek our fees and costs, and thus
request that you promptly dismiss the Health System from the case.

**Paul**Hastings
ATTORNEYS

Fabrice N. Vincent, Esq.
March 8, 2007
Page 8


If you have any questions or wish to discuss this further, please call me.

Very truly yours,

John P. Phillips
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

JPP:jh

LEGAL_US_W # 55783937.1

# EXHIBIT G

## Sonoda, Jason K.

| | |
|---|---|
| **From:** | Klaudt, Kent [kklaudt@lchb.com] |
| **Sent:** | Thursday, March 29, 2007 3:18 PM |
| **To:** | Phillips, John P.; Sonoda, Jason K. |
| **Cc:** | Vincent, Fabrice |
| **Subject:** | Faron - your letter of March 8, 2007 |

John,

We have studied your March 8 letter to us, in which you request that we dismiss your client Defendant St. Joseph Health System from this lawsuit. Our client will not dismiss this defendant because the Health System is liable for negligence, both directly and vicariously, for numerous acts and omissions related to the care that Allen Faron received (and care that he should have received but did not receive due to your client's negligence and the negligence of the hospital that your client owns and controls).

For example, and as you likely know, there is evidence on your client's website supporting many of plaintiff's theories of negligence related to relevant hiring, staffing, operations, quality assurance, and budgetary issues at St. Joseph Hospital. Even assuming that your client is not directly negligent for all or some of the acts and omissions that caused Allen Faron's injuries and damages, your client faces vicarious liability for such negligence. As such, Allen Faron will not dismiss your client.

Regarding the 17200 claims, plaintiff intends to take discovery on the relationships between your client and the hospital, including written discovery that you will receive in the next day or two, and a "person most qualified" deposition on the same subject in early May. If, following the conclusion of this discovery, the arguments made in your March 8 letter become viable, then Allen Faron will be happy to re-consider and re-evaluate at that time the issue of whether or not to prosecute the 17200 claims. Mr. Faron will not consider dropping the 17200 claims, which he has a good faith basis for bringing, until at least such time as we have had the opportunity to conduct some discovery regarding the same.

Moreover, as mentioned previously, whatever ultimately becomes of the 17200 claims, there is no question that the Health System is liable, and liable probably both directly and indirectly, for multiple acts and omissions at St. Joseph Hospital which were a substantial factor in causing Allen's catastrophic injuries.

Please feel free to contact Fabrice or me if you have any questions or concerns.

Best regards,

Kent

Kent L. Klaudt, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111
tel: (415) 956 - 1000 ext. 2311
fax: (415) 956 - 1008
kklaudt@lchb.com

# EXHIBIT H

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
telephone 415-856-7000 • facsimile 415-856-7100 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(415) 856-7027
johnphillips@paulhastings.com

July 26, 2007                                                        34622.00045

VIA FACSIMILE & U.S. MAIL


Fabrice N. Vincent, Esq.
Kent L. Klaudt, Esq.
Lieff, Cabraser, Heinmann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Re:    <u>Faron v. St. Joseph Health System</u>

Dear Fabrice and Kent:

I am writing to renew our request that Plaintiff voluntarily dismiss St. Joseph Health System (the "Health System") from this case. As we have explained before, and has been proven true during discovery, the facts simply do not support the remaining theories of liability against the Health System. Accordingly, we set forth below a proposal that will protect the interests of Plaintiff and the Health System and explain the reasons why it should be accepted before you require our client to incur substantial legal fees that it would otherwise direct towards its mission in Mr. Faron's community.

I.    <u>Introduction and Overview of Claims</u>

This case began with four causes of action against the Health System. Plaintiff's common law fraud, Section 17200 and Section 17500 claims were dismissed with prejudice following the Health System's unopposed demurrer. There is no factual basis for direct liability against the Health System on the only remaining causes of action – medical malpractice and negligent hiring and supervision. With respect to Plaintiff's alter ego theory, there is no basis for alter ego liability either, as the deposition of Susan Whittaker clearly demonstrates. We understand that you may have a different opinion on this issue. However, the Health System presence in this case serves no practical purpose, even if there was some basis for vicariously liability, because of (1) the cap on non-economic damages on the remaining cause of action mandated by the Medical Injury Compensation Reform Act ("MICRA"); (2) the nature of Plaintiff's claim for economic damages; and (3) the insurance amounts available to make Plaintiff whole from the parties who actually face potential liability (*i.e.*, the proper defendants in this action).

