# EXHIBIT Q

1   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    JOHN P. PHILLIPS (State Bar No. 154412)
2   JASON K. SONODA (State Bar No. 248105)
    55 Second Street
3   Twenty-Fourth Floor
    San Francisco, CA 94105-3441
4   Telephone: (415) 856-7000
    Facsimile: (415) 856-7100
5
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
6   PETER M. STONE (State Bar No. 157994)
    695 Town Center Drive, Suite 1700
7   Costa Mesa, CA 92626
    Telephone: (714) 668-6200
8   Facsimile: (714) 979-1921
9   Attorneys for Defendant
    St. Joseph Health System
10

5  8/16/07

FILED
AUG 22 2007
SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

Jodie W

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA
12                    COUNTY OF HUMBOLDT
13

14   ALLEN FARON,                        CASE NO. DR070032

15             Plaintiff,                NOTICE OF MOTION TO BIFURCATE
                                         ALTER EGO CLAIMS AND STAY TO
16        vs.                            DISCOVERY

17   ST. JOSEPH HOSPITAL; ST. JOSEPH
     HEALTH SYSTEM; KEVIN               Date: September 21, 2007
18   MOLANDER, M.D.; JOHN KELSEY,       Time: 8:45 a.m.
     M.D.; RONALD CORDOVA, M.D.; and    Dept: 4
19   DOES 1 through 50, inclusive,      Date Complaint Filed: July 14, 2006
                                        1st Amended Complaint Filed: July 31, 2006
20             Defendants.              Trial: January 22, 2008

21
22
23
24
25
26
27
28

## NOTICE OF MOTION TO
## BIFURCATE ALTER EGO CLAIMS AND STAY DISCOVERY

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2007, at 8:45 a.m. in Courtroom 4 of the above entitled court located at 825 Fifth Street, Eureka, California, Defendant St. Joseph Health System will, and hereby does, move this Court for an Order bifurcating adjudication of Plaintiff's alter ego claims against St. Joseph Health System and staying all discovery concerning Plaintiff's alter ego claims.

This motion is made pursuant to Sections 598 and 1048 of the Code of Civil Procedure. This motion should be granted on the grounds that it will promote judicial economy, minimize the waste of resources and serve the interests of justice.

The Motion is based upon this Notice of Motion; the accompanying memorandum of points and authorities; the accompanying Declaration of Jason K. Sonoda; the pleadings, papers, and records on file in this action; and upon such oral argument and other evidence as the Court may receive at the time of the hearing.

DATED: August 16, 2007

PAUL, HASTINGS, JANOFSKY & WALKER LLP
JOHN P. PHILLIPS
JASON K. SONODA

PAUL, HASTINGS, JANOFSKY & WALKER LLP
PETER M. STONE

By: _____
JASON K. SONODA

Attorneys for Defendant
ST. JOSEPH HEALTH SYSTEM

LEGAL_US_W # 56877611.1

-1-

# EXHIBIT R

1
PAUL, HASTINGS, JANOFSKY & WALKER LLP
JOHN P. PHILLIPS (State Bar No. 154412)
2
JASON K. SONODA (State Bar No. 248105)
55 Second Street
3
Twenty-Fourth Floor
San Francisco, CA 94105-3441
4
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
5
PAUL, HASTINGS, JANOFSKY & WALKER LLP
6
PETER M. STONE (State Bar No. 157994)
695 Town Center Drive, Suite 1700
7
Costa Mesa, CA 92626
Telephone: (714) 668-6200
8
Facsimile: (714) 979-1921

9
Attorneys for Defendant
St. Joseph Health System

10

**FILED**

AUG 2 2 2007  *Jodie W.*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

11
SUPERIOR COURT OF THE STATE OF CALIFORNIA

12
COUNTY OF HUMBOLDT

13

14
ALLEN FARON,

15
              Plaintiff,

16
      vs.

17
ST. JOSEPH HOSPITAL; ST. JOSEPH
HEALTH SYSTEM; KEVIN
18
MOLANDER, M.D.; JOHN KELSEY,
M.D.; RONALD CORDOVA, M.D.; and
19
DOES 1 through 50, inclusive,

20
              Defendants.

CASE NO. DR070032

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO BIFURCATE ALTER EGO
CLAIMS AND TO STAY DISCOVERY**

Date: September 21, 2007
Time: 8:45 a.m.
Dept: 4
Date Complaint Filed: July 14, 2006
1st Amended Complaint Filed: July 31, 2006
Trial: January 22, 2008

21

22

23

24

25

26

27

28

COPY

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   THE ONLY CAUSES OF ACTION REMAINING AGAINST THE HEALTH
SYSTEM ARE VICARIOUS CLAIMS BASED UPON PLAINTIFF'S ALTER
EGO ALLEGATIONS .............................................................................................2

    A.    The Only Causes of Action Remaining Against the Health System Are
Medical Negligence and Negligent Hiring and Supervision ........................2

    B.    The Remaining Claims Against the Health System Depend on the
Underlying Negligence Claims Against the Hospital and Physician
Defendants Because They Are Based on Plaintiff's Alter Ego Theory..................3

III.  THIS COURT SHOULD ORDER THAT THE ALTER EGO CLAIMS
AGAINST THE HEALTH SYSTEM BE BIFURCATED AND DISCOVERY
CONCERNING THOSE CLAIMS BE STAYED ......................................................4

    A.    This Court Has Discretion to Bifurcate Issues and Stay Discovery in the
Interests of Justice and Efficiency ...............................................................4

        1.    Bifurcation is Permitted.....................................................................4

        2.    A Discovery Stay Is Permitted ..........................................................5

    B.    Bifurcating the Alter Ego Claims Will Alleviate the Unnecessary and
Burdensome Expenditure of Resources by the Court and the Parties ..................5

    C.    Bifurcating the Claims Against the Health System is Efficient and in the
Interests of Justice.........................................................................................7

        1.    The Health System's Liability Depends Upon The Threshold Issue
of the Hospital's Alleged Negligence.................................................7

        2.    There is No Overlap Between Evidence Relevant to the Alter Ego
Claims and Evidence Relevant to the Negligence Claims...........................8

        3.    Alter Ego Claims Are Equitable Claims Which Must be Tried by a
Judge Rather Than a Jury...................................................................8

    D.    Bifurcation of the Alter Ego Claims Will Not Prejudice Plaintiff.........................9

        1.    The Potentially Primarily Liable Parties Have More Than Adequate
Resources to Pay Any Potential Judgment .......................................9

        2.    Plaintiff Will be Able to Pursue His Claim Against the Health
System in the Unlikely Event That it Proves Necessary To Do So...........11

IV.   CONCLUSION.......................................................................................................11

LEGAL_US_W # 56830893.2

MPA IN SUPPORT OF MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

1

**TABLE OF AUTHORITIES**

2

## CASES

3      *Bedolla v. Logan & Frazer,*
            52 Cal. App. 3d 118 (1975) ...................................................................4
4
       *Bell v. Sharp Cabrillo Hospital,*
5           212 Cal. App. 3d 1034 (1989) ...............................................................10
6      *City and County of San Francisco v. Flying Dutchman Park, Inc.,*
            122 Cal. App. 4th 74 (2004) ...................................................................7
7
       *Conrad v. Medical Board of Cal.,*
8           48 Cal. App. 4th 1038 (1996) ................................................................3
9      *Doney v. TRW, Inc.,*
            33 Cal. App. 4th 245 (1995) ...................................................................3
10
       *Dow Jones Co. v. Avenel,*
11          151 Cal. App. 3d 144 (1984) ..................................................................8
12     *Ellingson Timber Co. v. Great N. Railway Co.,*
            424 F.2d 497 (9th Cir.1970) ...................................................................5
13
       *Equitable Life Assurance Society v. Berry,*
14          212 Cal. App. 3d 832 (1989) ..............................................................7, 9
15     *Foreman & Clark Corp. v. Madeline Fallon,*
            3 Cal. 3d 875 (1971) ...............................................................................4
16
       *Gatto v. County of Sonoma,*
17          98 Cal. App. 4th 744 (2002) ...................................................................5
18     *Grappo v. Coventry Finance Corp.,*
            235 Cal. App. 3d 496 (1991) ...................................................................4
19
       *Hinson v. Clairemont Community Hospital,*
20          218 Cal. App. 3d 1110 (1990) ................................................................5
21     *Johnson v. Superior Court,*
            80 Cal. App. 4th 1050 (2000) .................................................................5
22
       *Kaiser Steel Corp. v. Westinghouse Electric Corp.,*
23          55 Cal. App. 3d 737 (1976) ................................................................4, 8
24     *Lathrop v. HealthCare Partners,*
            114 Cal. App. 4th 1412 (2004) ..............................................................10
25
       *Mid-Century Insurance Co. v. Gardner,*
26          9 Cal. App. 4th 1205 (1992) ...................................................................6
27     *NEC Electrics Inc. v. Hurt,*
            208 Cal. App. 3d 772 (1989) ...................................................................5
28

*Sonora Diamond Corp. v. Superior Court,*
    83 Cal. App. 4th at 538 .................................................................................................5, 6

*Williamson v. Plant Insulation Co.,*
    23 Cal. App. 4th 1406 (1994) ....................................................................................9

## STATUTES

Bus. & Prof. Code § 17200...........................................................................................2

Cal. Code Civ. Proc. § 598 ..........................................................................................4

Cal. Code Civ. Proc. § 1048 ........................................................................................4

Cal. Code Civ. Proc. § 3333.2 ...................................................................................10

LEGAL_US_W # 56884327.1

MPA IN SUPPORT OF MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a straightforward medical malpractice action in which Plaintiff has sued his treating physicians (the "Physician Defendants") and the hospital at which he presented (St. Joseph Hospital, or the "Hospital"). In his Complaint, Plaintiff went beyond the claims he had to assert to be made whole, however, and also alleged four claims against St. Joseph Health System (the "Health System"), a nonprofit charitable organization based in Orange, California and affiliated with the Hospital.

Two of these claims (unfair business practices/fraud and false advertising) have been eliminated from the case. Following the Health System's unopposed demurrer, what remains are two claims for medical negligence and negligent hiring and supervision. These claims are essentially identical to those asserted against the Hospital and the Physician Defendants. Plaintiff asserts these liability "theories" even though the Health System is statutorily prohibited from providing medical services and neither hired nor supervised any of the persons accused of malpractice. Plaintiff attempts to impose these liability theories on the Health System by claiming, without any specific supporting facts, that the Health System is the "alter ego" of the Hospital.

By this motion, the Health System seeks bifurcation and a stay of discovery whereby Plaintiff's claims against the Physician Defendants and Hospital would be tried before the claims against the Health System. This would alleviate the need for burdensome discovery, motion practice, pre-trial work, and trial on the "alter ego" claims. The alter ego claims would only then become relevant if (1) liability is found on the part of the Hospital, and (2) the damages awarded against the Hospital are in excess of the millions of insurance dollars available to the Hospital – an impossibility given the nature of the case and the "MICRA" statutory caps on the amount of damages available in a medical malpractice action.

Defendant's motion should be granted because it will lead to the more efficient allocation of resources by both the Court and parties without in any way prejudicing Plaintiff, who will remain free to pursue his claims against the Health System in the unlikely event that it

1    proves necessary to do so.  Granting this motion to bifurcate and stay will also enable the Health

2    System to reallocate resources from this unnecessary litigation to promoting its mission of

3    improving the health and quality of life of the people in the communities that it serves.

4    II.    **THE ONLY CAUSES OF ACTION REMAINING AGAINST THE HEALTH
         SYSTEM ARE VICARIOUS CLAIMS BASED UPON PLAINTIFF'S ALTER EGO**

5        **ALLEGATIONS**

6            Plaintiff originally asserted four causes of action against the Health System: (1)

7    unfair business practices under California Business and Professions Code Section 17200 and

8    common law fraud, (2) false advertising under California Business and Professions Code Section

9    17500, (3) medical negligence and (4) negligent hiring and supervision.  (Sonoda Decl. Ex. E at

10   ¶¶ 39-15.)  The only direct claims asserted against the Health System were the causes of action

11   for unfair business practices under California Business and Professions Code §17200, common

12   law fraud, and false advertising under California Business and Professions Code §17500.  (*Id.*)  In

13   March 2007, the Health System sent Plaintiff a letter explaining the significant legal and factual

14   deficiencies in Plaintiff's first and second causes of action and requested that Plaintiff voluntarily

15   dismiss them.  (Sonoda Decl. Ex. F.)  When Plaintiff refused, the Health System was forced to

16   expend both its own and the Court's resources on a formal demurrer to these causes of action.

17   (Sonoda Decl. Exs. G, I, J.)  Notably, the Health System's demurrer, which Plaintiff did not

18   oppose, was based upon the exact same legal and factual deficiencies that the Health System had

19   previously explained to Plaintiff.  (Sonoda Decl. Exs. F, G, I, J.)  The Court sustained the

20   demurrer during a brief hearing on May 30, 2007.

21   A.    **The Only Causes of Action Remaining Against the Health System Are
         Medical Negligence and Negligent Hiring and Supervision**

22

23           Only two causes of action now remain against the Health System: medical

24   negligence and negligent hiring and supervision.  The medical negligence claim is asserted

25   against the Health System despite the fact that the Health System does not provide medical care

26   to anyone.  (Sonoda Decl. Ex. A at 34:11-22; 89:2-6.)  Similarly, the Health System is not

27   involved in the hiring of any of the doctors that provide Plaintiff's medical care.  (Sonoda Decl.

28   Ex. A at 51:8-52:21; 34:11-35:13.)  Indeed, as the Health System has explained to Plaintiff

-2-

1  numerous times (Sonoda Decl. Ex. F at 6-7; Ex. Hat 2.), the Health System (and hospitals) are

2  prohibited as a matter of law from directly hiring physicians and may not otherwise interfere with

3  the medical decisions of physicians. *Conrad v. Med. Bd. of Cal.*, 48 Cal. App. 4th 1038 (1996).

4  Plaintiff has twice refused to respond to this dispositive point.

5          **B.    The Remaining Claims Against the Health System Depend on the Underlying
               Negligence Claims Against the Hospital and Physician Defendants Because
6               They Are Based on Plaintiff's Alter Ego Theory**

7          Despite the fact that the Health System played no role in the events that allegedly

8  led to Plaintiff's injuries, Plaintiff attempts to impose liability on the Health System by asserting

9  that the Health System is the "alter ego" of the Hospital. Plaintiff's alter ego claims are entirely

10  devoid of merit. For example, Susan Whittaker, the Health System's person most knowledgeable

11  on the relationship between the Health System and the Hospital, testified that the Health System

12  plays no role in operation or management of the Hospital. (Sonoda Decl. Ex. A at 18:14-22:16

13  ("...we're the corporate member; we don't operate the hospital; we don't manage the hospital.").)