Fabrice N. Vincent, Esq.
Kent L. Klaudt, Esq.
July 26, 2007
Page 2

II.    Mr. Faron's Claims Against the Health System Are Not Grounded in Fact or Law

A.    St. Joseph's Health System Did Not Provide Medical Care to Mr. Faron
and Therefore Is Not Liable for Any Alleged Medical Negligence

Despite the fact that the Health System did not take part in his medical care, Mr. Faron
joins the Health System in his medical negligence action against St. Joseph Hospital and
the Individual Physicians. As you know, the Health System – a non-profit entity that is a
majority member in several subsidiary hospitals that are stand-alone non-profit entities –
had nothing to do with Plaintiff's injuries. After over a dozen depositions, one simple,
dispositive fact remains true: the Health System played no role in administering the care
Mr. Faron received.

Moreover, the extensive deposition testimony to date establishes that the Health System
takes no part in the daily operations of the Hospital and does not provide medical services
to anyone. As we explained in our earlier letter, nor could the Health System have
engaged in the practice of medicine. This is a critical point, which Plaintiff should
acknowledge at this stage of the case. California Business and Professions Code § 2400
provides in pertinent part that "corporations and other artificial legal entities shall have no
professional rights, privileges or powers…." Under Section 2400, as well as the
"corporate practice doctrine," it has long been held that neither hospitals nor their
corporate parents may engage in the practice of professional medicine. *See People v. Pacific
Health Corp.*, 12 Cal. 3d 156, 158 (1938); *Stiensmith v. Medical Board*, 85 Cal. App. 4th 458,
466 (2000). There is no basis for direct liability against the Health System for medical
negligence.

B.    St. Joseph's Health System Neither Hired Nor Supervised Any of the
Health Professionals that Provided Medical Care to Mr. Faron

In support of his Negligent Hiring and Supervision cause of action, Mr. Faron contends
that "Defendants were each and all negligent in the hiring and/or supervision of
physicians, nurses, agents, and others who failed to timely diagnose and repair Allen
Faron's hernia." Compl. ¶ 74. However, as discussed above and established during
discovery, the Health System takes no part in the hiring and supervision of anyone
working at St. Joseph Hospital. Indeed, during her deposition, Susan Whitaker testified
that the Health System plays no role in the hiring or supervision of the medical personnel
who treated Plaintiff. Tr. 51:8-52:21; 34:11-35:13. Instead, that responsibility belongs to
the chief of staff of the Hospital, who is not hired by and who does not report to the
Hospital's CEO. *Id.*

III.    The Health System is Not Vicariously Liable for the Alleged Negligence of the
Other Defendants in This Action

Fabrice N. Vincent, Esq.
Kent L. Klaudt, Esq.
July 26, 2007
Page 3

In addition to the above, there is no basis for alter ego liability against the Health System. The Health System is a not-for-profit parent corporation that has nothing more than an ownership interest as the majority member in a separate not-for-profit corporation, St. Joseph Hospital. *See Luis v. Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 443-44 (pleading that subsidiary is owned managed and operated by parent corporation not sufficient to establish alter ego liability). The Health System and the Hospital have completely separate management, assets and business models. *See Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.*, 116 Cal. App. 3d 111, 119 (1981) (alter ego liability may only be imposed "where the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former....").

Susan Whittaker cogently explained the separateness of the Health System and the Hospital during her deposition. She testified that the Health System plays no role in operation or management of the Hospital. Tr. 18:14-22:16 ("...we're the corporate member; we don't operate the hospital; we don't manage the hospital."). She also testified that the Health System plays no role in the hiring or management of the Hospital medical staff. Tr. 51:8-52:21; 34:11-35:13. Instead, the Health System's interactions with the Hospital are limited to providing administrative services and holding limited corporate rights. Tr. 22:11-23:10. The Health System does not, as is required for the imposition of alter ego liability, dominate and control the operations of the Hospital, much less any aspect of the medical care Plaintiff received.