14  She also testified that the Health System plays no role in the hiring or management of the

15  Hospital medical staff. (Sonoda Decl. Ex. A at 51:8-52:21, 34:11-35:13.) Instead, the Health

16  System's relationship with the Hospital is limited to providing administrative services and

17  holding limited corporate rights. (Sonoda Decl. Ex. A at 22:11-23:10.) The Health System does

18  not, as is required for the imposition of alter ego liability, dominate and control the operations of

19  the Hospital, much less any aspect of the medical care Plaintiff received.[1]

20          However, even if Plaintiff could prove his alter ego claim, the Health System

21  would only be liable if Plaintiff establishes negligence by the Hospital. As the Court of Appeal

22  explained in *Doney v. TRW, Inc.*, 33 Cal. App. 4th 245 (1995), "[a]lter ego is essentially a theory

23  of *vicarious liability* under which the owners of a corporation may be held liable for harm for

24  which the corporation is responsible where, because of the corporation's utilization of the

25  _____

26  [1] On July 26, 2007 the Health System sent Plaintiff a letter explaining, yet again, the legal and
    factual deficiencies in Plaintiff's remaining claims. (Sonoda Decl. Ex. H.) In that same letter, the
    Health System attempted to meet and confer with Plaintiff on the issues raised in this motion.
27  (*Id.*) Specifically, the Health System offered Plaintiff a tolling agreement in exchange for the
    voluntary dismissal of the claims against the Health System without prejudice. (*Id.*) Plaintiff did
28  not respond to this offer.

corporate form, the party harmed will not be adequately compensated for its damages." *Id.* at 249

(emphasis added).  As explained below, the vicarious nature of the alter ego claims renders the

continued litigation of the remaining causes of action against the Health System unnecessarily

burdensome and justifies granting this motion.

**III.    THIS COURT SHOULD ORDER THAT THE ALTER EGO CLAIMS AGAINST THE HEALTH SYSTEM BE BIFURCATED AND DISCOVERY CONCERNING THOSE CLAIMS BE STAYED**

**A.    This Court Has Discretion to Bifurcate Issues and Stay Discovery in the Interests of Justice and Efficiency**

**1.    Bifurcation is Permitted**

This court has the discretion to order that "the trial of any issue or any part thereof

shall precede the trial of any other issue or any part thereof in the case" if "the ends of justice, or

the economy and efficiency of handling the litigation would be promoted." Cal. Code Civ. Proc.

§ 598; Cal. Code Civ. Proc. § 1048 ("The court in furtherance of convenience or to avoid

prejudice, or when separate trials will be conducive to expedition and economy, may order a

separate trial of any cause of action ... or of any separate issue or of any number of causes of

action or issues ... "); *see also Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal. App. 3d

737, 745-746 (1976) (affirming bifurcation of liability and damages).  Granting a motion for

separate trials lies within the trial court's sound discretion, and is subject to reversal on appeal

only for clear abuse.  *Grappo v. Coventry Fin. Corp.*, 235 Cal. App. 3d 496, 504 (1991).

In *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118 (1975), the California Court of

Appeal explained that the "objective of the bifurcation of the issues is avoidance of waste of time

and money caused by the trial of issues which may be rendered moot." *Id.* at 135.  Similarly, in

*Foreman & Clark Corp. v. Madeline Fallon*, 3 Cal.3d 875 (1971) the California Supreme Court

stated that bifurcation is considered desirable to "avoid wasting court time in cases where the

plaintiff loses on the liability issue, to promote settlement where the plaintiff wins on the liability

issue, and to afford a more logical presentation of the evidence, thus simplifying the issues for the

jury." *Id.* at 888 n. 8.

-4-

1    Indeed, California law specifically provides for separate trials of threshold issues

2  in medical negligence actions like this one. *See* Cal. Code. Civ. Proc. § 597.5 (requiring, in

3  medical negligence actions, that the defense of statute of limitations be tried separately and before

4  other issues in the case are tried); *see also Hinson v. Clairemont Cmty. Hosp.*, 218 Cal. App. 3d

5  1110, 1130 (1990) (affirming bifurcation of hospital's liability from physician's medical

6  malpractice liability).

7       2.    **A Discovery Stay Is Permitted**

8    This Court also has the ability to stay discovery pending the resolution of

9  Plaintiff's underlying negligence claims. Management of discovery lies within the sound

10  discretion of the trial court. *Johnson v. Superior Court*, 80 Cal. App. 4th 1050, 1061 (2000).

11  Appellate review of discovery rulings is governed by the abuse of discretion standard. *Id.* Both

12  state and federal courts in California recognize that discovery may be stayed pending the

13  resolution of bifurcated issues. *See, e.g., Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 751

14  (2002) (noting trial court order staying discovery pending resolution of bifurcated issue);

15  *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir.1970) (where bifurcation

16  ordered it is "implicit that the Court also has the power to limit discovery to the segregated

17  issues"). Indeed, as the Ninth Circuit explained in *Ellingson Timber Co. v. Great Northern*

18  *Railway Co.*, "[o]ne of the purposes of [bifurcation] is to permit deferral of costly and possibly

19  unnecessary discovery proceedings pending resolution of potentially dispositive preliminary

20  issues." *Id.* at 499.

21      B.    **Bifurcating the Alter Ego Claims Will Alleviate the Unnecessary and**
                **Burdensome Expenditure of Resources by the Court and the Parties**

22

23    In order to disregard the corporate entity and impose liability on an alter ego,

24  plaintiff must satisfy two essential requirements. "First, there must be 'such unity of interest and

25  ownership that the separate personalities of the corporation and the individual no longer exist.'

26  Second, it must be demonstrated that 'if the acts are treated as those of the corporation alone, an

27  inequitable result will follow.'" *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 777 (1989)

28  (citations omitted); *accord, Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th at 538.)

1   Factors to be considered in determining whether to apply the alter ego doctrine include:

2               (1)    the commingling of funds or other assets of the corporation and the

3   individual;

4               (2)    the individual's treatment of corporate assets as his or her own;

5               (3)    the individual's representation of personal liability for corporate debts;

6               (4)    failure to maintain adequate corporate minutes or records;

7               (5)    sole ownership of the corporation's stock;

8               (6)    domination and control of the corporation;

9               (7)    use of the same address for the individual and the corporation;

10             (8)    undercapitalization of the corporation;

11             (9)    disregard of formalities; and

12             (10)   the individual's failure to maintain arm's length transactions with the

13   corporation.

14   *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213, n. 3 (1992).  No one factor or

15   group of factors is considered in isolation; rather, the totality of the circumstances are examined

16   in determining the validity of an alter ego claim.  *Id.* at 1213, 1215; *accord, Sonora Diamond*

17   *Corp. v. Superior Court*, 83 Cal. App. 4th at 538.)

18          Such a fact intensive inquiry necessarily requires the expenditure of a great deal of

19   time and resources.  Discovery related to these complex issues alone will be burdensome.[2]  If the

20   alter ego claims are permitted to proceed, that burden will only increase because trial preparation,

21   pre-trial motions (including motions for summary judgment and motions in *limine*), and, of

22   course, trial of these complex issues will require the expenditure of significant resources by the

23

---

24   [2] Plaintiff's pending written discovery is a case in point.  Plaintiff is currently insisting that the Health System supplement its responses to seven overbroad document requests.  (*See* Sonoda Decl. Ex. O, Request Nos. 28-34.)  While Plaintiff has offered to limit the requests with respect to

25   time and custodian, Plaintiff has refused to limit the sweeping scope of the requests.  Gathering, reviewing and producing these documents will cost the Health System thousands of dollars.

26   Given Plaintiff's discovery strategy to date it is unlikely that these will be the last burdensome discovery requests that Plaintiff propounds.  Plaintiff has already taking fourteen depositions,

27   many of which involved individuals with no recollection whatsoever of the events at issue in this case.  Plaintiff has also indicated that he will be noticing the depositions of many more

28   individuals during the next four months.  (Sonoda Decl. ¶ 3.)

1   parties and the Court. It is simply inefficient and unreasonable for the Health System and the

2   Court to expend the time and resources involved in litigating the alter ego claims unless it is

3   actually necessary to do so.[3]

4       The burden on the Health System in defending against the alter ego claims is

5   particularly significant here. The Health System provides certain corporate services to fourteen

6   hospitals in California. (Sonoda Decl. Ex. A at 34:11-36:19.) The corporate management of such

7   a large organization, particularly one involved in such a highly regulated field as health care,

8   requires a great deal of effort by the Health System. Plaintiff's recent discovery and short-term

9   deposition strategy has the potential to make discovery complicated and burdensome. (Sonoda

10  Decl. ¶ 3.) Organizing and presenting relevant information in dispositive motions, pre-trial

11  preparations and, eventually, at trial will also be time consuming and expensive. Simply put, the

12  Health System should not be required to expend the significant resources required to litigate

13  claims based on an "alter ego" theory when, as shown below, the Health System's alter ego

14  liability may be mooted by the determination of the underlying negligence claims.

15  **C.    Bifurcating the Claims Against the Health System is Efficient and in the
        Interests of Justice**

16      **1.    The Health System's Liability Depends Upon The Threshold Issue of
            the Hospital's Alleged Negligence**

17

18      As explained above, the remaining claims against the Health System are based

19  entirely on Plaintiff's alter ego allegations and are therefore dependent upon the threshold issue of

20  the alleged negligence of the Hospital. The dependent nature of the Health System's liability

21  makes this case ripe for bifurcation. *See Equitable Life Assurance Society v. Berry*, 212 Cal. App.

22  3d 832, 836 (1989) (finding a "classical" case for bifurcation where issue to be tried first would

23  involve fewer judicial resources, "judgment in favor of defendant would end the lawsuit," and

24  "even if bifurcation had not been ordered, the trial court would have been required to hear the

25  evidence [relevant to the bifurcated issue] out of the presence of the jury"). If the Hospital is

26

27  [3] Moreover, the early proof demonstrates that there is no basis for alter ego liability. (Sonoda
    Decl. Ex. A at 18:11-23:10, 34:11-35:13, 51:8-52:21, 70:4-70:21.) For example, Susan Whittaker
    has testified that the Health System plays no role in the operation of the Hospital or the hiring and

28  management of Hospital staff. (*Id.*)

-7-

1   found to be not liable, then there is no need for a trial on the alter ego claims against the Health

2   System. *City and County of San Francisco v. Flying Dutchman Park, Inc.*, 122 Cal. App. 4th 74,

3   80 n.2 (2004) (noting that "[n]o determination was made below as to the claims against the

4   individually named defendants based on alter ego grounds, and the issue was deemed moot based

5   on the trial court's ruling" on the substantive issues). Determining whether it is necessary to

6   litigate the alter ego issues at all by first proceeding with the claims against the Hospital (and the

7   Physician Defendants) is the height of efficiency.

8           2.      **There is No Overlap Between Evidence Relevant to the Alter Ego**
                    **Claims and Evidence Relevant to the Negligence Claims**

9

10          Bifurcation is warranted for another independent reason. The evidence relevant to

11  Plaintiff's primary negligence claims includes the testimony of the physicians, nurses and clerks

12  that treated Plaintiff, Plaintiff's medical records, and expert opinion testimony concerning the

13  appropriate standard of care. In stark contrast, evidence relevant to Plaintiff's alter ego claims

14  includes documents concerning the relationship between the Health System and the Hospital,

15  documents concerning the observation of corporate formalities, and testimony by Health System

16  executives, accountants and other individuals who likely have never even heard of Plaintiff. (*See*

17  Section III.B. above (listing alter ego factors).) The evidence concerning these two claims is

18  completely separate and unrelated. As such, there is no risk that bifurcating the alter ego claims

19  will result in the presentation of duplicative evidence. It is efficient to bifurcate these claims. *See*

20  *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal. App. 3d 737, 745-746 (1976) (finding

21  that "the ends of justice were served by bifurcation" where "only a small fraction of the evidence

22  would be repeated").

23          3.      **Alter Ego Claims Are Equitable Claims Which Must be Tried by a**
                    **Judge Rather Than a Jury**

24          Assuming there is an evidentiary overlap, such overlap would still not make

25  bifurcation inefficient. In contrast to medical negligence and negligent hiring and supervision

26  claims, alter ego claims are equitable in nature and are therefore tried before a judge, not a jury.

27  *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 147-148 (1984) ("It is well-settled that the alter

28

-8-

1   ego doctrine is 'essentially an equitable one and for that reason is particularly within the province

2   of the trial court.'") (*quoting Stark v. Coker*, 20 Cal.2d 839, 846 (1942)).  As such, the issue

3   raised by this motion is not whether the alter ego claims should be tried separately, but rather

4   whether they should be tried before or after the negligence claims.

5          As discussed above, the outcome of the underlying negligence claims may moot

6   the necessity of adjudicating the alter ego claims.  Accordingly, it is most efficient to grant this

7   motion and have the negligence claims litigated before the alter ego claims.  *See Equitable Life*

8   *Assurance Soc'y v. Berry*, 212 Cal. App. 3d 832, 836 (1989) (finding a "classical" case for

9   bifurcation where issue to be tried first would involve fewer judicial resources, "judgment in

10  favor of defendant would end the lawsuit," and "even if bifurcation had not been ordered, the trial

11  court would have been required to hear the evidence [relevant to the bifurcated issue] out of the

12  presence of the jury"); *see also Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406, 1417

13  (1994) ("Factors such as more efficient organization of evidence, more focused and less

14  numerous jury instructions, more cogent argument and more manageable deliberations may make

15  bifurcation the faster procedure even when it requires some witnesses to appear twice.").

16  **D.**    **Bifurcation of the Alter Ego Claims Will Not Prejudice Plaintiff**

17          **1.**    **The Potentially Primarily Liable Parties Have More Than Adequate**
              **Resources to Pay Any Potential Judgment**
18

19          Finally, granting this motion to bifurcate and stay discovery does not prejudice

20  Plaintiff's rights because he can be made whole without resorting to a claim against the Health

21  System.  As an initial matter, it is unlikely that Plaintiff will succeed in his underlying negligence

22  claims.  Discovery taken to date indicates that both the Hospital and the Physician Defendants

23  possess formidable legal and factual defenses to Plaintiff claims.  However, if Plaintiff

24  successfully establishes liability, Plaintiff can be made whole without the participation of the

25  Health System.  The Hospital has a primary insurance policy of $5 million per incident and

26  excess insurance in the amount of $5 million.  (Sonoda Decl. Ex. K [Certificate of Insurance].)

27  The three Physician Defendants have an additional $3 million in insurance.  (Sonoda Decl. Ex. L,

28  Resp. No. 4.1; Ex. M, Resp. No. 4.1; Ex. N, Resp. No. 4.1.)  These amounts are far in excess of

-9-

Plaintiff's potential recovery because:

- Plaintiff's non-economic damages are capped at $250,000 by the Medical Injury Compensation Reform Act ("MICRA") (Cal. Civ. Code § 3333.2; *Lathrop v. HealthCare Partners*, 114 Cal. App. 4th 1412, 1416 (2004) (applying MICRA cap to the medical negligence action against a medical group); *Bell v. Sharp Cabrillo Hosp.*, 212 Cal. App. 3d 1034, 1037 (1989) (affirming application of MICRA cap to negligent supervision claims));

- Plaintiff's potential lost-wages damages are relatively small due to his learning disability, lack of education and limited employment prospects at the time of his injury, (Sonoda Decl. Ex. B at 16:17-21:10, 39:9-42:22, 45:6-46:22, 49:3-58:9);

- Other than small co-payments for medication, Plaintiff has paid nothing for his medical care to date, (Sonoda Decl. Ex. B at 64:7-65:14);

- Plaintiff's medical condition is improving and does not require the extraordinary medical treatments, such as transplantation, alleged in his Complaint, (Sonoda Decl. Ex. C at 24:23-25:4, 29:21-30:11, 55:5-55:8; Ex. D at 11:15-11:18, 61:9-64:8, 73:3-73:6); and

- Even if such extraordinary treatments were required, the alleged cost of such treatments does not come close to the insurance available to the Hospital and Physician Defendants. (Sonoda Decl. Ex. E at ¶ 29 ("Intestinal transplantation cost approximately $813,600 and liver transplantation starts at approximately $392,800")).