IV.    Plaintiff's Alter Ego Claim Against the Health System is Unnecessary and Wasteful

The Health System does not belong in this case even if there is some basis for alter ego liability. Plaintiff's non-economic damages are capped at $250,000 by MICRA. Cal. Civ. Code § 3333.2; *Lathrop v. HealthCare Partners*, 114 Cal. App. 4th 1412, 1416 (2004) (applying MICRA to vicarious medical negligence claims); *Bell v. Sharp Cabrillo Hosp.*, 212 Cal. App. 3d 1034, 1037 (1989) (applying MICRA to negligent hiring and supervision claims). Depositions taken to date indicate that Plaintiff's earning potential was relatively limited before the events underlying this case and that Plaintiff's medical condition is improving. Accordingly, the amount of Plaintiff's future lost earnings and long term medical care will most certainly fall within the limits of the insurance policies available to the other defendants in this action. Even if Plaintiff proved negligence on the part of the Hospital and/or the Individual Physicians, then proved alter ego liability on the part of the Health System, the Health System would not need to contribute to Plaintiff's potential judgment. Including the Health System in this case does nothing to protect Plaintiff's interests. Instead, it serves only to unnecessarily divert funds away from the Health System's important charitable mission.

Paul*Hastings*

Fabrice N. Vincent, Esq.
Kent L. Klaudt, Esq.
July 26, 2007
Page 4

V.     Proposal

For all of these reasons, the Health System offers the following proposal: Plaintiff will
voluntarily dismiss its claims against the Health System without prejudice. In exchange,
the Health System will enter into a tolling agreement with Plaintiff. If Plaintiff succeeds in
establishing negligence on the part of the other Defendants in this action and is unable to
collect the full amount of any judgment, Plaintiff will be able to reinstate its claims against
the Health System. This proposal will protect the interest of both Plaintiff and the Health
System and allow the case to move forward without requiring the Health System to incur
needless defense costs, including the costs associated with a motion for summary
judgment and follow-on motion practice to recover the litigation fees our client has
incurred in this matter.

VI.    Discovery

While you and your clients consider this letter, the Health System also requests that
Plaintiff withdraw the discovery directed at the Health System, including the deposition
notice recently served on Joe Mark.

As an initial matter, the date set in the notice of deposition, August 9, 2007, is unavailable
because of existing obligations. Moreover, as you know, Mr. Mark is a high-ranking
corporate officer whose job is critical to the mission of the System and the people of
Humboldt County. He has absolutely no knowledge or information about Plaintiff's care
and treatment; nor does he have discoverable information about any other issue germane
to the litigation given the claims that remain in the case. Accordingly, a withdrawal of his
deposition notice will not only provide you with adequate time to assess our letter, it will
also eliminate the need for the System to move to quash the deposition notice given the
absence of any justification for taking Mr. Mark's deposition given the breadth and scope
of Ms. Whittaker's testimony. *See Liberty Mutual Ins. Co. v. Sup. Ct.*, 10 Cal. App. 4th 1282,
1289 (1992) (requiring an attempt to obtain information through less intrusive means or a
showing of superior relevant knowledge on the part of the deponent before deposing
high-ranking corporate officials).

VII.   Conclusion

As you know, the Health System is a non-profit organization affiliated with the Catholic
Sisters of St. Joseph of Orange. Its mission is to serve society by providing quality
healthcare in its communities for all persons without regard for their station in life –
something which we have heard you express concern about during the course of this
litigation. Since the limited claims against the Health System only detract from this
important mission, we ask that you consider the proposal set forth in this letter and
respond to us as soon as possible.

Fabrice N. Vincent, Esq.
Kent L. Klaudt, Esq.
July 26, 2007
Page 5

If you would prefer to discuss these terms through Ms. Westerfield (JAMS), please ask her to contact me directly.

Very truly yours,

John P. Phillips
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

JPP:ak
LEGAL_US_W # 56699930.2