The fact that Plaintiff can be made whole without resort to his alter ego claim supports granting this motion for two reasons. First, it demonstrates that Plaintiff will not be prejudiced by the bifurcation of the alter ego claims. Plaintiff does not need this claim. Second, it illustrates the efficiency of adjudicating the underlying negligence claims before litigating the claims against the Health System. Only in the unlikely event that Plaintiff obtains a judgment large enough to exceed the financial backing of the Hospital (and the Physician Defendants)

-10-

1   would it be necessary for the Court and the parties to expend the time and resources required to

2   resolve the alter ego allegations.  Again, determining whether it is necessary to litigate these

3   issues at all before expending unnecessary resources is the height of efficiency.  The Court should

4   order that the alter ego claims be bifurcated and discovery concerning those claims be stayed.

5           **2.     Plaintiff Will be Able to Pursue His Claim Against the Health System
                     in the Unlikely Event That it Proves Necessary To Do So**

6

7           It is extremely unlikely that Plaintiff will need to litigate his alter ego claims

8   against the Health System if this case proceeds to its logical conclusion.  The Hospital and the

9   Physician Defendants have considerable defenses to Plaintiff's underlying negligence claims, and

10  even if Plaintiff overcomes those defenses, he is very likely to be made whole without resort to a

11  claim against the Health System.  However, in the unlikely event that it is necessary to proceed

12  against the Health System, granting this motion will not prevent Plaintiff from pursuing all

13  available remedies.  Accordingly, Plaintiff faces no risk of prejudice from this motion.

14  **IV.    CONCLUSION**

15          The relief sought by this motion is extremely limited.  It seeks to organize this

16  litigation in a manner that is reasonable and efficient, and does so in a manner that does not

17  prejudice Plaintiff's interests.  At the end of the day, Plaintiff will remain free to pursue his

18  claims against the Health System in the event that it proves necessary to do so.  However, at the

19  moment, the continued litigation of the claims against the Health System serves only to prejudice

20  the Health System and divert resources away from its charitable mission without advancing

21  Plaintiff's interests in a meaningful way.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

-11-

1    The Health System respectfully requests that the Court grant its Motion to

2  Bifurcate and Stay Discovery.

3

4  DATED:  August 16, 2007            PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                      JOHN P. PHILLIPS
5                                     JASON K. SONODA

6                                     PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                      PETER M. STONE
7

8                                     By: _____
9                                              JASON K. SONODA

10                                    Attorneys for Defendant
                                      ST. JOSEPH HEALTH SYSTEM
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA IN SUPPORT OF MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

# EXHIBIT S

Fabrice N. Vincent (State Bar No. 160780)
Kent L. Klaudt (State Bar No. 183903)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Attorneys for Plaintiff Allen Faron

RECEIVED

SEP 1 0 2007

PAUL, HASTINGS, JANOFSKY
& WALKER LLP

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF HUMBOLDT - UNLIMITED JURISDICTION

|  |  |
|---|---|
| ALLEN FARON,<br><br>               Plaintiff,<br><br>      v.<br><br>ST. JOSEPH HOSPITAL; ST. JOSEPH HEALTH SYSTEM; KEVIN MOLANDER, M.D.; JOHN KELSEY, M.D.; RONALD CORDOVA, M.D.; and DOES 1 through 50, inclusive,<br><br>               Defendants. | Case No. DR070032<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT ST. JOSEPH HEALTH SYSTEM'S MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY**<br><br>Date:          September 21, 2007<br>Time:          8:45 a.m.<br>Dept:          4<br>Judge:        Hon. J. Michael Brown<br>Trial Date: January 22, 2008 |

565288.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT AND POINTS & AUTHORITIES ....................................................2

    A.    Legal Standard For Granting Or Denying Bifurcation ............................................2

    B.    Legal Standard for Staying Discovery ......................................................................3

    C.    Defendant's Motion To Bifurcate And To Stay Discovery Should Be
        Denied Because It Is Solely An Attempt To Improperly Avoid Answering
        Discovery Requests Related To Plaintiffs' Liability Theories ................................3

    D.    Defendant's Argument Rests Entirely On Its Incorrect And Self-Serving
        Assessment Of Plaintiff's Theories Of Negligence Against It. ...............................7

    E.    Defendant's Motion Is Premised Upon The False Belief That Plaintiff
        Allen Faron Can Be Made Whole Without The Health System At Trial. ...............8

    F.    Bifurcation And A Stay On Discovery Would Prejudice Plaintiff, And
        Would Not Promote Efficiency Or Convenience, And Would Instead
        Result In Increased Logistical And Case Management Problems For This
        Court. ......................................................................................................................10

    G.    Producing The Requested Documents Would Not Be Unduly Burdensome
        to The Health System ..............................................................................................11

III.   CONCLUSION ...........................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Colonial Life & Acc. Ins. Co. v. Superior Court,*
    31 C.3d 785 (1982) .................................................................................3, 7

*Ellingson Timber Co. v. Great N. Ry. Co.,*
    424 F.2d 497 (9th. Cir. 1970) ..............................................................3, 10

*Foreman & Clark Corp. v. Madeliene Fallon,*
    3 Cal.3d 875 (1971) ...........................................................................2, 10

*Greyhound Corp. v. Superior Court,*
    56 Cal.2d 355 (1961) ...............................................................................3

*Johnson v. Superior Court,*
    80 Cal.App.4th 1050 (2000) ...................................................................3

*McLoughlin v. L. Bloom Sons Co., Inc.*
    (1962) 206 Cal.App.2d 848 ....................................................................7

*Netflix, Inc. v. Blockbuster, Inc.,*
    2006 WL 2458717 (N.D.Cal. 2006) ......................................................3

*Paneno v. Centre for Academic Programmes Abroad Ltd.*
    (2004) 118 Cal.App.4th 1447 ................................................................7

*Sonora Diamond Corp. v. Superior Court*
    (2000) 83 Cal.App.4th 523 ....................................................................7

*West Pico Furn. Co. v. Superior Court,*
    56 C.2d 407 (1961) ...............................................................................11

## STATUTES

Code of Civil Procedure
    § 598 ...................................................................................................2, 10
    § 1048(b) ................................................................................................2

1    Comes now Plaintiff ALLEN FARON ("Plaintiff"), by and through his attorneys, and

2    respectfully submits this Memorandum of Points & Authorities in Opposition to Defendant

3    St. Joseph Health System's Motion To Bifurcate Alter Ego Claims And To Stay Discovery

4    ("Motion to Bifurcate").

5    **I.    INTRODUCTION**

6    This court should deny Defendant St. Joseph Health System's ("Health System") Motion

7    to Bifurcate because it is an attempt by this Defendant to improperly avoid answering discovery

8    requests related to Plaintiffs' liability theories in this case. Plaintiff requested certain documents

9    on the subjects of the Health System's operation, management, and hiring of employees at

10    Defendant St. Joseph Hospital ("Hospital"), communications between the Health System and the

11    Hospital, and communications regarding the ownership or any financial decisions related to the

12    Hospital. The Health System improperly refused to produce responsive documents, thus

13    necessitating Plaintiff's Motion to Compel, filed on August 16, 2007. Per agreement of counsel,

14    both motions are now scheduled for hearing on September 21, 2007.

15    Second, Defendant's argument rests entirely on its incorrect and self-serving assessment

16    of Plaintiff's theories of negligence against it. Plaintiffs have theories (and are entitled to develop

17    evidence in discovery to support these theories) of both indirect and direct negligence against the

18    Health System, and not only an alter ego theory, but one of agency liability, as well. These

19    theories are conveniently ignored and side-stepped in Defendant's motion.

20    Third, Defendant's motion is premised upon the false belief that Plaintiff Allen Faron can

21    be made whole without the Health System at trial. This is false since Allen is catastrophically

22    injured and permanently crippled as a result of the Heath System's negligence, and no amount of

23    money will make him whole; and moreover, since the Health System claims to not be a health

24    care provider, it is therefore not subject to the MICRA damages caps and thus faces potential

25    liability well in excess of the limits imposed by MICRA.

26    Fourth, the Health System was intimately involved with a radiology dispute at the

27    Hospital, as evidenced by preliminary deposition testimony from the Health System's General

28    Counsel Susan Whittaker, and that this radiology services dispute was a cause of Defendants'

726110.1                                        - 1 -

1   failure to x-ray indigent patient Allen Faron. The Defendants' repeated and egregious failures to

2   x-ray Allen during his numerous Hospital visits is a substantial cause of his injuries and

3   damages.[1] This and other evidence explained more fully below demonstrates the interlocking and

4   overlapping involvement of the Health System with the operations of the Hospital, such that

5   bifurcation would not be an efficient or even appropriate procedure in this action.

6       Fifth, bifurcation would prejudice Plaintiff, who is severely injured and has already had to

7   wait more than 18 months to bring this case to closure.

8       Sixth, the document requests as to which the Health System refuses to produce documents

9   do not constitute any "burden" on the Health System, and the Health System has made no

10  showing, whatsoever, other than several self-serving and unsupported assertions, that it would

11  suffer any real or significant "burden" in producing such documents to Plaintiff.

12      Finally, bifurcation and a stay of discovery would result in increased logistical and case

13  management problems for this Court. For all these reasons, discussed in detail below,

14  Defendant's motion should be denied.

15  ## II.    ARGUMENT AND POINTS & AUTHORITIES

16  ### A.    Legal Standard For Granting Or Denying Bifurcation

17      C.C.P. § 1048(b) provides that the "court, in furtherance of convenience or to avoid

18  prejudice, or when separate trials will be conducive to expedition and economy, may order a

19  separate trial of any cause of action . . ." Additionally, "[t]he court may, when the convenience of

20  witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be

21  promoted thereby . . .[order] that the trial of any issue or any part thereof shall precede the trial of

22  any other issue or any part thereof . . ." C.C.P. § 598.

23      "The major objective of bifurcated trials is to expedite and simplify the presentation of

24  evidence." *Foreman & Clark Corp. v. Madeliene Fallon*, 3 Cal.3d 875, 888 (1971).

---

[1] Ms. Whittaker acknowledged at her deposition that a significant dispute existed at the Hospital with the entire radiology department such that Plaintiff believes that this dispute was another contributing reason Allen Faron was never x-rayed despite multiple ER and Urgent Care visits he made in agony begging for help. Ms. Whittaker admitted that the Health System was involved in some capacity in this radiology services dispute.

726110.1

-2-

1    The moving party has the burden of proving that bifurcation will promote judicial

2    economy and avoid inconvenience or prejudice to the parties. *Netflix, Inc. v. Blockbuster, Inc.*,

3    2006 WL 2458717 (N.D.Cal. 2006).

4        **B.    Legal Standard for Staying Discovery**

5        The discovery statutes must be "construed liberally in favor of disclosure unless the

6    request is clearly improper by virtue of well-established causes for denial." *Greyhound Corp. v.*

7    *Superior Court*, 56 Cal.2d 355, 377 (1961). The management of discovery lies with the sound

8    discretion of the trial court. *Johnson v. Superior Court*, 80 Cal.App.4th 1050, 1061 (2000). The

9    Court of Appeal in *Johnson* noted, however, that "in passing on orders denying discovery,

10    appellate courts 'should not use the trial court's discretion argument to defeat the liberal policies

11    of the statute.'" *Id. (citing Greyhound Corp. v. Superior Court, supra*, at 378-379.)

12        The "relevance to the subject matter" and "reasonably calculated to lead to discovery of

13    admissible evidence" standards are applied liberally. Any doubt is generally resolved in favor of

14    permitting discovery, particularly where the precise issues in the case are not yet clearly

15    established. *Colonial Life & Acc. Ins. Co. v. Superior Court*, 31 C.3d 785, 790 (1982).

16        "One of the purposes of [bifurcation] is to permit deferral of costly and possibly

17    unnecessary discovery proceedings pending resolution of potentially dispositive preliminary

18    issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th. Cir. 1970).

19        **C.    Defendant's Motion To Bifurcate And To Stay Discovery Should Be Denied
             Because It Is Solely An Attempt To Improperly Avoid Answering Discovery**

20    **Requests Related To Plaintiffs' Liability Theories**

21        On March 29, 2007, Plaintiff served *Plaintiff's Request for Production of Documents and*

22    *Things, Set One*, on Defendant St. Joseph Health System ("Health System"). A true and correct

23    copy of these requests is attached to the accompanying *Declaration of Kent L. Klaudt* ("Klaudt

24    Decl."), as **Exhibit 1**. On or about May 30, 2007, the Health System served its *Responses to*

25    *Plaintiff's Request for Production of Documents and Things, Set One*. (Klaudt Decl., **Exhibit 2**.)

26        In these responses, the Health System made numerous objections to certain of the

27    requests, and refused to produce documents as to certain requests, including those that are the

28

1    subject matter of Plaintiff's currently pending motion to compel (requests numbered 28 – 34,

2    and 42).

3        The Health System's objections and its related refusals to produce documents are evasive

4    and are not supported by law. (See *Separate Statement* accompanying Plaintiff's August 16,

5    2007 *Motion to Compel*; see also August 16, 2007 Klaudt Decl., attached to the accompanying

6    September 6, 2007 Klaudt Decl. as **Exhibit 5**). Because of this, Plaintiff attempted to meet and

7    confer with counsel for the Health System, describing the specific requests at issue in an attempt

8    to reach an informal resolution of the issues. (Klaudt Decl., **Exhibit 5**, *passim*).

9        During a telephonic meet and confer session, and in the interests of compromise, Plaintiff

10   offered to substantially narrow the outstanding requests to alleviate any alleged "burden" placed

11   upon on the Health System in complying with said requests. (*Id.*)  In particular, Plaintiff offered

12   to narrow the scope of the original request to seek documents only from the time period of May,

13   2005 to January, 2006, which is the relevant time period of Allen Faron's care and treatment at

14   St. Joseph Hospital in Eureka. (*Id.*)

15       Plaintiff also agreed, in the interests of compromise and efficiency, to further narrow

16   Plaintiff's requests to include only the custodial files of those persons who serve on the Board of

17   Directors of the Health System and/or who are at the Vice President level or higher within the

18   Health System. (*Id.*)  Plaintiff offered this compromise so that the Health System would only

19   need to collect documents from a perhaps a dozen or so employees or officers on these discreet

20   subjects, as opposed to canvassing every employee at the Health System's offices. (*Id.*)

21       On August 2, 2007, Plaintiff sent another meet and confer letter to counsel for the Health

22   System, and again asked that they meet and confer with Plaintiff to attempt to resolve these

23   discovery issues, and reiterated Plaintiff's strong preference for resolving such issues informally

24   and without seeking the intervention of the court. (*Id.*)

25       In this letter, Plaintiff reiterated his prior offer to the Health System to narrow the

26   document requests, in the interests of compromise, to the time period of May, 2005 to January,

27   2006, which is the relevant time period of Plaintiff Allen Faron's care and treatment at St. Joseph

28   Hospital in Eureka, and again offered, in the interests of compromise and efficiency, to further

1    narrow Plaintiff's requests to include only the custodial files of those persons who serve on the

2    Board of Directors of the Health System and/or who are at the Vice President level or higher

3    within the Health System. (*Id.*)

4        On August 9, 2007, Mr. Sonoda informed Plaintiff's counsel in a telephone call that the

5    Health System had decided to refuse to produce any documents responsive to the particular

6    requests, thus necessitating this motion to compel. (*Id.*) During this phone call, the only grounds

7    Mr. Sonoda cited for the Health System's refusal to produce the documents was his claim that the

8    document production would be "burdensome." (*Id.*)

9        The discovery requests are reasonable and relevant to this litigation, and there is good

10   cause to order the Health System to produce documents responsive to these particular requests

11   because such documents would be relevant to proving Plaintiff's direct and vicarious negligence

12   claims, including Plaintiff's alter ego and agency theories, against the Health System, and

13   because there is conflicting and contradictory evidence as to whether or not (or to what extent)

14   the Health System owns or controls the Hospital.

15       For example, Health System Chief Administrative Officer Susan Whittaker admitted at

16   her June 20, 2007 deposition that the Health System owns the Hospital. See *Deposition of Susan*

17   *Whittaker* ("*Whittaker Depo*."), Klaudt Decl., **Exhibit 3** at 41:17-21.

18       Astonishingly, this is a fact which had been denied by the Health System in sworn written

19   discovery responses only weeks prior to Ms. Whittaker's deposition. See *Defendant St. Joseph*

20   *Health System's Responses to Plaintiff's Request for Admissions, Set One,* (responses to requests

21   No. 1 and 2), Klaudt Decl., **Exhibit 4**.

22       Defendant's contention in its brief that "Plaintiff's alter ego claims are entirely devoid of

23   merit" (Defendant's *Points & Authorities*, at page 3) is false and mistaken, because after only one

24   deposition of a Health System employee, there is already substantial evidence supporting

25   Plaintiff's alter ego, agency, and direct and vicarious liability claims.

26       First, Ms. Whittaker admitted at her deposition that the Health System is the sole provider

27   of internal or in-house legal services to the Hospital (Klaudt Decl., **Exhibit 3**, *Whittaker Depo* at

28   79:25 – 80:19; 99:8 - 11), other "corporate services" for the Hospital (*Id.*, at 83:13 – 21), and

1    admitted that the Health System plays a role in Quality Assurance efforts at the Hospital (*Id.*, at

2    90:10 – 92:9).

3        Second, Ms. Whittaker, an officer of the Health System, admits that she is intimately

4    involved in the operation of the Hospital: "In the past, I provided legal advice; I will participate

5    in board meetings of the St. Joseph Hospital board; I will meet with administrative staff; I

6    provide education to their nursing staff, medical staff; I provided introduction and education

7    about [health care regulatory] compliance." (*Id.*, at 98:25 – 99:4).

8        Third, the Health System holds numerous right with respect to the Hospital. Ms.

9    Whittaker admitted that there "are about 20 of them." (*Id.*, at 21:19) "Some examples would

10   include the right to approve the appointment of trustees to the St. Joseph Hospital board, the right

11   to approve changes to articles and bylaws . . . the right to approve budgets, long-term, short-term

12   financing;  the philosophy and charitable purpose of the hospital; the appointment of the hospital

13   CEO - - there are probably others that are not coming to mind." (*Id.*, at 21:20 – 22:4).

14       Fourth, the Health System has final say over the selection of the Hospital's CEO, (*Id.*, at

15   23:5 – 14), and the Hospital's current CEO, Joe Mark, was hired by the Health System and he

16   reports to the COO of the Health System. (*Id.*, at 24:14 – 19). This is important because it is the

17   Health System's employee Joe Mark who is responsible for managing the Hospital and ensuring

18   that its operations are consistent with relevant law and ethical health care. (*Id.*, at 51:4 – 6) Joe

19   Mark is also ultimately responsible for hiring and firing and all other staffing decisions at the

20   Hospital. (*Id.*, at 51: 20 – 25; 56: 4 - 12) Health System employee Joe Mark is responsible for

21   making sure that quality assurance happens at the Hospital. (Id., at 62:17 – 20).

22       This and other similar testimony throughout Ms. Whittaker's deposition demonstrates that

23   there are pervasive and interconnected relationships between the Health System and the Hospital.

24   There is thus good cause to order production of the requested documents, as such documents

25   would likely be evidence (or lead to the discovery of admissible evidence) related to the direct

26   and/or vicarious liability of the Health System, including under theories of agency and alter ego

27   liability. As noted above, any doubt is generally resolved in favor of permitting discovery,

28

1  particularly where the precise issues in the case are not yet clearly established. *Colonial Life &*

2  *Acc. Ins. Co., supra, at* 790.

3       Moreover, the timing of Defendant's Motion to Bifurcate alter Ego Claims and to Stay

4  Discovery (coming right after its decision to refuse to produce relevant documents in discovery)

5  is highly suspicious, and suggests that the Health System filed this motion to bifurcate in an

6  attempt to avoid producing documents on the subject of its ownership and control of the Hospital.

7  As such, Defendant's motion to bifurcate and to stay discovery should be denied with prejudice.

8      **D.**    **Defendant's Argument Rests Entirely On Its Incorrect And Self-Serving**

9          **Assessment Of Plaintiff's Theories Of Negligence Against It.**

10      Plaintiff has theories (and is entitled to develop evidence in discovery to support these

11  theories) of both indirect and direct negligence against the Health System, and not only an alter

12  ego theory, but one of agency liability, as well. Some of these theories are conveniently ignored

13  and side-stepped in Defendant's motion.

14      To establish that a defendant parent company should be liable for the conduct of a

15  subsidiary under the alter ego doctrine, evidence is required that there is "such a unity of interest

16  and ownership that the separate personalities of the corporation[s]" have ceased to exist and "if

17  the acts are treated as those of the corporation alone, an inequitable result will follow."

18  *McLoughlin v. L. Bloom Sons Co., Inc.* (1962) 206 Cal.App.2d 848, 851.

19      Under the agency analysis, "[t]he question is not whether to disregard the subsidiary's

20  corporate identity . . . but instead whether the degree of control exerted over the subsidiary by the

21  parent is enough to reasonably deem the subsidiary an agent of the parent under traditional

22  agency principles." *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540.

23  To show that a corporate parent (in this case, the Health System) ought to be liable for the acts of

24  the subsidiary (in this case, the Hospital) under the doctrine of agency, evidence is needed that

25  "the nature and extent of control exercised over the subsidiary by the parent is so pervasive and

26  continual that the subsidiary may be considered nothing more than an agent or instrumentality of

27  the parent." *Paneno v. Centre for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th

28  1447, 1454.

726110.1

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT ST. JOSEPH HEALTH SYSTEM'S
MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

1    Because of these evidentiary requirements under California law, the requested documents

2   on the subject of the Health System's role in the operation of the Hospital are necessary and are

3   reasonably calculated to lead to the discovery of admissible evidence.

4    These documents are additionally necessary because thus far the Health System has

5   produced conflicting and contradictory sworn testimony on the subject of ownership and control

6   of the Hospital. (Klaudt Decl., **Exhibit 3**, *Whittaker Depo*, at 41:17 - 20). As described above,

7   Ms. Whittaker's testimony is in direct conflict with the Health's System's May 30, 2007 sworn

8   responses to *Plaintiff's Requests for Admissions, Set One*, in which the Health System denied,

9   under oath, that it owns or has any ownership interest in the Hospital. (See *Defendant St. Joseph*

10  *Health System's Responses to Plaintiff's Requests for Admissions, Set One*, attached to *Klaudt*

11  *Decl.* as **Exhibit 4**).

12    Ms. Whittaker also acknowledged at her deposition that a significant dispute existed at the

13  Hospital with the entire radiology department (Klaudt Decl., **Exhibit 3**, *Whittaker Depo*, at 76:18

14  – 80:4), such that Plaintiff is informed and believes that this dispute was another contributing

15  reason Allen Faron was never x-rayed despite multiple the ER and Urgent Care visits he made in

16  agony begging for help. (*Id.*) Ms. Whittaker admitted that the Health System was involved in

17  some capacity in this radiology services dispute. (*Id.*) Plaintiff should thus be entitled to further

18  discover any and all relationships between the Health System and the Hospital, including those

19  pertaining to the operation of the Hospital and this radiology dispute, and production of the

20  requested documents is necessary for that purpose.

21    Since the requested documents all concern the Health System's operation, management,

22  ownership, and financial decisions related to the Hospital, good cause exists to order their

23  production to Plaintiff, and Defendant's motion to bifurcate and stay discovery should be denied.

24   E.    **Defendant's Motion Is Premised Upon The False Belief That Plaintiff Allen**
        **Faron Can Be Made Whole Without The Health System At Trial.**
25

26    Allen Faron is catastrophically injured and permanently crippled as a result of the Heath

27  System's negligence, and no amount of money will make him whole. Moreover, since the Health

28  System claims to not be a health care provider, it is thus not subject to the MICRA caps and thus

726110.1    - 8 -

1    faces potential liability well in excess of the limits imposed by MICRA as to some or all of the

2    other Defendants in this action. The Health System's General Counsel testified at deposition that

3    the Health System is not a health care provider:

4           Q:    Does the Health System provide medical services?
            A:    No.
5           Q:    Is the Health System a healthcare provider?
            A:    No.
6

7    (Klaudt Decl., **Exhibit 3**, *Whittaker Depo*, 89: 2 – 6.)

8          The Medical Injury Compensation Reform Act ("MICRA") limits noneconomic damages

9    in actions against health care providers based on professional negligence to $250,000.00. Civ.

10   Code §3333.2. This same statute defines "professional negligence" as follows:

11          "Professional negligence" means a negligent act or omission to act
            ***by a health care provider*** in the rendering of ***professional services***,
12          which act or omission is the proximate cause of a personal injury or
            wrongful death, provided that such services are within the scope of
13          services for which the provider is licensed and which are not within
            any restriction imposed by the licensing agency or licensed
14          hospital.

15   *Id*. (emphasis added). Since the Health System is not a health care provider, any direct ordinary

16   negligence by it that was a proximate cause of Allen Faron's injuries and damages likely falls

17   outside MICRA's definition of "professional negligence" and is thus exempt from MICRA's

18   limits on noneconomic damages.

19         Allen Faron's medical bills thus far are in excess of $3.2 million, and his projected wage

20   loss due to his permanent crippling injuries, lifelong dependence on IV feeding, and shortened

21   life expectancy, exceeds $900,000.00. Allen is also likely to require future medical care,

22   surgeries, nursing and home health care services well in excess of $1 million over the duration of

23   his lifetime.

24         The Health System's contention that there is more than enough insurance available from

25   the physician defendants ($3 million total) and the Hospital (allegedly $5 million total) is thus

26   doubtful, since Plaintiff has extraordinarily high potential damages in this action, and Plaintiff

27   intends to prove that direct negligence on the part of the Health System was a substantial factor in

28   causing Allen Faron's injuries. This direct negligence relating to budgeting, staffing, quality

1  assurance issues, and a dispute at the Hospital related to radiology services, is separate and

2  distinct from the alter ego and agency theories Plaintiff has advanced against the Health System.

3  Plaintiff is entitled to conduct discovery related to each of these theories, and this is another

4  reason why Defendant's motion to bifurcate and stay discovery should be denied.

5      With past medical bills, lost earning capacity, future medical bills, and a lifetime of

6  permanent disfigurement and IV-feeding, Allen's damages in this action are likely well in excess

7  of the combined policy limits of the Hospital and all three physician defendants, and the Health

8  System's argument that its insurance policy is unlikely to be touched is thus doubtful, especially

9  since it is likely that the $250,000.00 cap on pain and suffering damages under MICRA will not

10  apply to the Health System's negligence, because the Health System's negligence falls outside of

11  the MICRA definitions of "health care provider" and "professional negligence." For this reason,

12  the Defendant's motion should be denied.

13  **F.    Bifurcation And A Stay On Discovery Would Prejudice Plaintiff, And Would
        Not Promote Efficiency Or Convenience, And Would Instead Result In
14      Increased Logistical And Case Management Problems For This Court.**

15      C.C.P. § 1048(b) provides that the "court, in furtherance of convenience or to avoid

16  prejudice, or when separate trials will be conducive to expedition and economy, may order a

17  separate trial of any cause of action . . ." Additionally, "[t]he court may, when the convenience of

18  witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be

19  promoted thereby . . .[order] that the trial of any issue or any part thereof shall precede the trial of

20  any other issue or any part thereof . . ." C.C.P. § 598. "The major objective of bifurcated trials is

21  to expedite and simplify the presentation of evidence." *Foreman & Clark Corp. v. Madeliene*

22  *Fallon*, 3 Cal.3d 875, 888 (1971). "One of the purposes of [bifurcation] is to permit deferral of

23  costly and possibly unnecessary discovery proceedings pending resolution of potentially

24  dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499

25  (9th. Cir. 1970).

26      None of the goals of bifurcation – convenience, efficiency, simplification, or deferral of

27  costly or unnecessary discovery proceedings – would be advance by granting Defendant's motion

28  to bifurcate the claims against it. In fact, the opposite would occur.

1    Since there is already significant evidence in this case demonstrating the interconnected

2    ownership and control of the Hospital vis-à-vis the Health System, it would be a waste of the

3    parties' time and a waste of judicial resources to attempt to separate out discovery, evidentiary,

4    and liability issues unique to the Hospital versus those unique to the Health System. The extent

5    of overlapping and interconnected issues involving the Health System and the Hospital are

6    evidenced, for example, by Susan Whittaker's deposition testimony excerpted here and explained

7    above.

8    **G.      Producing The Requested Documents Would Not Be Unduly Burdensome to
         The Health System.**

9

10    Defendant Health System argues that discovery against it "will be burdensome" and that

11    "[g]athering, reviewing and producing these documents will cost the Health System thousands of

12    dollars." (Defendant's *Points & Authorities* at 6, and fn. 2). Defendant's assertions regarding

13    this "burden" are self-serving and convenient. There has been no evidence presented by the

14    Health System at any time showing that answering Plaintiff's discovery requests would place any

15    burden, whatsoever, on the Health System.

16    The objection of "burden" or "burdensome" is not enough to avoid answering discovery.

17    The responding party must instead show that the burden of answering the discovery requests is so

18    unjust that it amounts to oppression. *West Pico Furn. Co. v. Superior Court*, 56 C.2d 407, 417-

19    418 (1961). "[B]urden, alone, is not a ground for objection." (*Id.*)

20    The Health System has made no showing that any burden would be so unjust or

21    oppressive on it that it should be excused from participating in discovery and responding to

22    Plaintiff's valid and necessary discovery requests. Plaintiff has a right under the discovery

23    statutes to examine these documents. In fact, even after Plaintiffs twice unilaterally offered to

24    narrow and refine the requests at issue, the Health System stubbornly and without valid grounds

25    insisted in maintaining its evasive and unsubstantiated position that the requests are

26    "burdensome." For this reason alone, Defendant's motion to bifurcate and to stay discovery

27    should be denied with prejudice.

28

1    **III.    CONCLUSION**

2          Defendant's Motion to Bifurcate Alter Ego Claims and to Stay Discovery is nothing more

3    than an improper attempt to end-run the discovery statutes to prevent Plaintiff from developing

4    evidence relating to this Defendant's negligence, whether direct, indirect, or in the form of alter

5    ego or agency liability.  To grant the Health System's motion to bifurcate would be to reward the

6    Health System's gamesmanship in evading and refusing to answer proper discovery requests

7    propounded on it by Plaintiff.

8          For this and the other foregoing reasons, Defendant's motion should be denied with

9    prejudice.

10   Dated: September 6, 2007          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

11

12                                      By: _____

13                                           Kent L. Klaudt

14                                      Fabrice N. Vincent (State Bar No. 160780)
                                        Kent L. Klaudt (State Bar No. 183903)
15                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        Embarcadero Center West
16                                      275 Battery Street, 30th Floor
                                        San Francisco, CA  94111-3339
17                                      Telephone:  (415) 956-1000
                                        Facsimile:  (415) 956-1008
18
                                        Attorneys for Plaintiff Allen Faron
19

20

21

22

23

24

25

26

27

28

726110.1                              - 12 -

# EXHIBIT T

09/14/2007 11:57 FAX  1415856710    PAUL HASTINGS    ☐002/014



1 PAUL, HASTINGS, JANOFSKY & WALKER LLP
   JOHN P. PHILLIPS (State Bar No. 154412)
2 JASON K. SONODA (State Bar No. 248105)
   55 Second Street
3 Twenty-Fourth Floor
   San Francisco, CA 94105-3441
4 Telephone: (415) 856-7000
   Facsimile: (415) 856-7100

5

6 PAUL, HASTINGS, JANOFSKY & WALKER LLP
   PETER M. STONE (State Bar No. 157994)
7 695 Town Center Drive, Suite 1700
   Costa Mesa, CA 92626
8 Telephone: (714) 668-6200
   Facsimile: (714) 979-1921

9 Attorneys for Defendant
   St. Joseph Health System

10

**FILED**

Olga S. SEP 14 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF HUMBOLDT

13

14 ALLEN FARON,                          | CASE NO. DR070032
15          Plaintiff,                   | **REPLY MEMORANDUM OF POINTS
                                         | AND AUTHORITIES IN SUPPORT OF
16      vs.                              | MOTION TO BIFURCATE ALTER EGO
                                         | CLAIMS AND TO STAY DISCOVERY**
17 ST. JOSEPH HOSPITAL; ST. JOSEPH
   HEALTH SYSTEM; KEVIN
18 MOLANDER, M.D.; JOHN KELSEY,          | Date: September 21, 2007
   M.D.; RONALD CORDOVA, M.D.; and       | Time: 8:45 a.m.
19 DOES 1 through 50, inclusive,         | Dept: 4
                                         | Date Complaint Filed: July 14, 2006
20          Defendants.                  | 1st Amended Complaint Filed: July 31, 2006
                                         | Trial: January 22, 2008

21

22

23

24

25

26

27

28

REPLY MPA ISO MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     THE COURT SHOULD GRANT THE HEALTH SYSTEM'S MOTION TO
        BIFURCATE AND STAY DISCOVERY ..........................................................1

        A.      This Case is Ripe for Bifurcation .............................................................1

                1.      Plaintiff's Claim That Bifurcation Will Not Promote Convenience,
                        Efficiency, and Simplification of Issues is Conclusory and
                        Inconsistent With His Characterization of the Facts and Evidence..............2

                2.      Plaintiff's Contention That This Motion to Bifurcate is an Attempt
                        to Avoid Discovery Proves that Bifurcation is Appropriate......................4

                3.      Plaintiff's Newly Created Liability Theories Still Depend Upon the
                        Threshold Issue of the Hospital's (and Physician Defendants')
                        Alleged Medical Negligence and Therefore Bifurcation is
                        Appropriate ..................................................................................4

        B.      Plaintiff's Faces No Risk of Prejudice If His Claims Against the Health
                System are Bifurcated .............................................................................6

                1.      Plaintiff's Damages Estimate Falls $8 Million Short of the
                        Insurance Available to the Hospital and Physician Defendants .................6

                2.      MICRA Applies to Plaintiff's Claims Against the Health System
                        and Thus Further Limits Plaintiff's Potential Damages ...........................7

                3.      Even If MICRA Does Not Apply to Plaintiff's Claims Against the
                        Health System This Motion Should Still Be Granted................................8

                4.      A Decision to Bifurcate and Stay Discovery Will Not Prejudice the
                        Plaintiff ...........................................................................................8

        C.      The Health System's Continued Participation in This Litigation Will Be
                Burdensome and Unreasonable ...............................................................9

III.    CONCLUSION....................................................................................................10

LEGAL_US_W # 57068467.2

MPA IN SUPPORT OF MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Bedolla v. Logan & Frazer,*
    52 Cal. App. 3d 118 (1975) ...................................................................................4

4

*Bell v. Sharp Cabrillo Hospital,*
5       212 Cal. App. 3d 1034 (1989) ...............................................................................7

6   *Ellingson Timber Co. v. Great N. Railway Co.,*
    424 F.2d 497 (9th Cir. 1970) .................................................................................4

7

*Equitable Life Assurance Society v. Berry,*
8       212 Cal. App. 3d 832 (1989) .................................................................................4

9   *Fein v. Permanent Medical Group,*
    38 Cal. 3d 137 (1985) ...........................................................................................7

10

*Kaiser Steel Corp. v. Westinghouse Electric Corp.,*
11      55 Cal. App. 3d 737 (1976) ...................................................................................3

12  *Lathrop v. HealthCare Partners,*
    114 Cal. App. 4th 1412 (2004) .............................................................................7

13

*Myers v. Trendwest Resorts, Inc.,*
14      148 Cal. App. 4th 1403 (2007) .............................................................................6

15  *Williams v. Superior Court,*
    30 Cal. App. 4th 318 (1994) .................................................................................8

16

## STATUTES

17

Cal. Civ. Code § 3333.2....................................................................................................7

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

St. Joseph Health System's (the "Health System") Motion to Bifurcate Alter Ego Claims and Stay Discovery presents a common sense approach that (1) promotes convenience and efficiency, (2) defers costly discovery proceedings and trial on the potentially moot issue of the Health System's "alter ego liability," and (3) presents no risk of prejudice to Plaintiff. Plaintiff's opposition fails to provide any cogent rebuttal to these three essential points. Instead, he forces the Health System, as well as St. Joseph Hospital (the "Hospital"), Drs. Molander, Kelsey and Cordova (the "Physician Defendants"), and the Court, to continue to needlessly litigate "alter ego liability" claims against a defendant that played no role in the medical care that allegedly led to Plaintiff's injuries. Plaintiff takes this position even though his argument against the Health System's showing of the efficiencies of bifurcation consists of two conclusory sentences, and despite the fact that the insurance available to the Hospital and Physician Defendant exceeds Plaintiff's own estimate of his actual damages by nearly $8 million. As shown in its motion and below, bifurcation of flimsy liability theories that are conditioned on the central claims against the Hospital and Physician Defendants will eliminate the burden on the Health System and the Court's resources, and ensure this case stays focused on where it belongs – the treatment Mr. Faron received and whether that caused his injuries.

**II.    THE COURT SHOULD GRANT THE HEALTH SYSTEM'S MOTION TO BIFURCATE AND STAY DISCOVERY**

**A.    This Case is Ripe for Bifurcation**

Bifurcation is designed to advance four central goals: convenience, efficiency, simplification of issues, and deferral of costly discovery proceedings and trials on potentially moot issues.[1] The Health System's Motion demonstrates that these four goals are advanced by bifurcation because (1) bifurcation is efficient and defers litigation of potentially moot issues

---

[1] The statutory authority and well-established case law that support these propositions are discussed in the Health System's motion and will not be repeated here. (*See* Memorandum of Points and Authorities in Support of Motion to Bifurcate Alter Ego Claims and Stay Discovery ("Motion") at 4-5.)

1    because the Health System's liability depends upon the threshold issue of the Hospital's alleged

2    negligence, (2) bifurcation will simplify discovery, trial preparation and trial by focusing on the

3    medical malpractice theories that are at the core of this case, and (3) there is no risk of repetition

4    of evidence given the absence of overlap between evidence relevant to the equitable claims

5    against the Health System (tried to the bench) and evidence relevant to the claims against the

6    Hospital and Physician Defendants (tried to a jury). (*See* Motion at 5-11.) Plaintiff's opposition

7    fails to – because it cannot – rebut these dispositive points.

8              1.    **Plaintiff's Claim That Bifurcation Will Not Promote Convenience,**
**Efficiency, and Simplification of Issues is Conclusory and Inconsistent**

9                   **With His Characterization of the Facts and Evidence**

10           To repeat: the central question is whether or not bifurcation will promote

11   convenience, efficiency, simplification of issues, and deferral of costly discovery proceedings and

12   trial on potentially moot issues. Yet, at its essence, Plaintiff's opposition devotes a mere two

13   sentences to these important factors.[2] Plaintiff's short argument claims in conclusory fashion that

14   "[s]ince there is already significant evidence in this case demonstrating the interconnected

15   ownership and control of the Hospital vis-à-vis the Health System, it would be a waste of the

16   parties' time and a waste of judicial resources to attempt to separate out discovery, evidentiary,

17   and liability issues unique to the Hospital versus those unique to the Health System." (Opp. at

18   11:1-4.)

19           This argument not only misses the mark, it is inconsistent with Plaintiff's own

20   characterization of the matters at issue in this case. Even though Plaintiff contends that his claims

21   against the Hospital and Health System are interrelated, his opposition brief states that he has

22   liability theories against the Health System based on alter ego liability, agency liability and

23   "direct negligence relating to budgeting, staffing, quality of assurance issues, and a dispute at the

24   Hospital related to radiological services." (Opp. at 9:28-10:2.) These theories are factually and

25      [2] The remainder of Plaintiff's opposition addresses the relevance of certain document requests to
his claims against the Health System. (*See* Opp. at 3-7.) Those arguments, however, are

26   irrelevant to the central question on this motion. Plaintiff's citation to cases standing for the
general proposition that discovery is liberally allowed are immaterial for the same reason. (*Id.*)

27   Finally, Plaintiff's arguments with respect to the propriety of the document requests he discusses
are simply wrong, as demonstrated in the Health System's opposition to Plaintiff's motion to

28   compel.

1   legally distinct from the medical malpractice theories Plaintiff asserts against the Hospital and

2   Physician Defendants.  Indeed, Plaintiff's opposition makes clear that his theories against the

3   Health System will inject this medical malpractice case with evidence divorced from the central

4   focus on plaintiff's medical care.  For example, at a minimum, Plaintiff claims he will need to

5   pursue discovery about, and present extensive evidence relating to:

6   - "[the Health System's] legal services to the Hospital"

7   - "participation in board meetings"

8   - "the appointment of trustees to the St. Joseph Hospital board"

9   - "changes to articles and bylaws"

10  - "budgets"

11  - "long-term, short-term financing," and

12  - "the philosophy and charitable purpose of the hospital."

13  (Opp. at 5:26-6:13.)[3]

14          Evidence concerning these topics is far afield from the evidence relevant to

15  Plaintiff's medical malpractice claims against the Hospital and Physician Defendants, which

16  includes the testimony of the physicians, nurses and clerks that played some role in Plaintiff's

17  care and treatment, analysis of Plaintiff's medical records and extensive medical history

18  (including numerous health problems that preceded his visits to the Hospital), and expert opinion

19  testimony concerning the appropriate standard of care.

20          Accordingly, Plaintiff's conclusory argument that bifurcating the claims against

21  the Health System from the medical negligence claims against the Hospital and Physician

22  Defendants will not promote convenience, efficiency or simplification of the issues is simply

23  wrong.  It is also at odds with controlling authority.  *See Kaiser Steel Corp. v. Westinghouse Elec.*

24  *Corp.*, 55 Cal. App. 3d 737, 745-746 (1976) (finding that "the ends of justice were served by

25  _____

    [3] Moreover, to the extent Plaintiff suggests that most of the discovery against the System is
26  complete therefore no efficiencies will be gained, that point is also at odds with the record.
    Plaintiff's motion to compel seeks the production of hundreds of thousands of pages of
27  documents from the Health System, assuming the Court does not render the discovery dispute
    moot by bifurcating and staying the claims against the Health System.  It is clear that Plaintiff
28  believes there is much to be done to discover its claims against the Health System if given the
    chance.

1    bifurcation" where "only a small fraction of the evidence would be repeated").

2        2.    **Plaintiff's Contention That This Motion to Bifurcate is an Attempt to
              Avoid Discovery Proves that Bifurcation is Appropriate**

3

4        Recognizing the need for some other argument to defeat bifurcation, Plaintiff

5    claims, without any legal authority, that the Court should deny the Health System's motion

6    because it is "an attempt to avoid producing documents on the subject of [the Health System's]

7    ownership and control of the Hospital." (Opp. at 7:3-7.)  This argument, however, misses the

8    point entirely and in so doing proves why this motion should be granted.

9        The Health System readily admits that it seeks bifurcation in order to, among other

10   things, eliminate the unnecessary and prejudicial burden and expense of responding to Plaintiff's

11   overbroad and unduly burdensome discovery.  However, the avoidance of such unnecessary

12   burden and expense is far from improper – it is the exact purpose for which bifurcation is

13   designed.  The "objective of the bifurcation of the issues is avoidance of waste of time and money

14   caused by the trial of issues which may be rendered moot." *Bedolla v. Logan & Frazer*, 52 Cal.

15   App. 3d 118, 135 (1975); *see also Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499

16   (9th Cir. 1970) ("One of the purposes of [bifurcation] is to permit deferral of costly and possibly

17   unnecessary discovery proceedings pending resolution of potentially dispositive preliminary

18   issues.")  As such, Plaintiff's argument that bifurcation is improper because Defendant wishes to

19   avoid burdensome and expensive fact discovery weighs *in favor* of granting the Health System's

20   motion to bifurcate.

21       3.    **Plaintiff's Newly Created Liability Theories Still Depend Upon the
              Threshold Issue of the Hospital's (and Physician Defendants') Alleged
              Medical Negligence and Therefore Bifurcation is Appropriate**

22

23       In search for another argument against bifurcation, Plaintiff claims that there are

24   several legal theories alleged in the Complaint and that the mere existence of these theories

25   somehow justifies denying the Health System's motion.  What Plaintiff continues to ignore,

26   however, is the dispositive point that bifurcating the claims against the Health System will defer

27   the burden and expense of litigating the potentially moot issue of the Hospital's liability because

28   *Plaintiff's alter ego claims against the Health System are dependent upon the threshold issue of*

-4-

1   *the Hospital's alleged negligence.* (*See* Motion at 3-4.) If the Hospital obtains a defense verdict,

2   there is no need for a trial on the alter ego claims against the Health System. *See Equitable Life*

3   *Assurance Society v. Berry*, 212 Cal. App. 3d 832, 836 (1989) (finding a "classical" case for

4   bifurcation where issue to be tried first would involve fewer judicial resources, "judgment in

5   favor of defendant would end the lawsuit," and "even if bifurcation had not been ordered, the trial

6   court would have been required to hear the evidence [relevant to the bifurcated issue] out of the

7   presence of the jury").

8          Plaintiff's argument also strains the text of his own Complaint when he claims that

9   the motion should be denied because, in addition to his alter ego theories, he asserts claims for

10  agency liability and "direct negligence relating to budgeting, staffing, quality of assurance issues,

11  and a dispute at the Hospital related to radiological services." (Opp. at 9:28-10:2.) As an initial

12  matter, these new liability theories are nowhere to be found in his Complaint, which contains only

13  alter ego allegations with respect to the Health System. (*See* Complaint ¶14.) Indeed, Plaintiff's

14  newly alleged direct negligence theories relating to "budgeting," "staffing," and "quality

15  assurance issues" are not developed or explained in Plaintiff's brief (or anywhere else) and take

16  deposition snip-its out of context.[4]

17         But even if the presence of these new "theories" weighed against bifurcation –

18  which they do not – Plaintiff still ignores the fact that *his newly created theories remain*

19  *dependent upon the liability of the Hospital.* Agency liability is another form of vicarious

20  liability. *See, e.g., Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1434 (2007) (in

---

[4] For example, Plaintiff's newly alleged "direct negligence" theory is based solely on a claimed "dispute at the Hospital related to radiological services." (Opp. at 9:28-10:2.) Predictably, this representation to the Court misstates the record and is devoid of merit. First, this event was hardly a "significant dispute" that would have led to the inability of a Hospital to provide an x-ray. (*Supplemental* Declaration of Jason K. Sonoda in Support of St. Joseph Health System's Motion to Bifurcate Alter Ego Claims and to Stay Discovery ("Sonoda Sup. Decl."), Ex. B [Whittaker Declaration] ¶7.) Second, the entire event occurred over a year before Mr. Faron's Hospital visits which are at issue in this medical malpractice action, and the radiological group returned to the Hospital in early 2005. (Sonoda Sup. Decl. Ex. A [Whittaker Deposition] at 78:7-21, 82:19-22 ("This [radiology group event] occurred far in advance of 2005....").) Third, the radiology group that left "did not want to leave the patients in a lurch without radiology care. They…handed off care to a new group." (*Id.* at 78:12-14; *see also* Sonoda Sup. Decl., Ex. B [Whittaker Declaration] ¶7.) For these primary reasons, Ms. Whittaker never heard a complaint about the quality or availability of radiology services at the Hospital, nor was there a loss of radiology coverage. (*Id.*)

REPLY MPA ISO MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

1    appropriate circumstances, "[u]nder common law agency principles, a principal is liable for the

2    torts of his agent..."). Moreover, the so-called "direct" liability claims are all factors that

3    allegedly caused the Hospital and/or Physician Defendants to provide improper medical services

4    to Plaintiff. Put another way, no matter what label Plaintiff attaches to his claims, if the Hospital

5    and Physician Defendants are found to have provided standard of care medical services to

6    Plaintiff, then it simply does not matter whether the Health System acted negligently with respect

7    to "budgeting," "staffing," and "quality assurance issues." There would still be no causal

8    connection between the Health System's conduct and Plaintiff's injuries. Plaintiff's "theories"

9    against the Health System depend upon the threshold issue of the medical negligence of the

10   Hospital and Physician Defendants. For this reason alone, it remains most efficient for those

11   claims to be tried first. Bifurcation is warranted.

**B.**      **Plaintiff's Faces No Risk of Prejudice If His Claims Against the Health System are Bifurcated**

**1.**      **Plaintiff's Damages Estimate Falls $8 Million Short of the Insurance Available to the Hospital and Physician Defendants**

15          In a further attempt to avoid bifurcation, Plaintiff argues that the Defendants total

16   liability may exceed the total insurance protection available to the Hospital and Physician

17   Defendants. (Opp. at 9-10.) Plaintiff once again is wrong. As demonstrated in the Health

18   System's moving papers, the Hospital has a primary insurance policy of $5 million per incident

19   and additional excess insurance in the amount of $5 million, for a total of $10 million.

20   (Declaration of Jason K. Sonoda in Support of St. Joseph Health System's Motion to Bifurcate

21   Alter Ego Claims and to Stay Discovery ("Sonoda Decl.") Ex. K [Certificate of Insurance].) The

22   three Physician Defendants have an additional $3 million in insurance. (Sonoda Decl. Ex. L,

23   Resp. No. 4.1; Ex. M, Resp. No. 4.1; Ex. N, Resp. No. 4.1.) Plaintiff contends that he cannot be

24   made whole without the Health System at trial because his medical bills are thus far $3.2 million,

25   his projected wage loss is $900,000 and his future medical care is $1 million. These amounts

26   total only $5.1 million, nearly $8 million less than the insurance available to the Hospital and

27   Physician Defendants. Plaintiff's contention that he is unlikely to be made whole unless he

28   continues to pursue his claims against the Health System defies both common sense and simple

-6-

1   math.

2          Moreover, Plaintiff notably fails to dispute, or even address, the Health System's

3   showing that he has not paid anything for his medical care to date. (Sonoda Decl. Ex. B at 64:7-

4   65:14.)  Plaintiff's reliance on his alleged medical bills of $3.2 million is thus misplaced, and his

5   likely damages are a small percentage of the insurance available to the Hospital and Physician

6   Defendants.

7          **2.    MICRA Applies to Plaintiff's Claims Against the Health System and
           Thus Further Limits Plaintiff's Potential Damages**

8

9          Plaintiff next contends, *without citing any authority,* that the limitations on

10  noneconomic damages imposed by the Medical Injury Compensation Reform Act ("MICRA") do

11  not apply to the claims against the Health System because it is not a "health care provider" and

12  because its conduct purportedly falls out of the definition of "professional negligence."  Cal. Civ.

13  Code § 3333.2.  The law, however, holds otherwise.  Two cases are instructive.

14         In *Lathrop,* a patient sued physicians and their medical group alleging medical

15  negligence for failure to diagnose and treat the patient for breast cancer.  *Lathrop v. HealthCare*

16  *Partners,* 114 Cal. App. 4th 1412, 1416 (2004).  The trial court held the medical group was not

17  eligible for protection under Cal. Civ. Code § 3333.2 because the medical group was not a health

18  care provider.  *Id.*  The court entered judgment in favor of the patient, including $1.2 million in

19  noneconomic damages.  *Id.* at 1418.  The appellate court held the medical group was vicariously

20  liable, not independently liable as a health care provider.  *Id.*  As such, liability of the medical

21  group was limited to the liability of its employees or agents,  who are health care providers

22  covered under the $250,000 cap.  Therefore, the MICRA cap applied and the medical group could

23  not be accountable for noneconomic damages in excess of $250,000.  *Id; see also Fein v.*

24  *Permanent Medical Group,* 38 Cal. 3d 137, 144-145 (1985) (applying MICRA to suit against

25  medical group for failure by individual physicians to diagnose heart attack).

26         Similarly, in *Bell v. Sharp Cabrillo Hosp.,* 212 Cal. App. 3d 1034 (1989), a mother

27  brought a wrongful death action against a hospital for negligently reviewing the competence of

28  the physician who performed surgery on her sixteen year old son.  *Id.*  The jury found the hospital

-7-

1    professionally negligent and awarded the mother $500,000 in noneconomic damages. *Id.* at 1038.

2    The trial court reduced the noneconomic damages to $250,000 pursuant to the MICRA provision

3    of Cal. Civ. Code § 3333.2. *Id.*  The appellate court upheld the $250,000 award and held that

4    negligent review of medical staff meets the definition of professional negligence as defined in

5    Cal. Civ. Code § 3333.2, and thus, noneconomic damages for such cause of action are to be

6    limited to $250,000. *Id.*

7            Both *Bell* and *Lathrop* are directly applicable to the facts of this case. All of

8    Plaintiff's remaining claims are either vicarious in nature (and captured by the rule in *Lathrop*), or

9    involve alleged contributing factors to the purported medical negligence of the Hospital and

10    Physician defendants (and captured by the rule in *Bell*). Despite his transparent attempt to recast

11    his claims in order to oppose the Health System's motion, Plaintiff's ultimate claim is that his

12    hernia was not diagnosed in a timely fashion and that he received sub-standard medical care at his

13    local Hospital. Accordingly, no matter which defendant he attempts to reach with his claims, this

14    is a medical malpractice action and Plaintiff's noneconomic damages are therefore capped at

15    $250,000 by MICRA. *See Williams v. Superior Court*, 30 Cal. App. 4th 318, 325 (1994) ("an

16    action for damages arises out of the professional negligence of a health care provider if the injury

17    is directly related to the professional services provided by the health care provider").

18            **3.    Even If MICRA Does Not Apply to Plaintiff's Claims Against the
             Health System, This Motion Should Still Be Granted**

19

20            Even if MICRA does not apply to Plaintiff's claims against the Health System, the

21    Court should still grant its motion. There is an $8 million dollar gap between Plaintiff's estimate

22    of his potential damages and the insurance available to the Hospital and Physician Defendants.

23    That amount is certainly sufficient to satisfy any potential judgment in Plaintiff's favor, whether

24    or not MICRA applies. This fact demonstrates both that it is efficient to bifurcate the claims

25    against the Health System and that Plaintiff is unlikely to suffer prejudice from bifurcation.

26            **4.    A Decision to Bifurcate and Stay Discovery Will Not Prejudice the
             Plaintiff**

27

28            Apart from his flawed MICRA argument, Plaintiff makes no showing of the

-8-

1    significant level of prejudice that is required for a Court to deny a well-supported motion to

2    bifurcate.  While Plaintiff claims he has "had to wait more than 18 months to bring this case to

3    closure," Plaintiff fails to explain why the passage of time is prejudicial to him in light of his

4    improving medical condition, the fact that he has paid nothing for any of his medical care, and the

5    fact that Plaintiff has ample funds to pursue before it ever becomes necessary for him to reassert

6    claims against the Health System.  (*See* Motion at 9-10.)

7              Significantly, Plaintiff also fails to address the fact that, even if Plaintiff

8    overcomes the defenses available to the Hospital and Physician Defendants and it proves

9    necessary to proceed against the Health System, granting this motion will not prevent Plaintiff

10   from pursuing all available remedies.[5]  Accordingly, Plaintiff faces no risk of prejudice if the

11   Court charts a practical course and bifurcates the Health System from this case so that the

12   remaining parties are left to focus on the medical malpractice issues at the core of this dispute.

13        C.    **The Health System's Continued Participation in This Litigation Will Be**
               **Burdensome and Unreasonable**

14

15             Finally, the Health System has established that the prosecution of Plaintiff's "alter

16   ego theories" will necessitate a factually intensive inquiry and require the expenditure of a great

17   deal of time and resources.  Discovery related to these complex issues alone will be burdensome,

18   as explained in accompanying Declaration of Susan Whittaker, the Health Systems' Chief

19   Administrative Officer and Governance Counsel.  (*See* Sonoda Sup. Decl. Ex. B [Whittaker

20   Declaration] ¶¶ 10, 12 (g).)  Plaintiff's motion to compel with respect to seven overbroad

21   document requests is a case in point.  (*Id.*)  A conservative estimate of the collection called for by

22   Plaintiff's discovery might well number in the hundreds of thousands of pages of documents.

23   The Health System is a stand-alone, non profit corporation with less than 200 employees, and its

24   limited resources are focused on its charitable mission as a ministry of the Catholic Church;

25   specifically, supporting its affiliates in their respective commitment to serve marginalized

---

26   [5]  Before filing this motion, the Health System offered Plaintiff a similar compromise that would
     eliminate the burden and prejudice to the Health System while fully protecting Plaintiff's rights.
27   (Sonoda Decl. Ex. H. at 4.)  Specifically, the Health System offered Plaintiff a tolling agreement
     in exchange for the voluntary dismissal of the claims against the Health System without
28   prejudice.  (*Id.*)  Plaintiff did not respond to this offer and fails to address it in his opposition.

-9-

REPLY MPA ISO MOTION TO BIFURCATE ALTER EGO CLAIMS AND TO STAY DISCOVERY

populations in many communities, including Mr. Faron's. (*Id.*) The time and expense (including

attorneys' fees) required to respond to Plaintiff's overbroad discovery will undermine that

mission and involve issues that are far afield from the core of this dispute. (*Id.*)[6]

Moreover, if the alter ego claims are permitted to proceed, the burden on the

Health System will only increase because trial preparation, pre-trial motions (including motions

for summary judgment and motions in *limine*), and, of course, trial of these complex issues, will

require the expenditure of significant resources by the parties and the Court.

## III.    CONCLUSION

It is simply inefficient and unreasonable for anyone to spend the time and

resources involved in litigating Plaintiff's "alter ego claims" against the Health System (no matter

how Plaintiff labels them) until it becomes necessary to do so.  Now is not the time.  Bifurcating

the potentially moot claims against the Health System is well supported in law, represents a

common sense approach to the efficient processing of this litigation, and ensures Plaintiff's rights

are fully protected.  The Health System respectfully requests that the Court grant its Motion to

Bifurcate and Stay Discovery.

DATED:  September 14, 2007  PAUL, HASTINGS, JANOFSKY & WALKER LLP
            JOHN P. PHILLIPS
            JASON K. SONODA

By:_____
       JASON K. SONODA

Attorneys for Defendant
ST. JOSEPH HEALTH SYSTEM

---

[6] Plaintiff's argument that this motion to bifurcate should be denied because it will not be burdensome for the Health System to respond to Plaintiff's document requests is thus factually inaccurate. (Opp. at 11:20-27.)  Plaintiff's argument also ignores the standard applicable to this motion.  The issue is not whether responding to one set of document requests will be burdensome, but whether it is efficient in the overall context of this litigation to bifurcate the issue of the Health System's liability.  Plaintiff's burden argument, and his associated citation to cases that discuss the standards that guide a motion to compel discovery, thus misses the mark.

-10-

# EXHIBIT U

RECEIVED

FILED

SEP 2 0 2007

PAUL, HASTINGS, JANOFSKY & WALKER LLP

SEP 24 2007

E ... ......... OF CALIFORNIA
.... OF HUMBOLDT

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

| | |
|---|---|
| ALLEN FARON, | NO.    DR070032 |
| Plaintiff, | RULING ON MOTION TO BIFURCATE ALTER EGO CLAIMS |
| vs | |
| ST. JOSEPH HOSPITAL; ST. JOSEPH HEALTH SYSTEM; KEVIN MOLANDER, M.D., JOHN KELSEY, M.D., RONALD CORDOVA, M.D., et al., | |
| Defendants. | |

The motion of defendant St. Joseph Health System filed August 22, 2007, was heard September 21, 2007. Plaintiff was represented by Kent L. Klaudt, attorney at law. Defendant St. Joseph Health System was represented by John P. Phillips, attorney at law. Defendant St. Joseph Hospital was represented by Nancy Delaney, attorney at law. Counsel presented argument. The Court, considering argument together with the pleadings concludes that there is good cause to grant the motion.

---
1

RULING ON MOTION TO BIFURCATE
ALTER EGO CLAIMS

1

<u>Ruling</u>

2       The motion is granted.  Legal proceedings against defendant St. Joseph Health

3   System is bifurcated until such time as legal proceedings have concluded as to the

4   remaining defendants named in the complaint's causes of action alleging medical

5   malpractice.  Counsel for St. Joseph Health System shall prepare the order

6   commensurate with the foregoing.

7   Dated: September 24 , 2007

8

9                                   HAROLD E. NEVILLE, JR.
                                    _____
10                                  Harold E. Neville, Jr., Assigned Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    RULING\DR070032-2D.LG
25

                                                    2

    RULING ON MOTION TO BIFURCATE
    ALTER EGO CLAIMS

STATE OF CALIFORNIA,    )
COUNTY OF HUMBOLDT      ) SS. AFFIDAVIT OF SERVICE BY MAIL

I, _____ Christine F. _____, say:

That I am a citizen of the United States, over 18 years of age, a resident of the County of Humboldt, State of California, and not a party to the within action; that my business address is Humboldt County Courthouse, Eureka, California; that I served a true copy of the attached _____
_____ RULING ON MOTION TO BIFURCATE ALTER EGO CLAIMS _____ by placing said copies in the attorney's mail delivery box in the Court Operations Office at Eureka, California on the date indicated below, or by placing said copies in envelope(s) and then placing the envelope(s) for collection and mailing on the date indicated below following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Eureka, California in a sealed envelope with postage prepaid. These copies were addressed to:

KENT L. KLAUDT, LIEFF CABRASER HEIMANN & BERNSTEIN, EMBARCADERO CENTER WEST, 275 BATTERY STREET, 30TH FLOOR, SAN FRANCISCO, CA 94111-3339

JOHN P. PHILLIPS, PAUL HASTINGS JANOFSKY & WALKER, 55 SECOND STREET, 24TH FLOOR, SAN FRANCISCO, CA 94105-3441

NANCY DELANEY-BOX #100 IN COURT OPERATIONS

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the 24 day of September 2007, at the City of Eureka, County of Humboldt, State of California.

DWIGHT W. CLARK, Clerk of the Court

By _____ Christine F. _____

Deputy Clerk

# EXHIBIT V

1  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   JOHN P. PHILLIPS (State Bar No. 154412)
2  JASON K. SONODA (State Bar No. 248105)
   55 Second Street
3  Twenty-Fourth Floor
   San Francisco, CA 94105-3441
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100

5

6  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   PETER M. STONE (State Bar No. 157994)
7  695 Town Center Drive, Suite 1700
   Costa Mesa, CA 92626
8  Telephone: (714) 668-6200
   Facsimile: (714) 979-1921

9  Attorneys for Defendant
   St. Joseph Health System

10

11           SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF HUMBOLDT

13

14  ALLEN FARON,                          CASE NO. DR070032

15            Plaintiff,                  [~~PROPOSED~~] ORDER GRANTING ST.
                                          JOSEPH HEALTH SYSTEM'S MOTION
16       vs.                              TO BIFURCATE ALTER EGO CLAIMS
                                          AND TO STAY DISCOVERY
17  ST. JOSEPH HOSPITAL; ST. JOSEPH
    HEALTH SYSTEM; KEVIN
18  MOLANDER, M.D.; JOHN KELSEY,          Date:  September 21, 2007
    M.D.; RONALD CORDOVA, M.D.; and       Time:  8:45 a.m.
19  DOES 1 through 50, inclusive,         Dept:  4
                                          Date Complaint Filed: July 14, 2006
20            Defendants.                 1st Amended Complaint Filed: July 31, 2006
                                          Trial: January 22, 2008
21

22

23

24

25

26

27

28

FILED

OCT 0 3 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

Jodie W.

RECEIVED

OCT 0 1 2007    Jodie W.

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

ORIGINAL

1    St. Joseph Health System's Motion to Bifurcate Alter Ego Claims and Stay

2    Discovery (the "Motion") came on regularly for hearing in Department 4 of this Court on

3    September 21, 2007.

4    Having considered the Motion, the points and authorities filed by the parties, and

5    the oral argument of counsel, the Court hereby rules as follows:

6    IT IS ORDERED that the Motion is GRANTED;

7    IT IS FURTHER ORDERED that all legal proceedings, including discovery,

8    against St. Joseph Health System shall be stayed in all respects until such time as legal

9    proceedings (including through appeal) have concluded as to Plaintiff's claims against

10   Defendants St. Joseph Hospital, Kevin Molander, M.D., John Kelsey, M.D., and Ronald Cordova,

11   M.D.

12

13   DATED: _10 — 02 — 07_            _[signature]_

14                                    JUDGE OF THE SUPERIOR COURT

15                                    HAROLD E. NEVILLE, JR.

16   LEGAL_US_W # 56883424.1

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING MOTION TO BIFURCATE AND STAY DISCOVERY

# EXHIBIT W

1  Fabrice N. Vincent (State Bar No. 160780)
   Kent L. Klaudt (State Bar No. 183903)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
3  275 Battery Street, 30th Floor
   San Francisco, CA  94111-3339
4  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
5  e-mail: fvincent@lchb.com
   e-mail: kklaudt@lchb.com
6
   Attorneys for Plaintiff Allen Faron
7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                          OAKLAND DIVISION

12  ALLEN FARON,                          CASE NO.  CGC-07-5602 SBA (related to C
                                          06-06662 SBA)
13            Plaintiff,
                                          **JOINT CASE MANAGEMENT
14       v.                               STATEMENT**

15  ST. JOSEPH HOSPITAL; ST. JOSEPH
16  HEALTH SYSTEM; KEVIN
    MOLANDER, M.D.; JOHN KELSEY,
17  M.D.; RONALD CORDOVA, M.D.; and
    UNITED STATES OF AMERICA;
18  inclusive,

19            Defendants.

20

21       Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Civil L.R. 16-

22  10, the parties have met and conferred, and hereby submit this Joint Case Management Statement.

23  **I.    JURISDICTION AND SERVICE**

24       Jurisdiction is proper because this action was removed by the United States of

25  America in accordance with 28 U.S.C. § 1441(a), 1441(e) and 42 U.S.C. § 233, on behalf of the

26  federally-deemed Defendant Eureka Community Health Center (now known in this action as the

27  Defendant United States of America), and pursuant to the Federal Tort Claims Act this Court has

28  original jurisdiction over this action. All Defendants have been served and have appeared in this

1    action.

2    **II.    FACTS**

3       A.    **Plaintiff Allen Faron's Statement of Facts**

4           Plaintiff, 21-year-old Allen Faron, has suffered catastrophic and permanent

5    injuries as a result of a congenital diaphragmatic hernia that Defendants failed to diagnose despite

6    at least 5 visits by Mr. Faron to the St. Joseph Hospital Urgent Care and Emergency Departments

7    and one visit to Eureka Community Health Center complaining of severe pain and other

8    abdominal symptoms. As a result, Mr. Faron suffered respiratory arrest, near sudden death, and

9    approximately 11 surgeries to resect and repair his mostly necrotic intestines, which had become

10   incarcerated and strangulated by his diaphragmatic hernia.

11          As a result of these injuries, Allen Faron will likely never be able to eat or defecate

12   normally or live naturally again and he is now dependant on life-sustaining total parenteral

13   nutrition ("TPN") via IV for 12 hours a day, every day, and has almost no remaining small

14   intestine. His medical bills to date are in excess of $3.2 million, including more than 120 days in

15   the ICU at UCSF Medical Center in San Francisco.

16          He is now left with 55 cm of small bowel and one half of his colon in continuity.

17   This minute length of small bowel does not allow adequate nutrition by mouth, and thus Allen

18   Faron has the most severe form of short bowel syndrome (intestinal failure) and will require TPN

19   to sustain his life. The chance of his ever developing the capacity to adequately sustain nutrition

20   by mouth after one year of TPN is minimal. Although TPN can adequately sustain nutrition, the

21   complication rate is high and life expectancy is limited.

22          Allen faces a future of likely frequent catheter-related infections and related

23   hospitalizations. He also faces the risk of frequent occlusion of catheters and thrombosis of veins,

24   requiring multiple hospital admissions for replacing the catheter itself as his veins gradually

25   become unusable.

26          He is also now at high risk of liver failure, which is a long-term complication of

27   TPN use. Greater than 50% of patients on TPN for more than five years will develop complicated

28   liver disease, *i.e.*, cirrhosis. It is significant that patients like Allen Faron, with the shortest

1   residual intestine, are at greatest risk for End Stage Liver Disease ("ESLD").  Mr. Faron's liver

2   functions are elevated, and he likely already has active liver disease at this time.

3     Life expectancy with a short small bowel remnant on TPN is limited.  Various

4   studies have placed five year survival between 50 and 60%, and ten year survival, when noted, as

5   around 40%.

6     Mr. Faron's future medical care needs are extraordinary and he will likely need

7   transplantation of his small intestines and liver; unfortunately these extremely costly procedures

8   hold major risks and living with transplanted organs also requires life-long treatment with

9   dangerous steroids and an ever-present risk of organ rejection.  Intestinal transplantation costs

10  approximately $813,000 and a liver transplant costs approximately $392,000, assuming that

11  organs are available.

12    At the time of the injury, Allen Faron was regularly and gainfully employed

13  working in a restaurant.  As a result of his injuries, he has been unable to work, and he will likely

14  be unable to work for the rest of his life, and his future wage loss is estimated at between

15  $973,870 and $1,318,480.

16    Additionally, according to Plaintiff's economist and rehabilitation consultant,

17  Allen faces between $2,752,870 to $20,934,181 in future medical care (depending on both his life

18  expectancy and on whether or not he has a small bowel/liver transplant).  These future medical

19  services include gastroenterologist visits, psychological services, laboratory studies, likely yearly

20  hospitalizations due to sepsis and thrombosis, a possible small bowel/liver transplant,

21  medications, TPN, ostomy, and wound care supplies.

22    Plaintiff contends that all the Defendants' care and treatment of Allen Faron fell

23  below the standard of care and that all the Defendants were otherwise negligent, and that the

24  Defendants' actions and inactions were a cause of Allen Faron's injuries and damages.

25    **B.**   **Physician Defendants' Statement of Facts**

26    On August 28, 2005, Mr. Faron presented to the St. Joseph Hospital Emergency

27  Department complaining of epigastric abdominal pain.  He was seen by defendant Ronald

28  Cordova, M.D. who suspected gastritis.  Mr. Faron was prescribed Prevacid and instructed to

1    follow up with the Eureka Community Health Center.

2              On August 30, 2005, Mr. Faron presented to the St. Joseph Hospital Urgent Care

3    Center with a chief complaint of abdominal pain for four days.  He was seen by defendant

4    Kevin Molander, M.D.  Again, the impression was gastritis and he was instructed to continue

5    taking Prevacid as well as Tums as needed.  He was instructed to drink plenty of fluids and follow

6    up with his primary care provider.

7              Four and one-half months later, on January 15, 2006, Mr. Faron presented to the

8    St. Joseph Hospital Urgent Care Center and was seen again by Dr. Molander.  His chief complaint

9    was vomiting.  Mr. Faron provided a history which included having eaten Chinese food at

10   approximately 3:00 p.m. the previous day.  The impression was gastroenteritis, possibly

11   secondary to some form of food poisoning.  Mr. Faron was prescribed nausea medication and

12   instructed to see his primary care physician.

13             On January 17, 2006, Mr. Faron presented to the St. Joseph Hospital Emergency

14   Department with a chief complaint of nausea, vomiting and constipation.  He was seen by

15   emergency room physician John Kelsey, M.D. who believed Mr. Faron to be suffering from acute

16   gastritis or possibly dyspepsia.  He was given nausea medication as well as Pepcid and instructed

17   to follow up with his primary care provider at the Eureka Community Health Center.

18             On January 18, 2006, Mr. Faron presented to the St. Joseph Hospital Emergency

19   Department in respiratory arrest.  A chest x-ray was performed and it was determined that he had

20   a ruptured right hemi-diaphragm with a large amount of bowel located in the right upper chest

21   area and was subsequently diagnosed with a diaphragmatic hernia that was surgically repaired.

22             Drs. Cordova, Molander and Kelsey have been deposed and their testimony

23   together with the medical records demonstrate that their care and treatment of Mr. Faron was

24   appropriate and within the standard of care.

25       C.    **Defendant St. Joseph Hospital's Statement of Facts**

26             From the perspective of this defendant, this case is now a garden variety medical

27   malpractice action as plaintiff's claims pursuant to California Business and Professions Code §

28   17200 and 17500, have been dismissed, with prejudice.  Further, although plaintiff has included a

1   purported claim for punitive damages as to this defendant, this too was dismissed by the

2   Humboldt County Superior Court and should not have been restated in the amended pleading

3   filed pursuant to stipulation between plaintiff and the United States.

4        Plaintiff presented on multiple occasions to Urgent Care and the Emergency Room

5   at St. Joseph Hospital of Eureka.  Virtually all of the Hospital personnel involved in plaintiff's

6   care have been deposed.  The testimony of these witnesses and the records of the various visits

7   demonstrate care within the standard of care, including appropriate discharge and follow-up

8   instructions to plaintiff.  Further, on each occasion, plaintiff signed a consent acknowledging that

9   the physicians (expressly designating, among others, emergency room physicians and

10  radiologists) are not employed by the Hospital, but rather act as the employee of the patient.  This

11  defendant does not mean to suggest in any fashion that the care provided by the physicians was

12  anything other than within the applicable standard of care, but rather to set forth that neither of

13  plaintiff's remaining theories against this defendant are viable.

14      **D.**    **Defendant St. Joseph Health System's Statement of Facts**

15       On October 2, 2007, Judge Harold E. Neville, Jr. of the California Superior Court

16  issued an order granting St. Joseph Health System's motion to bifurcate and stay all legal

17  proceedings against St. Joseph Health System "until such time as legal proceedings (including

18  through appeal) have concluded as to Plaintiff's claims against St. Joseph Health Systems St.

19  Joseph Hospital, Kevin Molander, M.D., John Kelsey, M.D., and Ronald Cordova, M.D."  That

20  order was the result of a fully briefed and argued motion by St. Joseph Health System based on

21  the vicarious nature of the claims against it, the likelihood that Plaintiff would be made whole by

22  his claims against the potentially primarily liable parties and the judicial efficiency of determining

23  the liability of the potentially primarily liable parties before litigating the factually and legally

24  distinct alter ego claims alleged against St. Joseph Health System.

25       28 U.S.C. §1450 provides, in relevant part, that "[a]ll injunctions, orders, and other

26  proceedings had in such action prior to its removal shall remain in full force and effect until

27  dissolved or modified by the district court."  Accordingly, the recent removal of this case to

28  federal court has no effect on the order bifurcating and staying the claims against St. Joseph

1  Health System. St. Joseph Health System submits this case management statement without

2  waiving any of its arguments, objections or affirmative defenses based on prior proceedings.

3          On July 14, 2006, plaintiffs filed suit against the Physician Defendants, St. Joseph

4  Hospital, and St. Joseph Health System in San Francisco Superior Court. Plaintiffs' complaint

5  included claims under California Business and Professions Code §17200, common law fraud,

6  California Business and Professions Code §17500, medical negligence, loss of consortium, and

7  negligent hiring and supervision. Plaintiffs' complaint also included claims for punitive damages

8  against St. Joseph Hospital and St. Joseph Health System. Plaintiff subsequently voluntarily

9  dismissed the claim for loss of consortium, the only claim by Nancy Faron, leaving Allen Faron

10  as the sole plaintiff in this litigation.

11          On July 30, 2007 the California Superior Court sustained St. Joseph Health

12  System's unopposed demurrer to plaintiff's claims under California Business and Professions

13  Code §17200, common law fraud and California Business and Professions Code §17500. The

14  Superior Court also granted St. Joseph Health System's unopposed motion to strike all punitive

15  damages allegations made against St. Joseph Health System.

16          As a result of these proceedings, the Plaintiff's only remaining claims are for

17  medical negligence and negligent hiring and supervision. Importantly, none of the acts or

18  omissions alleged to create liability were carried out by St. Joseph Health System or any of its

19  employees. Rather, St. Joseph Health System is alleged to be the alter ego of St. Joseph Hospital

20  and therefore liable for St. Joseph Hospital's acts and omissions.

21      **E.    Defendant United States of America's Statement of Facts**

22          On July 14, 2006, plaintiffs sued the United States and the other defendants in San

23  Francisco Superior Court. The United States removed this complaint on October 26, 2006. On

24  November 28, 2006, plaintiffs voluntarily dismissed the United States because they had not filed

25  an administrative claim. The non-federal parties stipulated to the remand of this action back to

26  Humboldt Superior Court.

27          The United States did not participate in any of the discovery done in the state court

28  action because it was not a named party.

On October 22, 2007, plaintiffs once again named the United States as a Doe Defendant in the state court action. The United States once again removed the case on November 5, 2007.

## III.   LEGAL ISSUES

### A.   Plaintiffs' Statement of Disputed Points of Law

Plaintiff contends that Defendant St. Joseph Health System's negligence caused or contributed to Allen Faron's injuries and damages, and thus Plaintiff intends to seek reconsideration of the Humboldt County Superior Court's prior order bifurcating and staying the action as to St. Joseph Health System.

### B.   Physician Defendants' Statement of Disputed Points of Law

Drs. Cordova, Molander and Kelsey contend that plaintiff will not be able to show any negligence on their part. Furthermore, the physician defendants contend that no negligent act or omission on their part caused Mr. Faron's claimed damages.

### C.   Defendant St. Joseph Hospital's Statement of Disputed Points of Law

To the extent that plaintiff's claim is based upon a purported agency relationship between defendant St. Joseph Hospital of Eureka and the defendant physicians, this claim is not viable as plaintiff signed multiple consent forms acknowledging the independent contractor relationship between the physicians and the hospital and all physicians have testified that there is no employment/agency relationship.

### D.   Defendant St. Joseph Health System's Statement of Disputed Points of Law

Plaintiff's two remaining causes of action against St. Joseph Health System are based upon the alleged acts and omissions of St. Joseph Hospital. St. Joseph Health System's purported liability is vicarious in nature and based entirely on plaintiff's alter ego allegations. St. Joseph Health System contends that Plaintiff will not be able to show that St. Joseph Health System is the alter ego of St. Joseph Hospital. St. Joseph Health System further contends that plaintiff will not be able to show that any negligence on the part of St. Joseph Hospital caused plaintiff's injuries.

St. Joseph Health System further contends that all legal proceedings against it,

1    including discovery, have been stayed pursuant to 28 U.S.C. §1450 and the October 2, 2007

2    Order of Judge Harold E. Neville, Jr. of the California Superior Court granting St. Joseph Health

3    System's motion to bifurcate and stay all legal proceedings against St. Joseph Health System

4    "until such time as legal proceedings (including through appeal) have concluded as to Plaintiff's

5    claims against St. Joseph Health Systems St. Joseph Hospital, Kevin Molander, M.D., John

6    Kelsey, M.D., and Ronald Cordova, M.D." St. Joseph Health System further contends that there

7    are no grounds for the reconsideration of that order, which was fully briefed and argued before

8    the Superior Court.

9            St. Joseph Health System further contends that all punitive damages allegations in

10   the recently filed First Amended Civil Complaint for Damages should be stricken pursuant to 28

11   U.S.C. §1450 and the July 30, 2007 Order of the California Superior Court granting St. Joseph

12   Health System's unopposed motion to strike all punitive damages allegations made against St.

13   Joseph Health System.

14       **E.    Defendant United States of America's Statement of Disputed Points of Law**

15           The United States contends that plaintiffs will not be able to show that any

16   negligence on the part of its employee – Ellen Taylor, a physician's assistant – caused plaintiff

17   Allen Faron's substantial claimed damages.

18   **IV.    MOTIONS**

19       **A.    Prior and Pending Motions**

20           No motions have been heard, nor or any pending, before this Court at this time.

21       **B.    Anticipated Motions**

22           The United States does not anticipate filing any motions.

23           St. Joseph Health System does not anticipate filing any motions at this time

24   because the claims against it have been stayed and bifurcated pursuant to 28 U.S.C. §1450 and the

25   October 2, 2007 Order granting St. Joseph Health System's motion to bifurcate and stay all legal

26   proceedings against St. Joseph Health System.

27   **V.    AMENDMENT OF PLEADINGS**

28           Plaintiff does not at this time anticipate amending his First Amended Complaint.

1    VI.    **EVIDENCE PRESERVATION**

2            The parties have made all efforts to preserve all relevant evidence.

3    VII.   **DISCLOSURES**

4            The parties will exchange Rule 26 initial disclosures as set out below.

5    VIII.  **DISCOVERY**

6            Numerous depositions have been taken to date in this action, including the

7    depositions of Allen Faron, Nancy Faron, Shawntel Fawcett, treating physicians Michael Palmer,

8    M.D., Sue Rhee, M.D., Kerilyn Nobuhara, M.D., all three physician Defendants, nurses at St.

9    Joseph Hospital, and one "person most knowledgeable" of Defendant St. Joseph Health System.

10           Because the United States did not have an opportunity to participate in any of

11   these depositions, it is anticipated that the United States will want to depose plaintiffs and some

12   of the other key percipient witnesses.

13           Written discovery has been propounded to and answered by all parties, except the

14   United States of America. Plaintiff and the physician Defendants wish to depose Ellen Taylor,

15   P.A., an employee of Defendant United States of America.

16           St. Joseph Health System contends that all legal proceedings against it, including

17   discovery, have been stayed pursuant to 28 U.S.C. §1450 and the October 2, 2007 Order of Judge

18   Harold E. Neville, Jr. of the California Superior Court granting St. Joseph Health System's

19   motion to bifurcate and stay all legal proceedings against St. Joseph Health System "until such

20   time as legal proceedings (including through appeal) have concluded as to Plaintiff's claims

21   against St. Joseph Health Systems St. Joseph Hospital, Kevin Molander, M.D., John Kelsey,

22   M.D., and Ronald Cordova, M.D." Accordingly, St. Joseph Health System is not required to and

23   will not participate in further discovery until further order of the Court or the lifting of the stay.

24           The parties propose the following alternative schedules:

25           Plaintiffs request a trial date in August, 2008.

26           Defendants request a trial date in March, 2009.

27   A.    **Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1):**

28           The parties, with the exception of St. Joseph Health System, will exchange initial

---

750505.1                              -9-                    JOINT CASE MANAGEMENT STATEMENT
                                                            CASE NO. CGC-07-5602 SBA (RELATED TO C 06-06662 SBA)

1    disclosures pursuant to Fed. R. Civ. P. 26(a)(1) no later than February 22, 2008.

2            St. Joseph Health System will not exchange initial disclosures because all legal

3    proceedings against it, including discovery, have been stayed pursuant to 28 U.S.C. §1450 and the

4    October 2, 2007 Order of Judge Harold E. Neville, Jr. of the California Superior Court granting

5    St. Joseph Health System's motion to bifurcate and stay all legal proceedings against St. Joseph

6    Health System "until such time as legal proceedings (including through appeal) have concluded

7    as to Plaintiff's claims against St. Joseph Health Systems St. Joseph Hospital, Kevin Molander,

8    M.D., John Kelsey, M.D., and Ronald Cordova, M.D."

9       **B.**    **Non-Expert Discovery Cut-Off:**

10           Plaintiffs propose April 30, 2008 for the non-expert factual discovery.

11           Defendants propose that non-expert discovery be completed no later than August

12   29, 2008.

13      **C.**    **Disclosure of Expert Witness Reports and Rebuttal Reports:**

14           Plaintiffs propose that expert reports be disclosed on May 15, 2008 and that

15   rebuttal reports be disclosed on May 31, 2008.

16           Defendants propose that expert reports be disclosed on September 12, 2008 and

17   that rebuttal reports be disclosed on October 3, 2008.

18      **D.**    **Expert Witness Discovery Cut-Off:**

19           Plaintiffs propose June 30, 2008 for the expert witness discovery cut-off.

20           Defendants proposed an expert discovery cut-off of October 31, 2008.

21      **E.**    **Proposed Changes in Limits on Discovery:**

22           **1.**    **Fed. R. Civ. P. 26(b):**

23           None.

24           **2.**    **Fed. R. Civ. P. 30(a)(2)(A):**

25           None.

26           **3.**    **Fed. R. Civ. P. 30(a)(2)(B):**

27           None.

28

JOINT CASE MANAGEMENT STATEMENT
CASE NO. CGC-07-5602 SBA (RELATED TO C 06-06662 SBA)

1    **4.**  **Fed. R. Civ. P. 30(a)(2)(C):**

2   None.

3    **5.**  **Fed. R. Civ, P. 30(d)(2):**

4   None anticipated.

5    **6.**  **Fed. R. Civ. P. 33(a):**

6   None.

7  **F.**  **Timing/Sequencing/Phasing/Scheduling of Discovery:**

8    The parties do not propose any timing, sequencing, phasing, or scheduling of

9 discovery other than what is set forth in the parties' discovery plan.  As set out in the plan, the

10 parties request a simultaneous disclosure of expert witnesses and reports, with a later

11 simultaneous exchange of rebuttal reports so as to give the parties an equal opportunity to address

12 each other's expert opinions.

13 **IX.**  **CLASS ACTIONS**

14   N/A.

15 **X.**  **RELATED CASES**

16    There is a related case pending in state court in Arizona:  *Allen Faron and Nancy*

17 *Faron v. James Mick, M.D., et al.*, Case No. CV 2007-1055, pending in the Superior Court of the

18 State of Arizona, County of Yavapai.  Trial is set in that case for September 30, 2008.  The case is

19 related insofar as it involves the same injuries and damages suffered by Allen Faron due to

20 failures to diagnose his congenital diaphragmatic hernia.  No motion to consolidate or transfer

21 these cases has been filed.

22    Defendants believe that the resolution of the Arizona case will have a significant

23 impact on the potential resolution of this case.  Accordingly, defendants believe that a later trial

24 date would facilitate resolution of this case.

25 **XI.**  **RELIEF**

26  **A.**  **On Behalf of Plaintiff Allen Faron:**

27    1.  For medical and incidental expenses according to proof;

28

750505.1     - 11 -      JOINT CASE MANAGEMENT STATEMENT
                   CASE NO. CGC-07-5602 SBA (RELATED TO C 06-06662 SBA)

1          2.     For other special damages, including but not limited to future medical

2  expenses and lost wages, according to proof;

3          3.     For general damages and emotional distress damages;

4          4.     For prejudgment interest on the award for damages rendered in favor of

5  plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil

6  Code; and

7          5.     For punitive and exemplary damages, at to Defendant St. Joseph Health

8  System only.

9          6.     Attorneys' fees and costs.

10    **B.**    **On Behalf of Defendant St. Joseph Health System:**

11         On July 30, 2007, the California Superior Court granted St. Joseph Health

12  System's unopposed motion to strike all punitive damages allegations made against St. Joseph

13  Health System.  Pursuant to 28 U.S.C. §1450 that order remains in effect and all punitive

14  damages allegations in Plaintiff's recently filed First Amended Civil Complaint for Damages

15  should be stricken.

16  **XII.**    **SETTLEMENT AND ADR**

17         A mediation in January, 2007 with the Hon. Rebecca Westerfield, JAMS mediator,

18  did not resolve the litigation.  Plaintiff is willing to return to a further mediation, and Plaintiff

19  believes that after the completion of the deposition of Ellen Taylor, P.A., that the discovery

20  necessary to position the parties to negotiate a resolution will have been completed.

21         Defendants, other than St. Joseph Health System, are amenable to a further

22  mediation once significant discovery has been completed.  Defendants propose that private

23  mediation occur first and then a settlement conference with a magistrate judge a month prior to

24  the pre-trial conference.

25  **XIII.**  **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

26         A declination to proceed before a magistrate was previously filed in this case by

27  one or more Defendants.  Additionally, Plaintiff declines to proceed before a magistrate.

28

**XIV.  OTHER REFERENCES**

The case is not suitable for reference to arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XV.  NARROWING OF ISSUES**

Plaintiff is open to suggestions by the Court or other parties for any ways to narrow the issues or expedite the presentation of evidence at trial.

**XVI.  EXPEDITED SCHEDULE**

See Section 20 below.  Since Plaintiff is in very poor health and has a shortened life expectancy resulting from the injuries at issue in this case, Plaintiff respectfully requests that all pre-trial scheduling and the trial date be expedited.

Defendants have not received any medical reports suggesting that plaintiff's health would justify an expedited schedule.  In fact, one of plaintiff's treating physicians has testified to the likelihood of return of bowel function with a procedure to be undertaken when plaintiff makes better lifestyle choices (i.e. plaintiff ceases tobacco and alcohol abuse).  Because the United States has only recently been served with the First Amended Complaint on January 16, 2008, defendants respectfully request adequate time to defend this action and conduct meaningful discovery.

**XVII. SCHEDULING**

See Section 8, above.

**XVIII. TRIAL**

The case will be tried to a jury as to all Defendants other than Defendants United States of America and St. Joseph Health System (the claims against St. Joseph Health System have been bifurcated and stayed, as noted above).  The Federal Tort Claim causes of action against Defendant United States of America will be tried to the Court.  Plaintiff estimates that the trial will be 14 court days.

**XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff is not aware of the existence of any non-party interested entities or persons.

**XX.    OTHER MATTERS THAT MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER**

Plaintiff Allen Faron remains crippled and very ill and is in extremely precarious health due to the severe and permanent injuries he suffered as a result of the alleged conduct by the Defendants.  Because Allen faces a risk of premature death due to these injuries, he respectfully requests that this case be set for trial on the earliest possible date, and that he be granted preference in trial setting due to the nature of his debilitating and life-threatening injuries.

Defendants have not received any medical reports or seen any medical records demonstrating that Mr. Faron's health requires an expediting of the discovery and trial dates. With the United States only having been served with the First Amended Complaint on January 16, 2008, basic fairness dictates that the trial and discovery deadlines be set to allow a meaningful evaluation of the claims of this case.  Moreover, with the pending Arizona action set for trial in September, 2008, resolution of this case would be facilitated by a trial date later than September, 2008.

Dated:  February 25, 2008          Respectfully submitted,

By:＿＿＿＿＿＿＿＿＿＿*/s/ Kent L. Klaudt*＿＿＿＿＿＿＿＿.
                                        Kent L. Klaudt

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

*Attorneys for Plaintiff Allen Faron*

Dated:  February 25, 2008          By:＿＿＿＿＿＿*/s/*＿＿＿＿＿＿＿＿＿＿
                                        Andrew Y.S. Cheng

UNITED STATES ATTORNEY'S OFFICE
Northern District of California
450 Golden Gate Avenue, 9th Floor
San Francisco, CA  94102

*Attorneys for Defendant United States of America*

1 Dated: February 25, 2008   By:   /s/
               Jason K. Sonoda

2

3              PAUL, HASTINGS, JANOFSKY & WALKER LLP
              JOHN P. PHILLIPS
              JASON K. SONODA

4              55 Second Street
              Twenty-Fourth Floor

5              San Francisco, CA  94105-3441

6              *Attorneys for Defendant St. Joseph Health System*

7 Dated: February 25, 2008   By:   /s/
               Nancy K. Delaney

8

9              MITCHELL, BRISSO, DELANEY & VRIEZE
              NANCY K. DELANEY

10             814 Seventh Street
             P.O. Drawer 1008

11             Eureka, CA  95502

12             *Attorney for St. Joseph's Hospital*

13 Dated: February 25, 2008   By:   /s/
               Joseph E. Finkel

14             GALLOWAY, LUCCHESE, EVERSON & PICCHI, APC
             G. PATRICK GALLOWAY

15             JOSEPH E. FINKEL
             1676 No. California Blvd., Suite 500

16             Walnut Creek, CA  94596-4183

17             *Attorney for Defendants Ronald Cordova, Kevin Molander,*
             *and John Kelsey*

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
CASE NO. CGC-07-5602 SBA (RELATED TO C 06-06662 SBA)